

# Standard Form of Agreement Between Owner and Contractor where the basis for payment is the COST OF THE WORK PLUS A FEE with a negotiated Guaranteed Maximum Price

### AIA Document A111 - 1997
### 1997 Edition - Electronic Format

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document is not intended for use in competitive bidding.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference.

This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, © 1997 by The American Institute of Architects. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal p

**AGREEMENT** made as of the <u>Twentieth</u> day of <u>November</u> in the year <u>Two Thousand</u>
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name, address and other information)*
<u>131 Dartmouth Street LLC</u>
<u>200 State Street</u>
<u>Boston, MA  02108</u>

and the Contractor:
*(Name, address and other information)*
<u>Suffolk Construction Company, Inc.</u>
<u>65 Allerton Street</u>
<u>Boston, MA 02119</u>

The Project is:
*(Name and location)*
<u>Construction of an approximately 385,000 square foot, thirteen story mixed-use building with approximately 276,000 square feet</u>
<u>four (4) level below grade parking to be located at 131 Dartmouth Street, Boston, Massachusetts 02116.</u>

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  A111-1997

The Architect is:
*(Name, address and other information)*
Arrowstreet, Inc.
212 Elm Street
Somerville, Massachusetts 02144

The Construction Manager is:

Commercial Construction Consulting, Inc.
313 Congress Street
Boston, MA 02110

The Construction Manager shall administer the Contract Documents and shall act as Owner's representative on day-to-day activities at the Project site.

The Owner and Contractor agree as follows.

## ARTICLE 1  THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Contractor's Qualification and Assumptions, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 15. If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2  THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, and shall construct the Project in accordance with the plans and specifications incorporated herein including all work which the Contractor knew or should reasonably have known would be necessary to complete the Project in accordance with the plans and specifications. If tenant improvement and fitup work (the "Tenant Work") is required to be commenced on or before the Substantial Completion Date set forth herein, the Owner shall notify the Contractor at the time Owner is ready to commence such work and Contractor shall work cooperatively with any other Contractors performing such work and the Owner shall require such other Contractors to work cooperatively with the Contractor. Notwithstanding the foregoing sentence, the Owner acknowledges that the Contractor's primary obligation is to prosecute and complete the Work of this Contract in accordance with the Project Schedule and that the Contractor shall not be responsible to oversee construction of Tenant Work by the Tenant Work contractors, nor to interrupt its operations for the benefit of the Tenant Work contractors. Contractor acknowledges that the current construction schedule anticipates Tenant Work being undertaken by the Tenant Work contractors prior to the Final Completion Date. except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3  RELATIONSHIP OF THE PARTIES

The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

## ARTICLE 4  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

**4.1** The date of commencement of the Work shall be April 3, 2000

Insert  B: *(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

If, prior to commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

**4.2** The Contract Time shall be measured from the date of commencement.

**4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than June 17, 2002 (the "Substantial Completion Date"). Owner and Contractor acknowledge that time is of the essence in the Substantial Completion of the Project and no amendment of the Substantial Completion Date shall be permitted except in strict accordance with the provisions of the Contract Document, or as follows:

*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

In the event that the Contractor fails to achieve Substantial Completion on or before the Substantial Completion Date, except because of delays caused by fire, earthquake, unusual weather conditions, governmental moratoriums, unusual delays in the granting of necessary approvals or permits or inspections from appropriate governmental authorities, unavoidable casualty, unusual delays in transportation of essential materials or equipment or strikes (hereinafter collectively called "Force Majeure"), then the Contractor shall pay to the Owner the sum of Five Thousand and 00/100 Dollars ($5,000.00) per day commencing on the first day after the Substantial Completion Date and continuing until Substantial Completion has been achieved, which sum the Contractor and the Owner agree shall be the proper liquidated damages (and not a penalty) that the Owner will suffer if the Contractor fails to cause the entire Work to be completed on or before the Substantial Completion Date, the actual damages to be suffered by the Owner being impossible to ascertain. Recovery of such liquidated damages shall be the Owner's sole and exclusive remedy in the event of Contractor's unexcused delay in achieving Substantial Completion. Notwithstanding the foregoing with respect to Change Orders, Contractor shall not be entitled to an extension of the Substantial Completion Date except as specified in writing in such Change Order.

Owner and Contractor agree that Final Completion shall be achieved no later than August 17, 2002. The term "Final Completion" shall mean completion of all punch list items on the Project and issuance of a certificate of acceptance of the Work by Architect. Construction shall be performed in accordance with the initial Construction Schedule attached hereto and incorporated herein by reference as Exhibit A, which may be revised in accordance with the terms of this Agreement.
, subject to adjustments of this Contract Time as provided in the Contract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to complete on time, or for bonus payments for early completion of the Work.)*

## ARTICLE 5   BASIS FOR PAYMENT
### 5.1 CONTRACT SUM
**5.1.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

**5.1.2** The Contractor's Fee is:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee, and describe the method of adjustment of the Contractor's Fee for changes in the Work.)*

The Contractor's Fee is equal to three percent (3%) of the cost of the Work as defined in Article 7 of this Agreement. The Contractor's Fee is included in the Guaranteed Maximum Price stated in Section 5.2 of this Agreement.

The Contractor shall be entitled to a bonus in the amount of one-half percent (0.5%) of the Cost of the Work, as defined in Article 7 of this Agreement, if the Contractor achieves the completion of the steel frame of the Project, as certified by the Architect and Construction Manager, by November 30, 2001 (the "Initial Bonus"). The Contractor shall be entitled to an additional bonus in the amount of one-half percent (0.5%) of the Cost of the Work, if the Contractor achieves Substantial Completion of the Project by the Substantial Completion Date (the "Final Bonus"), provided however that if the Contractor does not achieve, and is not awarded, the Initial Bonus but does achieve the Final Bonus, the amount of the Final Bonus shall be equal to one percent (1%) of the Cost of the Work. The Initial Bonus, and the Final Bonus, if so achieved by the Contractor pursuant to the terms of this Section, shall not be payable until the time of final payment. If the Contractor is awarded either, or both the Initial Bonus and the Final Bonus, the Owner shall have the right, at the Owner's election, to deduct from such amounts any amounts due from the Contractor to the Owner pursuant to the terms of this Agreement.

Owner shall pay Contractor a percentage fee equal to three percent (3%) of the cost of changes in the Work, if such changes result in an increase in the Cost of the Work. From time to time Owner may cause Architect to prepare additional drawings and

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

specifications which will supplement, add to, particularize and make more specific and detailed the existing Drawings and Specifications, which additional drawings and specifications, when approved by Owner, will be delivered to Contractor. Any changes in the Work individually, or cumulatively, which result in changes reasonably inferable by a contractor of Contractor's experience and expertise, shall not require a Change Order nor give rise to any right on the part of Contractor to any additional compensation or increase in the Contractor's Fee, or any increase in the Guaranteed Maximum Price.

Contractor shall use best efforts and all due diligence to minimize the Cost of the Work consistent with the completion of the Work in a first-class and workmanlike manner. Savings shall be allocated 75% to Owner and 25% to Contractor. Savings means an amount by which the final Cost of the Work plus the Contractor's Fee may be less than the Guaranteed Maximum Price, as adjusted pursuant to the Contract Documents. Any Savings shall be determined at the time of Final Payment. Savings shall not be computed on overruns or underruns on allowance items, but any savings in Contractor's Contingency and General Conditions shall be included in the calculation of Savings for the purposes of this paragraph.

## 5.2 GUARANTEED MAXIMUM PRICE

**5.2.1**    The sum of the Cost of the Work and the Contractor's Fee is guaranteed by the Contractor not to exceed Seventy Five Million Dollars ($75,000,000.00), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

**5.2.2**    The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*
The GMP incorporates the Value Engineering items set forth in Exhibit C which are hereby accepted by Owner.

**5.2.3**    Unit prices, if any, are as follows:
Unit Prices for slurry wall, minipiles, excavation, steel and metal decking are included in the attached Exhibit E.

**5.2.4**    Allowances, if any, are **as follows:**    In accordance with the attached Contractor's Qualifications & Assumptions, provided however that the use of such allowance(s) shall be subject to Owner's prior written approval.
*(Identify and state the amounts of any allowances, and state whether they include labor, materials, or both.)*
Insert                                                                                                       C:

**5.2.5**    Assumptions, if any, on which the Guaranteed Maximum Price is based are as follows:
In accordance with the attached Contractor's Qualifications & Assumptions

**5.2.6**    The Contractor acknowledges that the Drawings and Specifications are substantially complete. To the extent that the Drawings and Specifications require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

5.2.7    The Guaranteed Maximum Price contains a Contractor's Contingency of $650,000. Such contingency is available to cover costs, if any, incurred by the Contractor for Cost of the Work items not otherwise covered under the terms of this Contract and in the approved Schedule of Values provided however, that disbursement of funds from the Contractor's Contingency shall be at the Contractor's discretion, but subject to the Owner's prior written approval, which approval shall not be unreasonably withheld.

## ARTICLE 6  CHANGES IN THE WORK

**6.1** Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Subparagraph 7.3.3 of AIA Document A201-1997.

**6.2** In calculating adjustments to subcontracts (except those awarded with the Owner's prior written consent on the basis of cost

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

plus a fee), the terms "cost" and "fee" as used in Clause 7.3.3.3 of AIA Document A201-1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Subparagraph 7.3.6 of AIA Document A201-1997 shall have the meanings assigned to them in AIA Document A201-1997 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior written consent on the basis of cost plus a fee shall be calculated in accordance with the terms of this Agreement, unless the Owner has furnished the Contractor with prior written approval of the form and substance of a subcontract, in which case such adjustments shall be calculated in accordance with the terms and conditions of that subcontract~~those subcontracts~~.

**6.3** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201-1997 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the terms "fee" and "a reasonable allowance for overhead and profit" shall mean the Contractor's Fee as defined in Subparagraph 5.1.2 of this Agreement.

**6.4** If no specific provision is made in Paragraph 5.1 for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions of Paragraph 5.1 will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the basis of the Fee established for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

# ARTICLE 7 COSTS TO BE REIMBURSED
## 7.1 COST OF THE WORK
The term Cost of the Work shall mean costs necessarily incurred by the Contractor in the proper performance of the Work in accordance with the Contract Documents. Such costs shall be at rates not higher than the standard paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall be limited to ~~include only~~ the items set forth in this Article 7. Costs as defined herein shall be actual costs paid by the Contractor, less all discounts, rebates, refunds and salvages, subject to Article 9 of the Agreement. All payments made by the Owner pursuant to this Article 7, whether those payments are actually made before or after the execution of the Contract, are included within the Guaranteed Maximum Price specified in Paragraph 5.2 above; provided, however, that in no event shall the Owner be required to reimburse the Contractor for any portion of the Cost of the Work incurred prior to the Commencement Date, except for those costs previously agreed upon by the Owner as set forth in Exhibit D attached hereto, unless the Contractor has received the Owner's written consent prior to incurring such cost. Notwithstanding the breakdown or categorization of any costs to be reimbursed in this Article 7 or elsewhere in the Contract Documents, there shall be no duplication of payment in the event any particular items for which payment is requested can be characterized as falling into more than one of the types of compensable or reimbursable categories.

## 7.2 LABOR COSTS
**7.2.1**   Wages of construction workers directly employed by the Contractor to perform the construction of the Work ~~at the site or,~~ with the Owner's prior written approval~~, at off-site workshops~~.

**7.2.2**   Wages or salaries of the Contractor's supervisory and administrative personnel in accordance with the attached Assignment of Cost Categories as set forth in Exhibit D ~~when stationed at the site with the Owner's approval~~ for that portion of their time spent which is directly related to the general supervision and performance of the Work. Such personnel shall not, in any event, include any supervisory or administrative personnel above the level of project executive, but may include supervisory or administrative personnel below or including the level of project manager including those stationed at the field office of the Project, or with Owner's prior agreement, at the home office of Contractor and those engaged (whether at shops or on the road) in expediting the inspection, production or transportation of all materials.

*(If it is intended that the wages or salaries of certain personnel stationed at the Contractor's principal or other offices shall be included in the Cost of the Work, identify in Article 14 the personnel to be included and whether for all or only part of their time, and the rates at which their time will be charged to the Work.)*

**7.2.3**   ~~Wages and salaries of the Contractor's supervisory or administrative personnel engaged, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.~~

**7.2.4**   Costs paid or incurred by the Contractor for taxes, insurance, contributions, assessments and benefits required by law or

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

collective bargaining agreements and, for personnel not covered by such agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions at an agreed upon rate of 1.46 times direct salary costs, provided such costs are based on wages and salaries included in the Cost of the Work under Subparagraphs 7.2.1 through 7.2.3.

## 7.3 SUBCONTRACT COSTS
**7.3.1**    Payments made by the Contractor to Subcontractors other than for supplied materials in accordance with the requirements of the subcontracts properly entered into under this Agreement.

## 7.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
**7.4.1**    Costs, including transportation and storage, of materials and equipment incorporated or to be incorporated in the completed construction, incurred by Contractor under subcontracts or purchase orders made in accordance with the provisions of the Contract Documents.

**7.4.2**    Costs of materials described in the preceding Subparagraph 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Contractor. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

## 7.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
**7.5.1**    Costs, including transportation and storage, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers, that are provided by the Contractor at the site and fully consumed in the performance of the Work; and cost (less salvage value) of such items if not fully consumed, whether sold to others or retained by the Contractor. Cost for items previously used by the Contractor shall mean fair market value. Any such materials which are furnished from Contractor's inventory must be approved in writing by Owner and the rates charged therefor shall not exceed market rates. Owner reserves the right to require that all such items which shall have been purchased for use on the Project be disposed of when no longer required for the Work, and the Cost of the Work shall be reduced in an amount equal to the proceeds therefrom.

**7.5.2**    Rental charges from unaffiliated third parties for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Contractor at the site, whether rented from the Contractor or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof at the actual cost to Contractor. In no event shall total rental payments due for any specific item exceed the original cost of said item. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

**7.5.3**    Costs of removal of debris from the site which results from performance of the Work.

**7.5.4**    Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office. all of which are necessary for the operation of the site office.

**7.5.5**    That portion of the reasonable travel and subsistence expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work, which are approved in advance by Owner.

**7.5.6**    Costs of materials and equipment suitably stored off the site at a mutually acceptable location, if approved in advance by the Owner, subject to the provisions of Article 12.1.8.

## 7.6 MISCELLANEOUS COSTS
**7.6.1**    That portion directly attributable to this Contract of insurance and bond premiums for insurance and bonds that can be directly attributed to this Contract:

**7.6.2**    Sales, use or similar taxes imposed by a governmental authority which that are related to the Work and for which the Contractor is liable.

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**7.6.3**  Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

**7.6.4**  Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Subparagraph 13.5.3 of AIA Document A201-1997 or other provisions of the Contract Documents, and which do not fall within the scope of Subparagraph 7.7.3.

**7.6.5**  Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; if the infringement was unknown to Contractor, and, in the exercise of reasonable diligence, would not have been discovered by the Contractor, the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent; provided~~,~~ ~~h~~However, that such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the of a Guaranteed Maximum Price~~.~~, if any, and provided that ~~I~~f such royalties, fees and costs are excluded by the last sentence of Subparagraph 3.17.1 of the General Conditions or other provisions ~~AIA Document A201-1997 or other provisions~~ of the Contract Documents~~, then they shall not be included in the Cost of the Work~~.

**7.6.6**  ~~Data processing costs related to the Work.~~

**7.6.7**  Deposits lost for causes other than the Contractor's fault or negligence ~~or failure to fulfill a specific responsibility to the Owner as set forth in the Contract Documents~~.

**7.6.8**  Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor in the performance of the Work and with the Owner's prior written approval; which approval shall be at the Owner's discretion.

**7.6.9**  All costs included in the columns titled "GC/Pre-construction" and "Subcontractor" in accordance with the attached Assignment of Cost Categories, Exhibit D~~Expenses incurred in accordance with the Contractor's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, if approved by the Owner~~.

## 7.7 OTHER COSTS AND EMERGENCIES

**7.7.1**  Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

**7.7.2**  ~~Costs due to emergencies incurred i~~In taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Paragraph 10.3 of the General Conditions, unless caused by an act of neglect by Contractor, any subcontractor, supplier or laborer or their respective employees or agents. If time permits, such costs shall be agreed in advance by Owner. ~~6 of AIA Document A201-1997.~~

**7.7.3**  Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recoverable by the Contractor from insurance, sureties, Subcontractors or suppliers.

7.7.4    In the event of any conflict between the provisions of Articles 7 and 8 and Exhibit D of this Contract, the provisions of Exhibit D shall take precedence.

## ARTICLE 8 COSTS NOT TO BE REIMBURSED
**8.1** The Cost of the Work shall not include:

**8.1.1**  Salaries and other compensation of the Contractor's personnel ~~stationed at the Contractor's principal office or offices other than the site office,~~ except as specifically provided in Subparagraphs 7.2.2 and 7.2.3 or as may be provided in Article 14.

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**8.1.2**   Expenses of the Contractor's principal office and offices other than the site office.

**8.1.3**   Overhead and general expenses, except as may be expressly included in Article 7.

**8.1.4**   The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work.

**8.1.5**   Rental costs of machinery and equipment, except as specifically provided in Subparagraph 7.5.2.

**8.1.6**   Except as provided in Subparagraph 7.7.3 of this Agreement, costs due to the negligence or failure to fulfill a specific responsibility of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable.

**8.1.7**   Any cost not specifically and expressly described in Article 7.

**8.1.8**   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

## ARTICLE 9  DISCOUNTS, REBATES AND REFUNDS

**9.1** Cash discounts, monetary concessions or concessions by subcontractors that would result in any monetary adjustment to the Cost of the Work, obtained on payments made by the Contractor shall accrue to the Owner and Contractor shall make provisions so that they can be secured. if (1) before making the payment, the Contractor included them in an Application for Payment and received payment therefor from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be secured. However, if Contractor gives notice not later than ten (10) days after Contractor first learns of the availability of any discount of the funds necessary to be paid by Owner in order to secure any discount, Contractor shall not be required to insure that cash discounts are secured for the benefit of Owner unless Owner advances the funds necessary to secure the same.

**9.2** Amounts that accrue to the Owner in accordance with the provisions of Paragraph 9.1 shall be credited to the Owner as a deduction from the Cost of the Work, and shall be treated as Savings under Article 5.

## ARTICLE 10  SUBCONTRACTS AND OTHER AGREEMENTS

**10.1**    Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons or entities from whom the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the Work and shall deliver such bids to the Owner Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Owner may designate specific persons or entities from whom the Contractor shall obtain bids; however, the Owner may not prohibit the Contractor from obtaining bids from others. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**10.2**    If a specific bidder among those whose bids are delivered by the Contractor to the Architect (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**10.3**    Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## ARTICLE 11  ACCOUNTING RECORDS

The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants, at the Owner's cost unless otherwise provided herein (provided that such costs shall be limited to the actual expense to Owner of compensating Owner's accountants and no additional fees or charges shall be applied by Contractor) shall be afforded access to, and shall be permitted to audit and copy, the Contractor's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Contract, and the Contractor shall preserve these for a period of three years after final payment, or for such longer period as may be required by law. If any inspection by the Owner of the Contractor's records, books, correspondence, instructions, drawings, receipts, vouchers, memoranda, and any other data relating to the Contract Documents reveals an overcharge, including, without limitation, any untimely request for payment as described in Paragraph 13.3, the Contractor shall pay the Owner upon demand an amount equal to one hundred twenty percent (120%) of such overcharge, as reimbursement for said overcharge plus the administrative expenses incurred in determining the overcharge. The requirements of this Article 11 shall not apply to any portion of an overcharge that is the subject of a good-faith dispute between the Owner and the Contractor.

## ARTICLE 12  PAYMENTS

### 12.1  PROGRESS PAYMENTS

**12.1.1**  Based upon Applications for Payment, including all supporting documentation submitted to the Construction Manager and Architect by the Contractor and Certificates for Payment issued by the Construction Manager, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**12.1.2**  The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**12.1.3**  Provided that an Application for Payment is received by the Construction Manager and Architect not later than the first day of a month, the Owner shall make payment to the Contractor not later than the twenty-fifth day of the month. If an Application for Payment is received by the Construction Manager and Architect after the application date fixed above, payment shall be made by the Owner not later than twenty-five (25) days after the Construction Manager and Architect receives the Application for Payment. All Applications for Payment shall be delivered to Construction Manager, Architect and Owner together with a statutory form of Partial Waiver and Subordination in the form attached hereto and incorporated herein by reference as Exhibit 1. The date concluding the "payment period" specified in the Partial Waiver and Subordination form shall be the date of the delivery of the Application for Payment. If either the Application for Payment or the Partial Waiver and Subordination form is inaccurate or incomplete, then both the Application for Payment and the Partial Waiver and Subordination form shall be re-submitted as soon as possible. The amounts contained in such Application for Payment shall be processed for payment as soon as reasonably possible, but in all instances within the lender's requirements, following the correction and resubmission of such Application for Payment. The Contractor shall make' payment to the applicable subcontractors whose work is included in the Application for Payment, in accordance with the Subcontract agreements, within fourteen (14) days of Contractor's receipt of payment for such Application for Payment by the Owner.

**12.1.4**  With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner, Construction Manager or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

**12.1.5**  Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner, Construction Manager or Architect may require. This schedule, unless objected to by the Owner, Construction Manager or Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment. The schedule of values is attached hereto and incorporated herein

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

by reference as Exhibit A.

**12.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

**12.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

  **.1** take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values, less retainage of ten percent (10%), provided that upon completion of fifty percent (50%) of the Work of each trade, as certified by the Construction Manager and Architect, such retainage amount shall be reduced to zero percent (0%) of each trade . Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Subparagraph 7.3.78 of AIA Document A201-1997;

  **.2** add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction within the next fifteen (15) days (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing, less retainage of ten percent (10%), provided that upon completion of fifty percent (50%) of the Work, as certified by the Construction Manager and Architect, such amount shall be reduced to zero percent (0%); Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

  **.3** add the Contractor's Fee, less retainage of ten percent (10 %).The Contractor's Fee shall be computed upon the Cost of the Work described in the two preceding Clauses at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work in the two preceding Clauses bears to a reasonable estimate of the probable Cost of the Work upon its completion;

  **.4** subtract the aggregate of previous payments made by the Owner;

  **.5** subtract the shortfall, if any, indicated by the Contractor in the documentation required by Paragraph 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation; and

  **.6** subtract amounts, if any, for which the Construction Manager or Architect has withheld or nullified a Certificate for Payment as provided in Paragraph 9.5 of AIA Document A201-1997. No retainage shall be withheld from the Contractor on General Conditions as defined in the Assignment of Cost Categories, Exhibit D, or on materials purchased directly by the Contractor.

**12.1.8** Except with the Owner's prior approval, payments to Subcontractors shall be subject to retainage of as set forth in Article 12.1.7 of this Agreement. The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments and retention for Subcontractors. Any disbursements for the cost of any materials, furnishings, fixtures, machinery or equipment not yet incorporated into the Project ("Stored Materials") shall be subject to retainage in an amount equal to ten percent (10%) and shall be contingent upon the Owner's lender (the 'Lender") receiving satisfactory evidence that: (a) the Stored Materials are components in a form ready for incorporation into the Work; (b) the Stored Materials are stored at the Project Site, in a bonded warehouse, at a site controlled by the Contractor, or at such other site as the Lender shall approve, and are protected against theft and damage; (c) the Stored Materials have been paid for in full or will be paid for with the funds to be disbursed and all lien rights or claims of the supplier have been released or will be released upon payment

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

with disbursed funds; (d) the Lender has or will have upon payment with disbursed funds a perfected, first priority security interest in the Stored Materials; and (e) the Stored Materials are insured for an amount equal to their replacement cost. The structural steel will be purchased by Cives Steel and stored at their Gouvenor, NY facility as it is being fabricated. Payment will be made for steel warehoused at the Cives Facility if the proper insurance and security interest requirements have been met.

**12.1.9  [Deleted]**

## 12.2  FINAL PAYMENT

**12.2.1**  Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

   .1  the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Subparagraph 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

   .2  a final Certificate for Payment has been issued by the Construction Manager, and Architect as applicable, and final lien waivers have been submitted by the Contractor and Final Conditional Lien Waivers (conditioned only upon receipt of final payment) have been submitted from the Subcontractors, provided however that Contractor shall be obligated to deliver Final Unconditional Lien Waivers from the Subcontractors (following receipt of final payment by Subcontractors) to the Owner within twenty one (21) days after Contractor's receipt of the Final Payment.

**12.2.2**  The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Construction Manager's, and Architect's as applicable, final Certificate for Payment, or as follows: Contractor shall be entitled to petition Owner for early release of Final Payment to certain early release trades, prior to substantial completion of the overall Work.  Contractor and Owner anticipate that such trades shall include structural steel, concrete, earthwork, slurry-wall, mini-piles, demolition, and asbestos abatement.  Release of Final Payment to such trades shall be made by Owner, provided that the work was performed satisfactorily and there are no outstanding claims or issues related to such trades.

**12.2.3**  The Owner's accountants will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Construction Manager by the Contractor. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Contractor's final accounting, and provided the other conditions of Subparagraph 12.2.1 have been met, the Construction Manager and Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Construction Manager's and Architect's reasons for withholding a certificate as provided in Subparagraph 9.5.1 of the AIA Document A201-1997. The time periods stated in this Subparagraph 12.2.3 supersede those stated in Subparagraph 9.4.1 of the AIA Document A201-1997.

**12.2.4**  If the Owner's accountants report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to demand arbitration of the disputed amount without a further decision of the Architect. Such demand for arbitration shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment; failure to demand arbitration within this 30 day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Contractor. Pending a final resolution by arbitration, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**12.2.5**  If, subsequent to final payment and at the Owner's written request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Contractor shall pay for such costs.

## ARTICLE 13  TERMINATION OR SUSPENSION

**13.1**  The Contract may be terminated by the Contractor, or by the Owner for convenience, as provided in Article 14 of AIA Document A201-1997. However, the amount to be paid to the Contractor under Subparagraph 14.1.3 of AIA Document A201-1997 shall not exceed the amount the Contractor would be entitled to receive under Paragraph 13.2 below, except that the Contractor's Fee shall be calculated as if the Work had been fully completed by the Contractor, including a reasonable estimate of the Cost of the Work for Work not actually completed.

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**13.2**    The Contract may be terminated by the Owner for cause as provided in Article 14 of AIA Document A201-1997. The amount, if any, to be paid to the Contractor under Subparagraph 14.2.4 of AIA Document A201-1997 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

**13.2.1**    Take the Cost of the Work incurred by the Contractor to the date of termination;

**13.2.2**    Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Subparagraph 5.1.2 or, if the Contractor's Fee is stated as a fixed sum in that Subparagraph, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

**13.2.3**    Subtract the aggregate of previous payments made by the Owner.

**13.3**    The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Subparagraph 13.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**13.4**    The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Subparagraph 14.3.2 of AIA Document A201-1997 except that the term "profit" shall be understood to mean the Contractor's Fee as described in Subparagraphs 5.1.2 and Paragraph 6.4 of this Agreement.

# ARTICLE 14  MISCELLANEOUS PROVISIONS

**14.1**    Where reference is made in this Agreement to a provision AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**14.2**    Payments due and unpaid under the Contract shall bear interest from <u>fifteen (15) days after</u> the date payment is due <u>at a rate of eight percent (8%) per annum.</u>  ~~at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.~~
*(Insert rate of interest agreed upon, if any.)*

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**14.3**    The Owner's representative is:
*(Name, address and other information.)*
<u>131 Dartmouth Street LLC</u>
<u>200 State Street</u>
<u>Boston, MA  02109</u>
<u>Attn:  James F. Sullivan, Sr.</u>

**14.4**    The Contractor's representative is:
*(Name, address and other information.)*
<u>Suffolk Construction Co., Inc.</u>
<u>65 Allerton Street</u>
<u>Boston, MA  02110</u>
<u>Attn: Scott Menard</u>

**14.4.1  The Construction Manager's representative is:**

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Commercial Construction Consulting, Inc.
313 Congress Street
Boston, MA 02110
Attn: John McMahon- Principal

**14.5** Neither the Owner's nor the Contractor's nor the Construction Manager's representative shall be changed without ten days' written notice to the other partiesy.

**14.6** Other provisions:

# ARTICLE 15 ENUMERATION OF CONTRACT DOCUMENTS

**15.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

**15.1.1** The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A111-1997.

**15.1.2** The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

**15.1.3** The Supplementary and other Conditions of the Contract are those attached hereto and those contained in the Project Manual dated , and are as follows:

| Document | Title | Pages |
|----------|-------|-------|
| Supplementary Conditions | | |

**15.1.4** The Specifications are those attached hereto and those contained in the Project Manual dated as in Subparagraph 15.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Pages |
|---------|-------|-------|
| See Exhibit B-1 | | |

**15.1.5** The Drawings are as follows, and are dated unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|--------|-------|------|
| See Exhibit B attached hereto and incorporated herein by reference. | | |

**15.1.6** The Addenda, if any, are as follows:

| Number | Date | Pages |
|--------|------|-------|
| 1&2: As shown in Exhibits B and B-1 | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 15.

**15.1.7** Other Documents, if any, forming part of the Contract Documents are as follows:
*(List here any additional documents, such as a list of alternates that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

15.1.8 In the event of any conflicts or discrepancies among the Contract Documents, interpretations will be based on professional standards of care within the industry. In the case of inconsistency between the Drawings and Specifications or within either Drawings or Specifications not clarified by an addendum, the better quality or greater quality of Work shall be provided in accordance with the Construction Manager's reasonable interpretation.

15.1.9 Contractor's Qualifications and Assumptions, attached as Exhibit C; Contractor's Assignment of Cost Categories, attached as Exhibit D; and List of Unit Prices, attached as Exhibit E.

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## ARTICLE 16 INSURANCE AND BONDS
*(List required limits of liability for insurance and bonds. AIA Document A201-1997 gives other specific requirements for insurance and bonds.)*
<u>As set forth in Exhibit F attached hereto and incorporated herein</u>

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

<u>131 Dartmouth Street LLC</u>
**Insert  D: BY: DFS Dartmouth, LLC, Its manager**

/BY: James F. Sullivan, Its manager
**Insert  E:  OWNER** *(Signature)*
*(Printed name and title)*

<u>Suffolk Construction Company, Inc.</u>
Insert  F: _____
By: _____
CONTRACTOR *(Signature)*

_____
*(Printed name and title)*

Walter K. McDonough
Vice President

CONSENTED TO:
NET MANAGER, LLC

By: _____
    Robert Prendergast
    Its Authorized Signatory

AIA DOCUMENT A111 -OWNER - CONTRACTOR AGREEMENT - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format A111-1997
User Document: SULLIVAN(111)GMP.DOC -- 11/29/2000. AIA License Number 111410, which expires on 12/31/2000 -- Page #14



# General Conditions of the Contract for Construction

## AIA Document A201 - 1997
## 1997 Edition - Electronic Format

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

This document has been approved and endorsed by The Associated General Contractors of America.

Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, ©1997 by The American Institute of Architects. Fifteenth Edition. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will subject the violator to legal prosecution.

## TABLE OF ARTICLES

1.  GENERAL PROVISIONS

2.  OWNER

3.  CONTRACTOR

4.  ADMINISTRATION OF THE CONTRACT

5.  SUBCONTRACTORS

6.  CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7.  CHANGES IN THE WORK

8.  TIME

9.  PAYMENTS AND COMPLETION

10. PROTECTION OF PERSONS AND PROPERTY

11. INSURANCE AND BONDS

12. UNCOVERING AND CORRECTION OF WORK

13. MISCELLANEOUS PROVISIONS

14. TERMINATION OR SUSPENSION OF THE CONTRACT

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

# INDEX

Acceptance of Nonconforming Work
9.6.6, 9.9.3, 12.3

Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3

Access to Work
**3.16,** 6.2.1, 12.1

Accident Prevention
4.2.3, 10

Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 4.3.8, 4.4.1, 8.3.1, 9.5.1,
10.2.5, 13.4.2, 13.7, 14.1

Addenda
1.1.1, 3.11

Additional Costs, Claims for
4.3.4, 4.3.5, 4.3.6, 6.1.1, 10.3

Additional Inspections and Testing
9.8.3, 12.2.1, 13.5

Additional Time, Claims for
4.3.4, 4.3.7, 8.3.2

**ADMINISTRATION OF THE CONTRACT**
3.1.3, **4,** 9.4, 9.5

Advertisement or Invitation to Bid
1.1.1

Aesthetic Effect
4.2.13, 4.5.1

Allowances
**3.8**

All-risk Insurance
11.4.1.1

Applications for Payment
4.2.5, 7.3.8, 9.2, **9.3,** 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10,
11.1.3, 14.2.4, 14.4.3

Approvals
2.4, 3.1.3, 3.5, 3.10.2, 3.12, 4.2.7, 9.3.2, 13.4.2, 13.5

Arbitration
4.3.3, 4.4, 4.5.1, 4.5.2, **4.6,** 8.3.1, 9.7.1, 11.4.9, 11.4.10

Architect
**4.1**

Architect, Definition of
4.1.1

Architect, Extent of Authority
2.4, 3.12.7, 4.2, 4.3.6, 4.4, 5.2, 6.3, 7.1.2, 7.3.6, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.8.3, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1,
13.5.2, 14.2.2, 14.2.4

Architect, Limitations of Authority and Responsibility
2.1.1, 3.3.3, 3.12.4, **3.12.8,** 3.12.10, 4.1.2, 4.2.1, 4.2.2,
4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 4.4, 5.2.1, 7.4,
9.4.2, 9.6.4, 9.6.6

Architect's Additional Services and Expenses
2.4, 11.4.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4

Architect's Administration of the Contract
3.1.3, **4.2,** 4.3.4, 4.4, 9.4, 9.5

Architect's Approvals
2.4, 3.1.3, 3.5.1, 3.10.2, 4.2.7

Architect's Authority to Reject Work
3.5.1, 4.2.6, 12.1.2, 12.2.1

Architect's Copyright
1.6

Architect's Decisions
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5, 4.4.6,
4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4

Architect's Inspections
4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5

Architect's Instructions
3.2.3, 3.3.1, 4.2.6, 4.2.7, 4.2.8, 7.4.1, 12.1, 13.5.2

Architect's Interpretations
4.2.11, 4.2.12, 4.3.6

Architect's Project Representative
4.2.10

Architect's Relationship with Contractor
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1, 3.7.3,
3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4, 4.4.1,
4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9,
10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5

Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.4.7

Architect's Representations
9.4.2, 9.5.1, 9.10.1

Architect's Site Visits
4.2.2, 4.2.5, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5

Asbestos
10.3.1

Attorneys' Fees
3.18.1, 9.10.2, 10.3.3

Award of Separate Contracts
6.1.1, 6.1.2

Award of Subcontracts and Other Contracts for Portions of the
Work
**5.2**

Basic Definitions
**1.1**

Bidding Requirements
1.1.1, 1.1.7, 5.2.1, 11.5.1

Boiler and Machinery Insurance
11.4.2

Bonds, Lien
9.10.2

Bonds, Performance, and Payment
7.3.6.4, 9.6.7, 9.10.3, 11.4.9, 11.5

Building Permit
3.7.1

Capitalization

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

**1.3**

Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5

Certificates for Payment
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4

Certificates of Inspection, Testing or Approval
13.5.4

Certificates of Insurance
9.10.2, 11.1.3

Change Orders
1.1.1, 2.4.1, 3.4.2, 3.8.2.3, 3.11.1, 3.12.8, 4.2.8, 4.3.4, 4.3.9,
5.2.3, 7.1, 7.2, 7.3, 8.3.1, 9.3.1.1, 9.10.3, 11.4.1.2, 11.4.4,
11.4.9, 12.1.2

Change Orders, Definition of
7.2.1

**CHANGES IN THE WORK**
3.11, 4.2.8, **7**, 8.3.1, 9.3.1.1, 11.4.9

Claim, Definition of
**4.3.1**

Claims and Disputes
3.2.3, **4.3**, 4.4, 4.5, 4.6, 6.1.1, 6.3, 7.3.8, 9.3.3, 9.10.4,
10.3.3

Claims and Timely Assertion of Claims
**4.6.5**

Claims for Additional Cost
3.2.3, 4.3.4, **4.3.5**, 4.3.6, 6.1.1, 7.3.8, 10.3.2

Claims for Additional Time
3.2.3, 4.3.4, **4.3.7**, 6.1.1, 8.3.2, 10.3.2

Claims for Concealed or Unknown Conditions
**4.3.4**

Claims for Damages
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.4.5, 11.4.7, 14.1.3, 14.2.4

Claims Subject to Arbitration
4.4.1, 4.5.1, 4.6.1

Cleaning Up
**3.15**, 6.3

Commencement of Statutory Limitation Period
**13.7**

Commencement of the Work, Conditions Relating to
2.2.1, 3.2.1, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 4.3.5, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.4.1, 11.4.6, 11.5.1

Commencement of the Work, Definition of
8.1.2

Communications Facilitating Contract Administration
3.9.1, **4.2.4**

Completion, Conditions Relating to
1.6.1, 3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1,
9.10, 12.2, 13.7, 14.1.2

**COMPLETION, PAYMENTS AND**
**9**

Completion, Substantial

4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 9.10.4.2,
12.2, 13.7

Compliance with Laws
1.6.1, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6.4, 4.6.6,
9.6.4, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6,
14.1.1, 14.2.1.3

Concealed or Unknown Conditions
4.3.4, 8.3.1, 10.3

Conditions of the Contract
1.1.1, 1.1.7, 6.1.1, 6.1.4

Consent, Written
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2

**CONSTRUCTION BY OWNER OR BY SEPARATE**
**CONTRACTORS**
1.1.4, **6**

Construction Change Directive, Definition of
7.3.1

Construction Change Directives
1.1.1, 3.12.8, 4.2.8, 4.3.9, 7.1, **7.3**, 9.3.1.1

Construction Schedules, Contractor's
1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Contingent Assignment of Subcontracts
**5.4**, 14.2.2.2

Continuing Contract Performance
**4.3.3**

Contract, Definition of
1.1.2

CONTRACT, TERMINATION OR SUSPENSION OF THE
5.4.1.1, 11.4.9, **14**

Contract Administration
3.1.3, 4, 9.4, 9.5

Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.4.6, 11.5.1

Contract Documents, The
1.1, 1.2

Contract Documents, Copies Furnished and Use of
1.6, 2.2.5, 5.3

Contract Documents, Definition of
1.1.1

Contract Sum
3.8, 4.3.4, 4.3.5, 4.4.5, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2,
9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.4.1, 14.2.4, 14.3.2

Contract Sum, Definition of
9.1

Contract Time
4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1.3, 7.3, 7.4, 8.1.1, 8.2, 8.3.1,
9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2

Contract Time, Definition of
8.1.1

**CONTRACTOR**
**3**

Contractor, Definition of

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

3.1, 6.1.2

Contractor's Construction Schedules
1.4.1.2, **3.10**, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3

Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.4.7, 14.1, 14.2.1.1,

Contractor's Liability Insurance
**11.1**

Contractor's Relationship with Separate Contractors and Owner's
Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.4.7, 12.1.2, 12.2.4

Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.4.1.2,
11.4.7, 11.4.8

Contractor's Relationship with the Architect
1.1.2, 1.6, 3.1.3, 3.2.1, 3.2.2, 3.2.3, 3.3.1, 3.4.2, 3.5.1, 3.7.3,
3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 4.3.4, 4.4.1,
4.4.7, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, .5, 9.7, 9.8, 9.9,
10.2.6, 10.3, 11.3, 11.4.7, 12, 13.4.2, 13.5

Contractor's Representations
1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2

Contractor's Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10

Contractor's Review of Contract Documents
1.5.2, 3.2, 3.7.3

Contractor's Right to Stop the Work
9.7

Contractor's Right to Terminate the Contract
4.3.10, 14.1

Contractor's Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.5.2

Contractor's Superintendent
3.9, 10.2.6

Contractor's Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4, 7.1.3,
7.3.4, 7.3.6, 8.2, 10, 12, 14

Contractual Liability Insurance
11.1.1.8, 11.2, 11.3

Coordination and Correlation
1.2, 1.5.2, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1

Copies Furnished of Drawings and Specifications
1.6, 2.2.5, 3.11

Copyrights
1.6, 3.17

Correction of Work
2.3, 2.4, 3.7.4, 4.2.1, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, 12.2,
13.7.1.3

Correlation and Intent of the Contract Documents
**1.2**

Cost, Definition of
7.3.6

Costs

2.4, 3.2.3, 3.7.4, 3.8.2, 3.15.2, 4.3, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.6, 7.3.7, 7.3.8, 9.10.2, 10.3.2, 10.5, 11.3, 11.4,
12.1, 12.2.1, 12.2.4, 13.5, 14

Cutting and Patching
6.2.5, **3.14**

Damage to Construction of Owner or Separate Contractors
3.14.2, 6.2.4, 9.2.1.5, 10.2.1.2, 10.2.5, 10.6, 11.1, 11.4,
12.2.4

Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.6, 11.4, 12.2.4

Damages, Claims for
3.2.3, 3.18, 4.3.10, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.4.5, 11.4.7, 14.1.3, 14.2.4

Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2

Date of Commencement of the Work, Definition of
8.1.2

Date of Substantial Completion, Definition of
8.1.3

Day, Definition of
8.1.4

Decisions of the Architect
4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.3.4, 4.4.1, 4.4.5, 4.4.6,
4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4

Decisions to Withhold Certification
9.4.1, **9.5**, 9.7, 14.1.1.3

Defective or Nonconforming Work, Acceptance, Rejection and
Correction of
2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3,
9.10.4, 12.2.1, 13.7.1.3

Defective Work, Definition of
3.5.1

Definitions
1.1, 2.1.1, 3.1, 3.5.1, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 4.3.1, 5.1,
6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1

Delays and Extensions of Time
3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1,
7.5.1, **8.3**, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2

Disputes
4.1.4, 4.3, 4.4, 4.5, 4.6, 6.3, 7.3.8

Documents and Samples at the Site
**3.11**

Drawings, Definition of
1.1.5

Drawings and Specifications, Use and Ownership of
1.1.1, 1.3, 2.2.5, 3.11, 5.3

Effective Date of Insurance
8.2.2, 11.1.2

Emergencies
4.3.5, **10.6**, 14.1.1.2

Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

11.1.1, 11.4.7, 14.1, 14.2.1.1

Equipment, Labor, Materials and
    1.1.3, 1.1.6, 3.4, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6,
    4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1,
    10.2.4, 14.2.1.2

Execution and Progress of the Work
    1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3, 3.4, 3.5, 3.7, 3.10,
    3.12, 3.14, 4.2.2, 4.2.3, 4.3.3, 6.2.2, 7.1.3, 7.3.4, 8.2, 9.5,
    9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3

Extensions of Time
    3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3, 7.4.1, 9.5.1,
    9.7.1, 10.3.2, 10.6.1, 14.3.2

Failure of Payment
    4.3.6, 9.5.1.3, **9.7**, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6

Faulty Work
    (See Defective or Nonconforming Work)

Final Completion and Final Payment
    4.2.1, 4.2.9, 4.3.2, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.4.1, 11.4.5,
    12.3.1, 13.7, 14.2.4, 14.4.3

Financial Arrangements, Owner's
    2.2.1, 13.2.2, 14.1.1.5

Fire and Extended Coverage Insurance
    11.4

**GENERAL PROVISIONS**
    **1**

Governing Law
    **13.1**

Guarantees (See Warranty)

Hazardous Materials
    10.2.4, **10.3**, 10.5

Identification of Contract Documents
    1.5.1

Identification of Subcontractors and Suppliers
    5.2.1

Indemnification
    3.17, **3.18**, 9.10.2, 10.3.3, 10.5, 11.4.1.2, 11.4.7

Information and Services Required of the Owner
    2.1.2, **2.2**, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3, 6.1.4,
    6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4,
    13.5.1, 13.5.2, 14.1.1.4, 14.1.4

Injury or Damage to Person or Property
    **4.3.8**, 10.2, 10.6

Inspections
    3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.2, 9.8.3,
    9.9.2, 9.10.1, 12.2.1, 13.5

Instructions to Bidders
    1.1.1

Instructions to the Contractor
    3.2.3, 3.3.1, 3.8.1, 4.2.8, 5.2.1, 7, 12, 8.2.2, 13.5.2

Insurance
    3.18.1, 6.1.1, 7.3.6, 8.2.1, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 9.10.5,
    11

Insurance, Boiler and Machinery

11.4.2

Insurance, Contractor's Liability
    11.1

Insurance, Effective Date of
    8.2.2, 11.1.2

Insurance, Loss of Use
    11.4.3

Insurance, Owner's Liability
    11.2

Insurance, Project Management Protective Liability
    11.3

Insurance, Property
    10.2.5, **11.4**

Insurance, Stored Materials
    9.3.2, 11.4.1.4

**INSURANCE AND BONDS**
    **11**

Insurance Companies, Consent to Partial Occupancy
    9.9.1, 11.4.1.5

Insurance Companies, Settlement with
    11.4.10

Intent of the Contract Documents
    1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4

Interest
    13.6

Interpretation
    1.2.3, **1.4**, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4

Interpretations, Written
    4.2.11, 4.2.12, 4.3.6

Joinder and Consolidation of Claims Required
    4.6.4

Judgment on Final Award
    4.6.6

Labor and Materials, Equipment
    1.1.3, 1.1.6, **3.4**, 3.5.1, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 42.6,
    4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1,
    10.2.4, 14.2.1.2

Labor Disputes
    8.3.1

Laws and Regulations
    1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6, 9.6.4,
    9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14

Liens
    2.1.2, 4.4.8, 8.2.2, 9.3.3, 9.10

Limitation on Consolidation or Joinder
    **4.6.4**

Limitations, Statutes of
    4.6.3, 12.2.6, 13.7

Limitations of Liability
    2.3, 3.2.1, 3.5.1, 3.7.3, 3.12.8, 3.12.10, 3.17, 3.18, 4.2.6,
    4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 9.10.4, 10.3.3,
    10.2.5, 11.1.2, 11.2.1, 11.4.7, 12.2.5, 13.4.2

Limitations of Time

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1,
9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5,
11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14

Loss of Use Insurance
    **11.4.3**
Material Suppliers
    1.6, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
    10.2.4, 10.3, 10.5
Materials, Labor, Equipment and
    1.1.3, 1.1.6, 1.6.1, 3.4, 3.5.1, 3.8.2, 3.8.23, 3.12, 3.13,
    3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 9.5.1.3,
    9.10.2, 10.2.1, 10.2.4, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of
Construction
    3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
    4.4.8
Mediation
    4.4.1, 4.4.5, 4.4.6, 4.4.8, **4.5**, 4.6.1, 4.6.2, 8.3.1, 10.5
Minor Changes in the Work
    1.1.1, 3.12.8, 4.2.8, 4.3.6, 7.1, 7.4
MISCELLANEOUS PROVISIONS
    13
Modifications, Definition of
    1.1.1
Modifications to the Contract
    1.1.1, 1.1.2, 3.7.3, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
    10.3.2, 11.4.1
Mutual Responsibility
    **6.2**
Nonconforming Work, Acceptance of
    9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
    2.3, 2.4, 3.5.1, 4.2.6, 6.2.5, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1,
    13.7.1.3
Notice
    2.2.1, 2.3, 2.4, 3.2.3, 3.3.1, 3.7.2, 3.7.4, 3.12.9, 4.3, 4.4.8,
    4.6.5, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 11.1.3, 11.4.6, 12.2.2,
    12.2.4, 13.3, 13.5.1, 13.5.2, 14.1, 14.2
Notice, Written
    2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5, 5.2.1,
    8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4,
    **13.3**, 14
Notice of Testing and Inspections
    13.5.1, 13.5.2
Notice to Proceed
    8.2.2
Notices, Permits, Fees and
    2.2.2, **3.7**, 3.13, 7.3.6.4, 10.2.2
Observations, Contractor's
    1.5.2, 3.2, 3.7.3, 4.3.4

Occupancy
    2.2.2, 9.6.6, 9.8, 11.4.1.5
Orders, Written
    1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
    14.3.1
**OWNER**
    **2**
Owner, Definition of
    2.1
Owner, Information and Services Required of the
    2.1.2, **2.2**, 3.2.1, 3.12.4, 3.12.10, 4.2.7, 4.3.3, 6.1.3, 6.1.4,
    6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4,
    13.5.1, 13.5.2, 14.1.1.4, 14.1.4
Owner's Authority
    1.6, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3,
    4.2.4, 4.2.9, 4.3.6, 4.4.7, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1,
    7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.9.1, 9.10.2, 10.3.2,
    11.1.3, 11.3.1, 11.4.3, 11.4.10, 12.2.2, 12.3.1, 13.2.2, 14.3,
    14.4
Owner's Financial Capability
    2.2.1, 13.2.2, 14.1.1.5
Owner's Liability Insurance
    **11.2**
Owner's Loss of Use Insurance
    11.4.3
Owner's Relationship with Subcontractors
    1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
    **2.4**, 12.2.4, 14.2.2.2
Owner's Right to Clean Up
    **6.3**
Owner's Right to Perform Construction and to  Award Separate
Contracts
    **6.1**
Owner's Right to Stop the Work
    **2.3**
Owner's Right to Suspend the Work
    14.3
Owner's Right to Terminate the Contract
    14.2
Ownership and Use of Drawings, Specifications and Other
Instruments of Service
    1.1.1, **1.6**, 2.2.5, 3.2.1, 3.11.1, 3.17.1, 4.2.12, 5.3
Partial Occupancy or Use
    9.6.6, **9.9**, 11.4.1.5
Patching, Cutting and
    **3.14**, 6.2.5
Patents
    3.17
Payment, Applications for
    4.2.5, 7.3.8, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7.1, 9.8.5, 9.10.1,
    9.10.3, 9.10.5, 11.1.3, 14.2.4, 14.4.3
Payment, Certificates for

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7.1, 9.10.1,
**9.10.3**, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
    4.3.6, 9.5.1.3, **9.7**, 9.10.2, 14.1.1.3, 14.2.1.2, 13.6
Payment, Final
    4.2.1, 4.2.9, 4.3.2, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 11.4.5,
    **12.3.1**, 13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
    7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**
Payments, Progress
    4.3.3, 9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3
**PAYMENTS AND COMPLETION**
    **9**
Payments to Subcontractors
    5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 11.4.8, 14.2.1.2
PCB
    10.3.1
Performance Bond and Payment Bond
    7.3.6.4, 9.6.7, 9.10.3, 11.4.9, **11.5**
Permits, Fees and Notices
    2.2.2, 3.7, 3.13, 7.3.6.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
    **10**
Polychlorinated Biphenyl
    10.3.1
Product Data, Definition of
    3.12.2
Product Data and Samples, Shop Drawings
    3.11, **3.12**, 4.2.7
Progress and Completion
    4.2.2, 4.3.3, **8.2**, 9.8, 9.9.1, 14.1.4
Progress Payments
    4.3.3, 9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3
Project, Definition of the
    1.1.4
Project Management Protective Liability Insurance
    11.3
Project Manual, Definition of the
    1.1.7
Project Manuals
    2.2.5
Project Representatives
    4.2.10
Property Insurance
    10.2.5, 11.4
**PROTECTION OF PERSONS AND PROPERTY**
    **10**
Regulations and Laws
    1.6, 3.2.2, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 4.4.8, 4.6, 9.6.4,
    9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14
Rejection of Work
    3.5.1, 4.2.6, 12.2.1
Releases and Waivers of Liens

9.10.2
Representations
    1.5.2, 3.5.1, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2,
    9.10.1
Representatives
    2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.10, 5.1.1, 5.1.2, 13.2.1
Resolution of Claims and Disputes
    **4.4**, 4.5, 4.6
Responsibility for Those Performing the Work
    3.3.2, 3.18, 4.2.3, 4.3.8, 5.3.1, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
    9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field Conditions by
Contractor
    1.5.2, **3.2**, 3.7.3, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
    3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by
Contractor
    3.12
Rights and Remedies
    1.1.2, 2.3, 2.4, 3.5.1, 3.15.2, 4.2.6, 4.3.4, 4.5, 4.6, 5.3, 5.4,
    6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4,
    13.4, 14
Royalties, Patents and Copyrights
    3.17
Rules and Notices for Arbitration
    4.6.2
Safety of Persons and Property
    10.2, 10.6
Safety Precautions and Programs
    3.3.1, 4.2.2, 4.2.7, 5.3.1, **10.1**, 10.2, 10.6
Samples, Definition of
    3.12.3
Samples, Shop Drawings, Product Data and
    3.11, **3.12**, 4.2.7
Samples at the Site, Documents and
    **3.11**
Schedule of Values
    **9.2**, 9.3.1
Schedules, Construction
    1.4.1.2, 3.10, 3.12.1, 3.12.2, 4.3.7.2, 6.1.3
Separate Contracts and Contractors
    1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 4.6.4, 6, 8.3.1, 11.4.7,
    12.1.2, 12.2.5
Shop Drawings, Definition of
    3.12.1
Shop Drawings, Product Data and Samples
    3.11, **3.12**, 4.2.7
Site, Use of
    3.13, 6.1.1, 6.2.1
Site Inspections
    1.2.2, 3.2.1, 3.3.3, 3.7.1, 4.2, 4.3.4, 9.4.2, 9.10.1, 13.5

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

Site Visits, Architect's
    4.2.2, 4.2.9, 4.3.4, 9.4.2, 9.5.1, 9.9.2, 10.1, 13.5
Special Inspections and Testing
    4.2.6, 12.2.1, 13.5
Specifications, Definition of the
    1.1.6
Specifications, The
    1.1.1, **1.1.6**, 1.1.7, 1.2.2, 1.6, 3.11, 3.12.10, 3.17
Statute of Limitations
    4.6.3, 12.2.6, 13.7
Stopping the Work
    2.3, 4.3.6, 9.7, 10.3, 14.1
Stored Materials
    6.2.1, 9.3.2, 10.2.1.2, 10.2.4, 11.4.1.4
Subcontractor, Definition of
    5.1.1
**SUBCONTRACTORS**
    **5**
Subcontractors, Work by
    1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
Subcontractual Relations
    **5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 11.4.7, 11.4.8, 14.1,
    14.2.1, 14.3.2
Submittals
    1.6, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.6, 9.2, 9.3, 9.8,
    9.9.1, 9.10.2, 9.10.3, 11.1.3
Subrogation, Waivers of
    6.1.1, 11.4.5, 11.4.7
Substantial Completion
    4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 9.10.4.2,
    12.2, 13.7
Substantial Completion, Definition of
    9.8.1
Substitution of Subcontractors
    5.2.3, 5.2.4
Substitution of Architect
    4.1.3
Substitutions of Materials
    3.4.2, 3.5.1, 7.3.7
Sub-subcontractor, Definition of
    5.1.2
Subsurface Conditions
    4.3.4
Successors and Assigns
    **13.2**
Superintendent
    **3.9**, 10.2.6
Supervision and Construction Procedures
    1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 4.3.3, 6.1.3, 6.2.4,
    7.1.3, 7.3.6, 8.2, 8.3.1, 9.4.2, 10, 12, 14
Surety
    4.4.7, 5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of

9.10.2, 9.10.3
Surveys
    2.2.3
Suspension by the Owner for Convenience
    **14.4**
Suspension of the Work
    5.4.2, 14.3
Suspension or Termination of the Contract
    4.3.6, 5.4.1.1, 11.4.9, 14
Taxes
    **3.6**, 3.8.2.1, 7.3.6.4
Termination by the Contractor
    4.3.10, **14.1**
Termination by the Owner for Cause
    4.3.10, 5.4.1.1, **14.2**
Termination of the Architect
    4.1.3
Termination of the Contractor
    14.2.2
**TERMINATION OR SUSPENSION OF THE CONTRACT**
    **14**
Tests and Inspections
    3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1,
    10.3.2, 11.4.1.1, 12.2.1, **13.5**
**TIME**
    **8**
Time, Delays and Extensions of
    3.2.3, 4.3.1, 4.3.4, 4.3.7, 4.4.5, 5.2.3, 7.2.1, 7.3.1, 7.4.1,
    7.5.1, **8.3**, 9.5.1, 9.7.1, 10.3.2, 10.6.1, 14.3.2
Time Limits
    2.1.2, 2.2, 2.4, 3.2.1, 3.7.3, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
    4.3, 4.4, 4.5, 4.6, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1,
    9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.4.1.5,
    11.4.6, 11.4.10, 12.2, 13.5, 13.7, 14
Time Limits on Claims
    **4.3.2**, 4.3.4, 4.3.8, 4.4, 4.5, 4.6
Title to Work
    9.3.2, 9.3.3
**UNCOVERING AND CORRECTION OF WORK**
    **12**
Uncovering of Work
    **12.1**
Unforeseen Conditions
    4.3.4, 8.3.1, 10.3
Unit Prices
    4.3.9, 7.3.3.2
Use of Documents
    1.1.1, 1.6, 2.2.5, 3.12.6, 5.3
Use of Site
    **3.13**, 6.1.1, 6.2.1
Values, Schedule of
    **9.2**, 9.3.1
Waiver of Claims by the Architect

**AIA DOCUMENT A201**-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

13.4.2

Waiver of Claims by the Contractor
4.3.10, 9.10.5, 11.4.7, 13.4.2

Waiver of Claims by the Owner
4.3.10, 9.9.3, 9.10.3, 9.10.4, 11.4.3, 11.4.5, 11.4.7, 12.2.2.1,
13.4.2, 14.2.4

Waiver of Consequential Damages
4.3.10, 14.2.4

Waiver of Liens
9.10.2, 9.10.4

Waivers of Subrogation
6.1.1, 11.4.5, 11.4.7

Warranty
3.5, 4.2.9, 4.3.5.3, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2,
13.7.1.3

Weather Delays

4.3.7.2

Work, Definition of
1.1.3

Written Consent
1.6, 3.4.2, 3.12.8, 3.14.2, 4.1.2, 4.3.4, 4.6.4, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2

Written Interpretations
4.2.11, 4.2.12, 4.3.6

Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 4.3, 4.4.8, 4.6.5, 5.2.1,
8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.4.6, 12.2.2, 12.2.4,
13.3, 14

Written Orders
1.1.1, 2.3, 3.9, 4.3.6, 7, 8.2.2, 11.4.9, 12.1, 12.2, 13.5.2,
14.3.1

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE
AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying
violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be
reproduced without violation until the date of expiration as noted below.

## ARTICLE 1 GENERAL PROVISIONS
### 1.1 BASIC DEFINITIONS
#### 1.1.1    THE CONTRACT DOCUMENTS

The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements) .

#### 1.1.2    THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

#### 1.1.3    THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

#### 1.1.4    THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

#### 1.1.5    THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

#### 1.1.6    THE SPECIFICATIONS

The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

#### 1.1.7    THE PROJECT MANUAL

The Project Manual is a volume assembled for the Work which may include the bidding requirements, sample forms, Conditions of the Contract and Specifications.

### 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

**1.2.1**    The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**1.2.2**    Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**1.2.3**    Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

---

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## 1.3 CAPITALIZATION
**1.3.1**    Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to Paragraphs, Subparagraphs and Clauses in the document or (3) the titles of other documents published by the American Institute of Architects.

## 1.4 INTERPRETATION
**1.4.1**    In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## 1.5 EXECUTION OF CONTRACT DOCUMENTS
**1.5.1**    The Contract Documents shall be signed by the Owner and Contractor. If either the Owner or Contractor or both do not sign all the Contract Documents, the Architect shall identify such unsigned Documents upon request.

**1.5.2**    Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.

## 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
**1.6.1**    The Drawings, Specifications and other documents, including those in electronic form, prepared by the Architect and the Architect's consultants are Instruments of Service through which the Work to be executed by the Contractor is described. The Contractor may retain one record set. Neither the Contractor nor any Subcontractor, Sub-subcontractor or material or equipment supplier shall own or claim a copyright in the Drawings, Specifications and other documents prepared by the Architect or the Architect's consultants, and unless otherwise indicated the Architect and the Architect's consultants shall be deemed the authors of them and will retain all common law, statutory and other reserved rights, in addition to the copyrights. All copies of Instruments of Service, except the Contractor's record set, shall be returned or suitably accounted for to the Architect, on request, upon completion of the Work. The Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants, and copies thereof furnished to the Contractor, are for use solely with respect to this Project. They are not to be used by the Contractor or any Subcontractor, Sub-subcontractor or material or equipment supplier on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this authorization shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect and the Architect's consultants. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' copyrights or other reserved rights.

## ARTICLE 2 OWNER
### 2.1 GENERAL
**2.1.1**    The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Subparagraph 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**2.1.2**    The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

**2.2.1** The Owner shall, at the written request of the Contractor, prior to commencement of the Work and thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**2.2.2** Except for permits and fees, including those required under Subparagraph 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**2.2.3** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**2.2.4** Information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

**2.2.5** Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

## 2.3 OWNER'S RIGHT TO STOP THE WORK

**2.3.1** If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Paragraph 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Subparagraph 6.1.3.

## 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

**2.4.1** If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a three-day period. If the Contractor within such three-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

## ARTICLE 3 CONTRACTOR
### 3.1 GENERAL

**3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

**3.1.2** The Contractor shall perform the Work in accordance with the Contract Documents.

**3.1.3** The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

## 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

**3.2.1**    Since the Contract Documents are complementary, before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Subparagraph 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect as a request for information in such form as the Architect may require.

**3.2.2**    Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

**3.2.3**    If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Subparagraphs 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Subparagraphs 4.3.6 and 4.3.7. If the Contractor fails to perform the obligations of Subparagraphs 3.2.1 and 3.2.2, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

## 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

**3.3.1**    The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

**3.3.2**    The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

**3.3.3**    The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## 3.4 LABOR AND MATERIALS

**3.4.1**    Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**3.4.2**    The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and in accordance with a Change Order.

**3.4.3**    The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

## 3.5 WARRANTY
**3.5.1**    The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform to the requirements of the Contract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, modifications not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

## 3.6 TAXES
**3.6.1**    The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## 3.7 PERMITS, FEES AND NOTICES
**3.7.1**    Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit and other permits and governmental fees, licenses and inspections necessary for proper execution and completion of the Work which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.

**3.7.2**    The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

**3.7.3**    It is not the Contractor's responsibility to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations. However, if the Contractor observes that portions of the Contract Documents are at variance therewith, the Contractor shall promptly notify the Architect and Owner in writing, and necessary changes shall be accomplished by appropriate Modification.

**3.7.4**    If the Contractor performs Work knowing it to be contrary to laws, statutes, ordinances, building codes, and rules and regulations without such notice to the Architect and Owner, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

## 3.8 ALLOWANCES
**3.8.1**    The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**3.8.2**    Unless otherwise provided in the Contract Documents:

.1    allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances;

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

.3 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Clause 3.8.2.1 and (2) changes in Contractor's costs under Clause 3.8.2.2.

**3.8.3** Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

## 3.9 SUPERINTENDENT
**3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

## 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES
**3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**3.10.2** The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

**3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

## 3.11 DOCUMENTS AND SAMPLES AT THE SITE
**3.11.1** The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

## 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES
**3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**3.12.3** Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Subparagraph 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

**3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

**3.12.6** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice the Architect's approval of a resubmission shall not apply to such revisions.

**3.12.10** The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Subparagraph 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

**3.13    USE OF SITE**
**3.13.1** The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**3.14    CUTTING AND PATCHING**
**3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format A201-1997

shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## 3.15 CLEANING UP

**3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

**3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor.

## 3.16 ACCESS TO WORK

**3.16.1** The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## 3.17 ROYALTIES, PATENTS AND COPYRIGHTS

**3.17.1** The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

## 3.18 INDEMNIFICATION

**3.18.1** To the fullest extent permitted by law and to the extent claims, damages, losses or expenses are not covered by Project Management Protective Liability insurance purchased by the Contractor in accordance with Paragraph 11.3, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

**3.18.2** In claims against any person or entity indemnified under this Paragraph 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Subparagraph 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

## ARTICLE 4 ADMINISTRATION OF THE CONTRACT

### 4.1 ARCHITECT

**4.1.1** The Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Architect" means the Architect or the Architect's authorized representative.

**4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**4.1.3** If the employment of the Architect is terminated, the Owner shall employ a new Architect against whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the former Architect.

## 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT

**4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents, and will be an Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Paragraph 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.

**4.2.2** The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Subparagraph 3.3.1.

**4.2.3** The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**4.2.4** **Communications Facilitating Contract Administration.** Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**4.2.5** Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**4.2.6** The Architect will have authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Subparagraphs 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**4.2.7** The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Paragraphs 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**4.2.8**    The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Paragraph 7.4.

**4.2.9**    The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**4.2.10**    If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**4.2.11**    The Architect will interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Paragraph 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

**4.2.12**    Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**4.2.13**    The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

## 4.3 CLAIMS AND DISPUTES
**4.3.1    Definition.**    A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

**4.3.2    Time Limits on Claims.**    Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.

**4.3.3    Continuing Contract Performance.**    Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Subparagraph 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**4.3.4    Claims for Concealed or Unknown Conditions.**    If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than 21 days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Paragraph 4.4.

**4.3.5   Claims for Additional Cost.** If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.6.

**4.3.6**   If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Paragraph 4.3.

**4.3.7   Claims for Additional Time**
**4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, ~~not~~ written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay only one Claim is necessary. *in the ele of any change order*

**4.3.7.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**4.3.8   Injury or Damage to Person or Property.** If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**4.3.9**   If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**4.3.10   Claims for Consequential Damages.** The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

.1   damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

.2   damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Subparagraph 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.

**4.4 RESOLUTION OF CLAIMS AND DISPUTES**
**4.4.1   Decision of Architect.** Claims, including those alleging an error or omission by the Architect but excluding those arising under Paragraphs 10.3 through 10.5, shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to mediation, arbitration or litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect. The Architect will not decide disputes between the Contractor

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

and persons or entities other than the Owner.

**4.4.2**    The Architect will review Claims and within ten days of the receipt of the Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Architect is unable to resolve the Claim if the Architect lacks sufficient information to evaluate the merits of the Claim or if the Architect concludes that, in the Architect's sole discretion, it would be inappropriate for the Architect to resolve the Claim.

**4.4.3**    In evaluating Claims, the Architect may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Architect in rendering a decision. The Architect may request the Owner to authorize retention of such persons at the Owner's expense.

**4.4.4**    If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, advise the Architect when the response or supporting data will be furnished or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

**4.4.5**    The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and arbitration.

**4.4.6**    When a written decision of the Architect states that (1) the decision is final but subject to mediation and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede .arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.4.7**    Upon receipt of a Claim against the Contractor or at any time thereafter, the Architect or the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Architect or the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**4.4.8**    If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the Claim by the Architect, by mediation or arbitration.

**4.5 MEDIATION**
**4.5.1**    Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5 shall, after initial decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**4.5.2**    The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules of the American Arbitration Association currently in effect. Request for mediation shall be filed in writing with the other party to the Contract and with the American Arbitration Association. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of arbitration or legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**4.5.3**    The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

settlement agreements in any court having jurisdiction thereof.

## 4.6 ARBITRATION

**4.6.1**   Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

**4.6.2**   Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

**4.6.3**   A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

**4.6.4**   **Limitation on Consolidation or Joinder.**  No arbitration arising out of or relating to the Contract shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**4.6.5**   **Claims and Timely Assertion of Claims.**  The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**4.6.6**   **Judgment on Final Award.**  The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 5 SUBCONTRACTORS

### 5.1 DEFINITIONS

**5.1.1**   A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**5.1.2**   A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

**5.2.1**   Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of

**AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.**

the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

**5.2.2**    The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**5.2.3**    If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**5.2.4**    The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

## 5.3 SUBCONTRACTUAL RELATIONS
**5.3.1**    By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

## 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
**5.4.1**    Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Paragraph 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

**5.4.2**    Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

## ARTICLE 6 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
**6.1.1**    The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Contractor shall make such Claim as provided in Paragraph 4.3.

**6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Other until subsequently revised.

**6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights which apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

## 6.2 MUTUAL RESPONSIBILITY
**6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

**6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**6.2.3** The Owner shall be reimbursed by the Contractor for costs incurred by the Owner which are payable to a separate contractor because of delays, improperly timed activities or defective construction of the Contractor. The Owner shall be responsible to the Contractor for costs incurred by the Contractor because of delays, improperly timed activities, damage to the Work or defective construction of a separate contractor.

**6.2.4** The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Subparagraph 10.2.5.

**6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Subparagraph 3.14.

## 6.3 OWNER'S RIGHT TO CLEAN UP
**6.3.1** If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.

# ARTICLE 7 CHANGES IN THE WORK
## 7.1 GENERAL
**7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**7.1.3**    Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

## 7.2 CHANGE ORDERS
**7.2.1**    A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

    **.1**    change in the Work;

    **.2**    the amount of the adjustment, if any, in the Contract Sum; and

    **.3**    the extent of the adjustment, if any, in the Contract Time.

**7.2.2**    Methods used in determining adjustments to the Contract Sum may include those listed in Subparagraph 7.3.3.

## 7.3 CONSTRUCTION CHANGE DIRECTIVES
**7.3.1**    A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**7.3.2**    A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**7.3.3**    If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

    **.1**    mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

    **.2**    unit prices stated in the Contract Documents or subsequently agreed upon;

    **.3**    cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

    **.4**    as provided in Subparagraph 7.3.6.

**7.3.4**    Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**7.3.5**    A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**7.3.6**    If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Clause 7.3.3.3, the Contractor shall keep and present, in such form as the

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Subparagraph 7.3.6 shall be limited to the following:

.1 costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2 costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3 rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4 costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5 additional costs of supervision and field office personnel directly attributable to the change.

**7.3.7** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**7.3.8** Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

**7.3.9** When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

### 7.4 MINOR CHANGES IN THE WORK
**7.4.1** The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

## ARTICLE 8 TIME
### 8.1 DEFINITIONS
**8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**8.1.2** The date of commencement of the Work is the date established in the Agreement.

**8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 9.8.

**8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### 8.2 PROGRESS AND COMPLETION
**8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**8.2.2**    The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner. the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

**8.2.3**    The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

## 8.3 DELAYS AND EXTENSIONS OF TIME
**8.3.1**    If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control. or by delay authorized by the Owner pending mediation and arbitration, or by other causes which the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.

**8.3.2**    Claims relating to time shall be made in accordance with applicable provisions of Paragraph 4.3.

**8.3.3**    This Paragraph 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.

## ARTICLE 9 PAYMENTS AND COMPLETION
### 9.1 CONTRACT SUM
**9.1.1**    The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### 9.2 SCHEDULE OF VALUES
**9.2.1**    Before the first Application for Payment. the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect. shall be used as a basis for reviewing the Contractor's Applications for Payment.

### 9.3 APPLICATIONS FOR PAYMENT
**9.3.1**    At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect an itemized Application for Payment for operations completed in accordance with the schedule of values. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.

**9.3.1.1** As provided in Subparagraph 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**9.3.1.2** Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**9.3.2**    Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

**9.3.3**    The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

## 9.4 CERTIFICATES FOR PAYMENT
**9.4.1**    The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Subparagraph 9.5.1.

**9.4.2**    The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## 9.5 DECISIONS TO WITHHOLD CERTIFICATION
**9.5.1**    The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Subparagraph 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Subparagraph 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Subparagraph 3.3.2, because of:

    .1    defective Work not remedied;

    .2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

    .3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

    .4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

.5   damage to the Owner or another contractor;

.6   reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7   persistent failure to carry out the Work in accordance with the Contract Documents.

**9.5.2**   When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

## 9.6 PROGRESS PAYMENTS

**9.6.1**   After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**9.6.2**   The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**9.6.3**   The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**9.6.4**   Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**9.6.5**   Payment to material suppliers shall be treated in a manner similar to that provided in Subparagraphs 9.6.2, 9.6.3 and 9.6.4.

**9.6.6**   A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**9.6.7**   Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

## 9.7 FAILURE OF PAYMENT

**9.7.1**   If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

## 9.8 SUBSTANTIAL COMPLETION

**9.8.1**   Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**9.8.3** Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

**9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

## 9.9 PARTIAL OCCUPANCY OR USE

**9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Clause 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Subparagraph 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

**9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## 9.10 FINAL COMPLETION AND FINAL PAYMENT

**9.10.1** Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:

   **.1**   liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

   **.2**   failure of the Work to comply with the requirements of the Contract Documents; or

   **.3**   terms of special warranties required by the Contract Documents.

**9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

## ARTICLE 10  PROTECTION OF PERSONS AND PROPERTY
### 10.1    SAFETY PRECAUTIONS AND PROGRAMS
**10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

### 10.2    SAFETY OF PERSONS AND PROPERTY
**10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

   **.1**   employees on the Work and other persons who may be affected thereby;

   **.2**   the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

   **.3**   other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**10.2.2** The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 3.18.

**10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

## 10.3 HAZARDOUS MATERIALS

**10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

**10.3.3** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Subparagraph 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due to the sole negligence of a party seeking indemnity.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**10.4**    The Owner shall not be responsible under Paragraph 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

**10.5**    If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

## 10.6    EMERGENCIES
**10.6.1**    In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Paragraph 4.3 and Article 7.

## ARTICLE 11  INSURANCE AND BONDS
### 11.1    CONTRACTOR'S LIABILITY INSURANCE
**11.1.1**    The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

  .1   claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

  .2   claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;

  .3   claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

  .4   claims for damages insured by usual personal injury liability coverage;

  .5   claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

  .6   claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

  .7   claims for bodily injury or property damage arising out of completed operations; and

  .8   claims involving contractual liability insurance applicable to the Contractor's obligations under Paragraph 3.18.

**11.1.2**    The insurance required by Subparagraph 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment.

**11.1.3**    Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Paragraph 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Payment as required by Subparagraph 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.

## 11.2    OWNER'S LIABILITY INSURANCE
**11.2.1**  The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## 11.3    PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
**11.3.1**  Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Clauses 11.1.1.2 through 11.1.1.5.

**11.3.2**  To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

**11.3.3**  The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Paragraph 11.1.

## 11.4    PROPERTY INSURANCE
**11.4.1**  Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Paragraph 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Paragraph 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

**11.4.1.1**  Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**11.4.1.2**  If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**11.4.1.3**  If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**11.4.1.4**  This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**11.4.1.5**  Partial occupancy or use in accordance with Paragraph 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**11.4.2  Boiler and Machinery Insurance.** The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

**11.4.3  Loss of Use Insurance.** The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

**11.4.4**  If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**11.4.5**  If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**11.4.6**  Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Paragraph 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**11.4.7  Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**11.4.8**  A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Subparagraph 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**11.4.9**  If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Paragraph 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**11.4.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Paragraphs 4.5 and 4.6. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

## 11.5    PERFORMANCE BOND AND PAYMENT BOND
**11.5.1**  The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**11.5.2**  Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

## ARTICLE 12 UNCOVERING AND CORRECTION OF WORK
### 12.1    UNCOVERING OF WORK
**12.1.1**  If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

**12.1.2**  If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

## 12.2    CORRECTION OF WORK
### 12.2.1  BEFORE OR AFTER SUBSTANTIAL COMPLETION
**12.2.1.1**  The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### 12.2.2  AFTER SUBSTANTIAL COMPLETION
**12.2.2.1**  In addition to the Contractor's obligations under Paragraph 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Subparagraph 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Paragraph 2.4.

---

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

**12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

**12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Paragraph 12.2.

**12.2.3** The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

**12.2.5** Nothing contained in this Paragraph 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Subparagraph 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

## 12.3    ACCEPTANCE OF NONCONFORMING WORK
**12.3.1** If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

## ARTICLE 13  MISCELLANEOUS PROVISIONS
### 13.1    GOVERNING LAW
**13.1.1** The Contract shall be governed by the law of the place where the Project is located.

### 13.2    SUCCESSORS AND ASSIGNS
**13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Subparagraph 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**13.2.2** The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### 13.3    WRITTEN NOTICE
**13.3.1** Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### 13.4    RIGHTS AND REMEDIES
**13.4.1** Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

## 13.5    TESTS AND INSPECTIONS

**13.5.1**  Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

**13.5.2**  If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Subparagraph 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Subparagraph 13.5.3, shall be at the Owner's expense.

**13.5.3**  If such procedures for testing, inspection or approval under Subparagraphs 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

**13.5.4**  Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**13.5.5**  If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**13.5.6**  Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

## 13.6    INTEREST

**13.6.1**  Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

## 13.7    COMMENCEMENT OF STATUTORY LIMITATION PERIOD

**13.7.1**  As between the Owner and Contractor:

.1   **Before Substantial Completion.** As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

.2   **Between Substantial Completion and Final Certificate for Payment.** As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3   **After Final Certificate for Payment.** As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

## ARTICLE 14  TERMINATION OR SUSPENSION OF THE CONTRACT
### 14.1    TERMINATION BY THE CONTRACTOR

**14.1.1**  The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

    **.1**  issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

    **.2**  an act of government, such as a declaration of national emergency which requires all Work to be stopped;

    **.3**  because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Subparagraph 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

    **.4**  the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Subparagraph 2.2.1.

**14.1.2**  The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Paragraph 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**14.1.3**  If one of the reasons described in Subparagraph 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

**14.1.4**  If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Subparagraph 14.1.3.

### 14.2    TERMINATION BY THE OWNER FOR CAUSE

**14.2.1**  The Owner may terminate the Contract if the Contractor:

    **.1**  persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

    **.2**  fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

    **.3**  persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

    **.4**  otherwise is guilty of substantial breach of a provision of the Contract Documents.

**14.2.2**  When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION - 1997 EDITION - AIA - COPYRIGHT 1997 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

rights of the surety:

.1 take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

.2 accept assignment of subcontracts pursuant to Paragraph 5.4; and

.3 finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**14.2.3** When the Owner terminates the Contract for one of the reasons stated in Subparagraph 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

## 14.3    SUSPENSION BY THE OWNER FOR CONVENIENCE
**14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Subparagraph 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

.1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

.2 that an equitable adjustment is made or denied under another provision of the Contract.

## 14.4    TERMINATION BY THE OWNER FOR CONVENIENCE
**14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

.1 cease operations as directed by the Owner in the notice;

.2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

.3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

AIA DOCUMENT A201-GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION · 1997 EDITION · AIA · COPYRIGHT 1997 · THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and will subject the violator to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

SUPPLEMENT TO GENERAL CONDITIONS OF THE
GENERAL FORM OF AGREEMENT BETWEEN OWNER AND CONTRACTOR
BY AND BETWEEN
131 DARTMOUTH STREET LLC, OWNER
AND
SUFFOLK CONSTRUCTION COMPANY, INC., CONTRACTOR

THIS SUPPLEMENT shall modify, delete from and add and replace by substitution to the "General Conditions of the Contract for Construction," AIA Document A201-1997. Where any Article, Paragraph, Subparagraph or Clause of the General Conditions thereof is modified or deleted by this Supplement, the unaltered provisions of that Article, Paragraph, Subparagraph or Clause shall remain in effect. If and to the extent that this Supplement is inconsistent with the Owner-Contractor Agreement, the Specifications and other relevant Contract Documents, this Supplement shall control.

## ARTICLE 1

### CONTRACT DOCUMENTS

1.1.1   Add the words "and Owner:" at the end of fifth sentence of Subparagraph 1.1.1 after the words "or (4) a written order for a minor change in the Work issued by the Architect"

1.1.5   Delete Subparagraph 1.1.5 and substitute the following:

"The Drawings are the graphic and pictorial portions of the Contract Documents prepared by Arrow Street, Inc., enumerated in the Owner-Contractor Agreement showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams, as the same may be modified, supplemented or amended."

1.1.6   Delete Subparagraph 1.1.6 and substitute the following:

"The Specifications are the specifications prepared by Arrow Street, Inc. and enumerated in the Owner-Contractor Agreement and consist of the written requirements for material, equipment, construction systems, standards and workmanship for the Work and performance of related services, as the same may be amended, modified or supplemented."

1.1.8   Add as Subparagraph 1.1.8:

"In the event of any conflict among the Contract Documents, the Documents shall be construed according to the following priorities:

| | |
|---|---|
| Highest Priority: | Modifications to Contract Documents (later date to take precedence) |
| Second Priority: | Owner-Contractor Agreement (AIA Form A101) |
| Third Priority: | Contractor's Qualifications and Assumptions |
| Fourth Priority: | General Conditions |
| Fifth Priority: | Specifications |
| Sixth Priority: | Drawings" |

1.2.2   Add the following sentence at the end of Subparagraph 1.2.2:

"Contractor represents that the Subcontractors, manufacturers and suppliers engaged or to be engaged by it are and will be familiar with the requirements for performance by them of their obligations."

1.5.1   Delete the words "upon request" from the second sentence of Subparagraph 1.5.1.

1.6.1      Delete Subparagraph 1.6.1 and substitute in lieu thereof:

"All Drawings, Specifications and other documents prepared by the Architect are and shall remain the property of the Owner, and Owner shall retain all common law, statutory and other reserved rights with respect thereto. They shall not be used on any other project without the prior written consent of the Owner, and Contractor shall take such action as may be necessary to prevent their use on any other project or for additions to the Project outside the scope of the Work by any Subcontractor, Sub-subcontractor or material or equipment supplier. The Contractor, Subcontractors, Sub-subcontractors and material and equipment suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect. Submittals or distributions necessary to meet official regulatory requirements or for other purposes relating to completion of the Project are not to be construed as a publication in derogation of the Owner's copyright or other reserved rights. All of such Drawings, Specifications and other documents prepared by the Architect shall be returned promptly to the Owner upon the Owner's request after the Final Completion of the Work."

ARTICLE 2

OWNER

2.1.1      Add the following sentence at the end of Subparagraph 2.1.1:

"Owner's Authorized Representative" for the purpose of day-to-day administration of the Contract Documents at the Project site shall be James P. Kirby of Commercial Construction Consulting, Inc., who shall act as the authorized construction manager of the Project and as Owner's representative at the site for day-to-day administration of the Project (the "Construction Manager"), provided, however, that all communications between the Owner and Contractor, including all written communication required between the Owner and the Contractor, unless otherwise specified herein, shall be reported or otherwise forwarded by the Contractor to both the Construction Manager and to "Owner's Authorized Representative", who shall be James Sullivan, Sr."

2.2.1      Delete Subparagraph 2.2.1 and substitute in lieu thereof the following:

"The Owner shall furnish a summary of the financing arrangements for the Project to include: (a) the name of the financial institution; (b) the amount committed for financing; and (c) the expected closing date for such financing."

2.2.4      Delete the words "Information or services" at the beginning of Subparagraph 2.2.4 and substitute in lieu thereof "Upon receipt of a written request therefor from the Contractor, information" Additionally, delete the words "or services" at the end of the second sentence of Section 2.2.4.

2.2.5      Delete Subparagraph 2.2.5 and substitute in lieu thereof the following:

"Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, ten copies of the Drawings and Specifications prepared by the Architect, and other drawings and documents necessary for the execution and completion of the Work shall be furnished at Contractor's expense."

2.3.1      After the first word "If" in the first sentence of Subparagraph 2.3.1 add the phrase ", in the reasonable judgment of both the Construction Manager and the Owner," In addition, delete the clause ", except

-2-

to the extent required by Subparagraph 6.1.3" at the end of Subparagraph 2.3.1, and insert at the end of Subparagraph 2.3.1 the following:

"This right shall be in addition to, and not in restriction of, the Owner's rights under Subparagraph 12.2."

2.3.2      Add the following provision as a new Subparagraph 2.3.2:

"If, after consultation with the Architect and Construction Manager, suspension of the Work is warranted by reason of unforeseen conditions which may adversely affect the quality of the Work if such Work were continued, the Owner may suspend the Work by written notice to the Contractor. In such event, the Contract Time shall be adjusted accordingly, and the Contract Sum shall be adjusted to the extent, if any, that additional costs are incurred by reason of such suspension. If the Contractor, in its reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances which may adversely affect the quality of the Work if the Work were continued, the Contractor shall immediately notify the Owner, Construction Manager and the Architect of such belief and describe with particularity the reasons therefor."

2.4.1      Delete the first two sentences of Subparagraph 2.4.1 and substitute the following in lieu thereof:

"If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner or Construction Manager to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, commence and continue to carry out the Work."

Delete the fourth sentence of Subparagraph 2.4.1 in its entirety. Add at the end of Subparagraph 2.4.1 the following sentence:

"The right of the Owner to stop the Work pursuant to this Subparagraph 2.4.1 shall not give rise to any duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity."

ARTICLE 3

CONTRACTOR

3.2.1      Add the following text after the first sentence of Subparagraph 3.2.1:

"Contractor acknowledges and agrees that Contractor has reviewed the Contract Documents and, in the exercise of Contractor's reasonable judgment, believes the Contract Documents to be adequate and sufficient to provide for the completion of the Work in accordance with all applicable laws, codes and professional standards with which Contractor is familiar based on experience in the industry. Execution of the Contract by the Contractor is a representation that the Contractor has visited the site and become generally familiar with the local conditions under which the Work is to be performed and has correlated personal observations with requirements of the Contract Documents, but, except for conditions which Contractor should reasonably have been aware of pursuant to Contractor's responsibilities hereunder, such general familiarity shall not be construed to be a representation that Contractor is familiar with conditions which would normally require extensive or detailed testing in order for discovery of such conditions to occur, such as, but not limited to, subsoil or subsurface conditions not apparent without detailed soil boring, engineering, or other tests, unless the results of such testing have been provided to Contractor."

3.2.2    Add the following at the beginning of Subparagraph 3.2.2:

"The Contractor represents that it has inspected the location of the Work and has satisfied itself as to the condition thereof, including, without limitation, all structural, surface and subsurface conditions (to the extent observable by Contractor and/or based on reports furnished by Architect and Owner to Contractor). Based upon the foregoing inspections, understandings, agreements and acknowledgements, the Contractor agrees and acknowledges (i) that the Contract Sum is just and reasonable compensation for all the Work, including all foreseen and foreseeable risks, hazards and difficulties in connection therewith, and (ii) that the Contract Time is adequate for the performance of the Work."

3.3.4    Add the following provision as a new Subparagraph 3.3.4:

"If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed. No inspection performed or failed to be performed by the Owner hereunder shall be a waiver of any of the Contractor's obligations hereunder or be construed as an approval or acceptance of the Work or any part thereof."

3.3.5    Add the following provision as a new Subparagraph 3.3.5:

"The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper and diligent prosecution of the Work in accordance with the requirements of the standard Boston Resident Jobs Policy (BRJP) Plan and that any cost, fee, or penalty associated with any nonconformance with such Plan by the Contractor shall be the sole responsibility of Contractor, and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project. In the event of a labor dispute by personnel engaged by Contractor or its Subcontractors or Sub-subcontractors to perform work on the Project, the Contractor shall not be entitled to any increase in the Contract Sum."

3.4.1    Add the words "install, connect" after the words "shall provide," and before the words "and pay for" in the first line of Subparagraph 3.4.1 and add at the end of Subparagraph 3.4.1 the following sentence:

"The Contractor shall check all materials and labor entering into the Work and shall keep full detailed accounts thereof."

3.5.1    In the second line of Subparagraph 3.5.1, substitute the word "first rate" for the word "good", and add the words "or Owner and Construction Manager" immediately after the word "Architect" in the last sentence of Subparagraph 3.5.1.

3.5.2    Add the following provision as a new Subparagraph 3.5.2:

"If the Contractor proposes to use a material which, while suitable for the intended use, deviates in any way from the detailed requirements of the Contract Documents, the Contractor shall inform the Architect and Construction Manager in writing of the nature of such deviations at the time the material is submitted for approval, and shall request written approval of the deviation from the requirements of the Contract Documents."

3.5.3    Add the following provision as a new Subparagraph 3.5.3:

"Any additional cost, or any loss or damage arising from the substitution of any material or any method for those originally specified, shall be borne by the Contractor, notwithstanding approval or acceptance of such substitution by the Owner or the Architect and Construction Manager, unless such substitution was made at the written request or direction of the Owner or the Architect and Construction Manager."

3.2.2 Add the following at the beginning of Subparagraph 3.2.2:

"The Contractor represents that it has inspected the location of the Work and has satisfied itself as to the condition thereof, including, without limitation, all structural, surface and subsurface conditions (to the extent observable by Contractor and/or based on reports furnished by Architect and Owner to Contractor). Based upon the foregoing inspections, understandings, agreements and acknowledgements, the Contractor agrees and acknowledges (i) that the Contract Sum is just and reasonable compensation for all the Work, including all foreseen and foreseeable risks, hazards and difficulties in connection therewith, and (ii) that the Contract Time is adequate for the performance of the Work."

3.3.4 Add the following provision as a new Subparagraph 3.3.4:

"If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed.  No inspection performed or failed to be performed by the Owner hereunder shall be a waiver of any of the Contractor's obligations hereunder or be construed as an approval or acceptance of the Work or any part thereof."

3.3.5 Add the following provision as a new Subparagraph 3.3.5:

"The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper and diligent prosecution of the Work in accordance with the requirements of the standard Boston Resident Jobs Policy (BRJP) Plan and that any cost, fee, or penalty associated with any nonconformance with such Plan by the Contractor shall be the sole responsibility of Contractor, and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project.  In the event of a labor dispute by personnel engaged by Contractor or its Subcontractors or Sub-subcontractors to perform work on the Project, the Contractor shall not be entitled to any increase in the Contract Sum."

3.4.1 Add the words "install, connect" after the words "shall provide," and before the words "and pay for" in the first line of Subparagraph 3.4.1 and add at the end of Subparagraph 3.4.1 the following sentence:

"The Contractor shall check all materials and labor entering into the Work and shall keep full detailed accounts thereof."

3.5.1 In the second line of Subparagraph 3.5.1, substitute the word "first rate" for the word "good", and add the words "or Owner and Construction Manager" immediately after the word "Architect" in the last sentence of Subparagraph 3.5.1.

3.5.2 Add the following provision as a new Subparagraph 3.5.2:

"If the Contractor proposes to use a material which, while suitable for the intended use, deviates in any way from the detailed requirements of the Contract Documents, the Contractor shall inform the Architect and Construction Manager in writing of the nature of such deviations at the time the material is submitted for approval, and shall request written approval of the deviation from the requirements of the Contract Documents."

3.5.3 Add the following provision as a new Subparagraph 3.5.3:

"Any additional cost, or any loss or damage arising from the substitution of any material or any method for those originally specified, shall be borne by the Contractor, notwithstanding approval or acceptance of such substitution by the Owner or the Architect and Construction Manager, unless such substitution was made at the written request or direction of the Owner or the Architect and Construction Manager."

3.5.4        Add the following provision as a new Subparagraph 3.5.4

"The Contractor shall procure and deliver to the Construction Manager, no later than the date claimed by the Contract as the date of Final Completion, all special warranties required by the Contract Documents. Delivery by the Contractor shall constitute the Contractor's guarantee to the Owner that the warranty will be performed in accordance with its terms and conditions."

3.7.1        Add the following language at the end of Subparagraph 3.7.1:

"Except where it is beyond the Contractor's reasonable control, the Contractor shall procure all certificates of inspection (to the extent applicable), permits and licenses not otherwise obtained by Owner and in the case of the Building Permit obtained by Contractor but paid for by Owner, pay all charges and fees and give all notices necessary and incidental to the due and lawful prosecution of the Work and use and occupancy of the Project upon substantial completion of the Work. Notwithstanding the foregoing, the Owner shall bear the cost of all Certificates of Occupancy to be obtained from the City of Boston. Certificates of inspection required by public authorities with respect to particular elements of the Work (i.e., automatic sprinkler system) shall be delivered to the Owner upon completion of the Work. The costs of such procurement, payment and delivery are included within the Contract Sum. The Contractor shall give customary efforts to assist the Owner in obtaining permits."

3.7.2        Insert, in the first line of Subparagraph 3.7.2 after the word "regulations" and before the words "and lawful", the phrase "permits and conditions".

3.7.3        Insert, at the beginning of Subparagraph 3.7.3, the phrase "Except as set forth in Subparagraph 3.2.1," and modify the first word to read "it".

Insert after the word "However" in the second line of Subparagraph 3.7.3 the following:

"it shall be the obligation of the Contractor to review the Contract Documents to determine and to notify the Owner, Construction Manager and the Architect of any discrepancy between building codes and regulations of which the Contractor has knowledge or should be reasonably able to determine and,"

3.7.4        Add, immediately after the word "Contractor" the first time it appears in Subparagraph 3.7.4, the words ", any of its Subcontractors (including, without limitation, its suppliers) or any Sub-subcontractor", and add immediately after the words "knowing it to be" in Subparagraph 3.7.4 the words "or which Contractor reasonably should have known it to be".

3.9.1        Add the following language at the end of Subparagraph 3.9.1:

"Owner shall have the right to require Contractor to dismiss from the Project any superintendent whose performance is not satisfactory to Owner, in Owner's sole reasonable judgment, and to replace such superintendent with a superintendent satisfactory to Owner. The Contractor shall not replace the superintendent without the consent of the Owner and only with another superintendent satisfactory to the Owner in all respects."

3.10.1       Delete Subparagraph 3.10.1 and substitute in lieu thereof the following:

"The Contractor, promptly after being awarded the Contract, shall prepare in consultation with the Owner, Construction Manager and the Architect and submit for the Owner's, Construction Manager's and the Architect's approval Contractor's construction schedule for the Work, together with a Schedule of Values and anticipated monthly expenditures throughout the duration of the Contract based upon

the Schedule of Values. The construction schedule shall not exceed time limits current under the Contract Documents, shall be updated and revised at appropriate intervals and shall provide for expeditious and practicable execution of the Work and shall not be modified or extended without the prior approval of the Owner in each instance."

3.10.2    Delete Subparagraph 3.10.2 and substitute in lieu thereof the following:

"The Contractor shall prepare at least monthly a progress report in a form sufficiently detailed and of a character approved by the Owner and Lender for the Project. The progress report shall specify, among other things, an estimated percentage of completion, whether the Project is on schedule, and if not, the reasons therefor and the new schedule, as well as the number of man-days worked for each category of labor and the projected Work to be completed in the next succeeding month. Accompanying the progress report shall be an updated current Project schedule, and a listing and the status of all Change Orders, Modifications, bulletins and other relevant documents.

The Contractor also shall prepare not later than 30 days after the Contract is awarded a materials report which shall include, as to all major and long-lead items, a complete list of suppliers and fabricators, time required for fabrication and the scheduled delivery dates for each item to be purchased.

The Contractor shall hold weekly progress meetings at the Project site, or at such other time and frequency as the Owner requests. Progress of the Work shall be reported in detail with reference to construction schedules.

The Construction Manager shall be allowed to attend weekly meetings between the Contractor and Subcontractor to receive information.

The Contractor shall prepare and keep current, for the Architect's, Construction Manager's and Owner's approval, a schedule of submittals which shall be coordinated with the Contractor's construction schedule and allows the Architect, Construction Manager and Owner reasonable time to review submittals."

3.11.1    Delete the last sentence of Subparagraph 3.11.1 and substitute the following sentence in lieu thereof:

"These shall be available to the Architect, Construction Manager and Owner and shall be delivered to Owner upon completion of the Work in an as built form."

3.11.2    Add the following provision as a new Subparagraph 3.11.2:

"All approved drawings shall be wrapped, marked and delivered to the Owner within 60 days of final completion of the Work."

3.12.6    Delete from the second and third lines of subparagraph 3.12.6 the phrase "or will do so".

3.12.9    Substitute the word "and" for the word "or" in the first line of Subparagraph 3.12.9.

3.12.11    Add the following provision as a new Subparagraph 3.12.11:

"Shop drawings for Architectural, Structural, Mechanical and Electrical work shall be submitted to the Architect, for review by the Construction Manager and Owner and approval by the appropriate consultant."

3.13.2    Add the following provision as a new Subparagraph 3.13.2:

"The Contractor shall assure free, convenient, unencumbered and direct access to properties neighboring the Project site for the owners of such properties and their respective tenants, agents, invitees and guests." Notwithstanding the foregoing sentence, the Owner is aware that (i) the installation of the slurry wall along the alley between the Columbus Avenue abutters and the Project site will require interruption of the abutter's use of the alley, and (ii) the Red Cross loading dock at the east end of the site may have to be removed in order to install the new foundation wall. The Owner is responsible for notifying and gaining the abutters' approval for these operations."

3.15.1    The following is hereby added at the end of subparagraph 3.15.1:

"The Contractor shall maintain streets and sidewalks around the Project site in a clean condition from Contractor's debris. Immediately prior to the Architect's inspection for Substantial Completion, the Contractor shall completely clean the premises. Concrete and ceramic surfaces shall be cleaned and washed. Resilient coverings shall be cleaned and waxed and buffed. Woodwork shall be dusted and cleaned. Sash, fixtures and equipment shall be thoroughly cleaned. Stains, spots, dust, marks and smears shall be removed from all surfaces. Hardware and all metal surfaces shall be cleaned and polished. Glass and plastic surfaces shall be thoroughly cleaned by professional window cleaners. All damaged, broken or scratched glass or plastic shall be replaced by the Contractor at the Contractor's expense."

3.18.1    In the third line of Subparagraph 3.18.1, add the words ", defend with Counsel acceptable to the Owner" after the word "indemnify" and before the words "and hold harmless." In the fifth through sixth lines of Subparagraph 3.18.1, delete the words beginning with "is attributable to" and ending with the words "only to the extent." Additionally, add the following to the end of Section 3.18.1: "The Contractor shall indemnify and hold harmless the Owner, Construction Manager, and Owner's lenders, if any, against any assertion of claims for mechanics' liens by Subcontractors, Sub-subcontractors or material suppliers and against any assertion of security interests by suppliers of goods or materials."

3.19.1    Add the following provision as a new Subparagraph 3.19.1:

"The Contractor shall provide all documents, reports and other information reasonably requested by the Owner's lender, if any, and shall cooperate with any requirements of such lender, if any, to the fullest extent possible."

3.19.2    Add the following provision as a new Subparagraph 3.19.2:

"If Owner's lender, if any, shall designate an inspecting architect or other representative, the Owner may require the concurrence of such architect or representative in each instance in which the approval of the Architect is required for payments hereunder, and such consulting architect shall perform its review under the same time limits imposed hereunder on Owner and its representatives.

ARTICLE 4

ADMINISTRATION OF THE CONTRACT

4.1.1    Delete the first sentence of Subparagraph 4.1.1 and substitute in lieu thereof the following:

"The Architect is Arrow Street, Inc., with offices at 212 Elm Street, Somerville, Massachusetts 02144, or such successor Architect as the Owner may appoint by written notice to the Contractor from time to time."

4.1.2    Delete the last sentence of Subparagraph 4.1.2 in its entirety.

4.2 Add the words "and the Construction Manager" after the word "Architect" each time it appears in Article 4.2.1 – 4.2.13.

4.2.2 Add the words "but at least weekly" after the word "operations" in the second line of Subparagraph 4.2.2.

4.2.4 Delete Subparagraph 4.2.4 and substitute in lieu thereof the following:

"Owner and Contractor may communicate with each other directly or through the Architect or Construction Manager; provided, that any written direct communication shall be copied to the Architect and Construction Manager promptly. Communications by and with Subcontractors, Sub-subcontractors and material suppliers shall be through the Contractor. The Architect and Construction Manager shall be informed of all relevant communications in a timely manner."

4.2.5 In the first line of subparagraph 4.2.5, add the words, "consult with Owner and Construction Manager" after the word "review" and before the words "and certify."

4.2.6 In the first line of Subparagraph 4.2.6, add the words "and the Owner and the Construction Manager" after the word "Architect."

4.2.7 In the fifth line of Subparagraph 4.2.7, after the word "review" insert "which shall generally mean ten days."

4.2.11 Add at the end of the first sentence in Subparagraph 4.2.11 the words, "and the Architect shall notify the Owner and the Construction Manager if such written request is made by Contractor and notify Contractor if such written request is made by Owner."

4.2.12 At the end of Subparagraph 4.2.12, delete the period and add the words "in the exercise of reasonable professional judgment."

4.3.2 In lines one and two of the subparagraph, delete "21" and insert "30". Insert at the beginning of the first sentence "Except as provided in Subparagraph 4.3.6". Insert immediately after the word "notice" in the second sentence of Subparagraph 4.3.2 the words "containing a description thereof to the other party and the Architect".

4.3.5 Subparagraph 4.3.5 is hereby modified to read as follows:

"If the Contractor claims that any acts or omissions of the Owner, Construction Manager or the Architect, including any instructions or orders, whether oral, written, by Drawings or otherwise, involve extra cost or time, and the Contractor has not received a written acknowledgement by the Owner, Construction Manager or Architect that extra payment will be made or time extended on account thereof, the Contractor shall promptly so notify the Architect and Construction Manager in writing of such Claim and shall not proceed with the Work relating to such claim until the Contractor has received a further written order to proceed in accordance with Paragraph 4.4 except, as provided in Paragraph 10.6, in the case of an emergency affecting life or property. No Claim by the Contractor on account of such acts, omissions, instructions or orders shall be valid unless the Contractor has so notified the Architect and Construction Manager, before proceeding, and has received the further written order to proceed."

4.3.7.1    The second sentence of subparagraph 4.3.7.1 is hereby modified to read as follows:

"The Contractor shall have the burden of demonstrating the effect of the claimed delay on the Contract Time, and shall furnish the Architect and Construction Manager with such documentation relating thereto as the Architect and Construction Manager may reasonably require."

4.4    Paragraph 4.4 is hereby modified to read as follows:

"4.4. REVIEW OF CLAIMS BY ARCHITECT

4.4.1    The Architect shall review Claims and may (1) defer any action with respect to all or any part of a claim and request additional information from either party; (2) decline to render a decision for any reason which he deems appropriate (including but not limited to the fact that the Claim involves allegations of fault on the part of the Architect); or (3) render a decision on all or part of the Claim. The Architect shall notify the parties in writing of his disposition of such Claim.

If the Architect renders a decision or declines to render a decision, either party may proceed in accordance with Paragraph 4.5. If the Architect decides that the Work relating to such Claim should proceed regardless of his disposition of such Claim, the Architect shall issue to the Contractor a written order to proceed. The Contractor shall proceed as instructed, and all rights of both parties with respect to such Claim shall be deemed to have been reserved."

4.6    Delete Section 4.6 in its entirety.

ARTICLE 5

SUBCONTRACTORS

5.3.1    In the eighth line of Subparagraph 5.3.1, delete the words "Where appropriate" and start the sentence with the words "The Contractor."

In the eleventh line of Subparagraph 5.3.1 delete the remainder of the subparagraph following the word "bound".

At the end of Subparagraph 5.3.1, add the following sentence:

"The Contractor shall deliver a copy of any written subcontract to the Owner within ten days after the Owner requests same."

5.3.2    Add the following provision as a new Subparagraph 5.3.2:

"The form of subcontract to be used by Contractor is hereby approved, and attached hereto as Exhibit "___".

ARTICLE 6

CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

6.2.1    Insert the following at the end of subparagraph 6.2.1:
"Owner agrees to require its separate Contractors to provide insurance certificates for their operations at the Project, naming Contractor as additional insured on such liability policies, provided the Contractor agrees to obtain reciprocal Certificates of Insurance."

-9-

6.2.2    Insert after the word "Architect" in the first sentence of Subparagraph 6.2.2 the words "the Construction Manager and the Owner".

6.2.4    Delete the word "wrongfully" in Subparagraph 6.2.4.

ARTICLE 7

7.1.2    Add at the end of Subparagraph 7.1.2 a comma followed by the words "provided the Owner has consented thereto."

7.3.3    Delete Subparagraph 7.3.3 and insert the following:

"Upon request of the Owner, Construction Manager or the Architect, the Contractor shall without cost to the Owner submit to the Architect, in such form as the Architect may require, an accurate written estimate of the cost of any proposed extra Work or change. The estimate shall indicate the quantity and unity cost of each item of materials, and the number of hours of work and hourly rate for each class of labor, as well as the description and amounts of all other costs chargeable under the terms of this Article. The Contractor shall state in the estimate any extension of time required for the completion of the Work if the change or extra work is ordered.

If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods, as selected by the Owner prior to the performance of the change in the Work:

(a)  By unit prices stated in the Contract Documents or otherwise mutually agreed upon;

(b)  By Cost and Percentages estimated by the Contractor as provided in subparagraph 7.3.3. and accepted by the Owner, the Contractor's estimate shall become a fixed price which shall not be changed by any variation in the actual cost of executing the Work covered by the change.

(c)  By actual Cost determined after the Work covered by the change is completed, plus Percentage (but Percentage only is applicable in the case of an increase in the Contract Sum).

7.3.3.1    If the Owner elects to determine the cost of the Work as provided in method (a) using unit prices stated in the Contract Documents or subsequently agreed upon, the unit prices shall be subject to subparagraph 7.1.4. Contractor shall be entitled to a maximum allowable fee of three percent (3%) of the cost of the Work necessitated by any Construction Change Directive. Subcontractors shall be entitled to a maximum allowable fee of ten percent (10%) of such Subcontractor's general conditions' Cost for such Work and a fee of five percent (5%) of the Cost of the Work. If the Owner elects to determine the cost of the change Work by unit prices and the nature of the Work is such that its extent cannot readily be measured after the completion of such Work or any subsequent Work, the Contractor shall keep daily records, available at all times to the Architect for inspection, of the actual quantities of such Work put in place, and delivery receipts or other adequate evidence, acceptable to the Architect, indicating the quantities of Work delivered to the site for use in such unit price Work, and distinguishing such from similar material delivered for use in Work included in the base Contract Sum. If so required by the Architect, materials for use in unit price Work shall be stored apart from all other materials on the Project.

7.3.3.2    If the Owner elects to determine the cost of the Work as provided in method (c) of subparagraph 7.3.3 or if the method of determining the cost has not been established before the Work is begun, the Contractor shall keep detailed records of labor and materials costs applicable to the Work."

-10-

7.3.4    Add the words "and Construction Manager and Owner" after the word "Architect" in line two of Subparagraph 7.3.4 and the words "Contract Sum" are hereby deleted.

7.3.6    Delete the word "Architect" and insert the word "Construction Manager" each time it appears.

7.3.7    Delete the word "Architect" and insert the word "Construction Manager" each time it appears.

7.3.9    Delete the word "Architect" and insert the word "Construction Manager" each time it appears.

ARTICLE 8

TIME

8.3.1    Add after the word "Work" the second time it appears in the first sentence of Subparagraph 8.3.1 the words ", as reflected in Change Orders approved by the Owner that provide for the Contract Time to be extended,".

In the fourth line of Subparagraph 8.3.1 delete the words "and arbitration".

8.3.2    Add the following sentence at the end of Subparagraph 8.3.2:

"A copy of any claim for extension shall be delivered to the Owner, and the Contractor shall immediately take all steps reasonably possible to lessen the adverse impact of such delay on Owner."

8.3.3    Delete Subparagraph 8.3.3 and insert the following:

"No claim for delay shall be allowed on account of failure of the Architect to furnish Drawings, Specifications or instruction or to return Shop Drawings or Samples until five (5) business days after written receipt by the Architect by registered or certified mail of written demand for such instructions, Drawings, or Samples, and not then unless such claim be reasonable; provided, however, that such five (5) business day period shall be reduced to three (3) business days if Contractor reasonably deems such instruction, Drawings or Samples to be critical, and such written demand so indicates."

8.3.4    Add the following as Subparagraph 8.3.4:

Notwithstanding anything to the contrary in any of the Contract Documents, the Contractor acknowledges and agrees that no extension of time shall be granted on account of weather conditions except as provided for in this subparagraph 8.3.4. A Claim by the Contractor for an increase in the Contract Time on account of weather shall only be granted if all the following conditions are met: (1) the weather during any calendar month (or pro rata portions of partial months at the beginning and end of the Contract Time) is "abnormal," as defined below; (2) the Contractor demonstrates that such abnormal weather had the effect of materially delaying completion of components of Work on the critical path indicated in the Construction Schedule; and (3) such Claim is made by written notice. "Abnormal weather" shall, for purposes of this subparagraph 8.3.4, be limited to circumstances in which the total in (a) exceeds the total of (b) multiplied by 1.2, where (a) is the sum of (i) the number of days in a calendar month in which precipitation is .01 inch or more; (ii) the number of days in a calendar month in which snow, ice pellet and/or hail accumulation is 1.0 inch or more; and (iii) the number of days in a calendar month in which the daily maximum temperature is 32 degrees or less; and (b) based on historical data for such calendar month, is the sum of (i) the mean number of days in such calendar month in which precipitation is .01 inch or more; (ii) the mean number of days in which snow, ice pellet and/or hail accumulation is 1.0 inch or more; and (iii) the mean number of days in which the maximum daily temperature is 32 degrees or less. The historical months' data shall be as compiled by the National Weather Service. Historical data shall be calculated from reports from the immediately preceding twenty years compiled by the U.S. Department of Commerce National Oceanic

-11-

and Atmospheric Administration, such as the "Local Climatological Reports." All data shall be for the Boston, Massachusetts reporting station. An example of the calculation described above, for illustrative purposes only, is provided in Exhibit 1 hereto.

8.3.5      Add the following as Subparagraph 8.3.5:

"The Contractor hereby agrees that the Contractor shall have no claim for damages of any kind against the Owner or the Architect on account of any delay in the commencement of the Work and/or any delay or suspension of any portion of the Work, unless such delay is caused by the Owner or the Architect and such delay continues for two (2) business days after written notice from Contractor. The Contractor acknowledges that the Contractor's sole remedy for any such delay and/or suspension will be an extension of time as provided in this Article plus Contractor's documented General Conditions costs related to any delay period."

ARTICLE 9

PAYMENTS AND COMPLETION

9.2.1      Add after the word "Architect" each time it appears in Subparagraph 9.2.1 the words "the Construction Manager and the Owner". Also, following the first sentence, add the following language "and shall be revised if later found by the Architect to be inaccurate." In addition, insert the following sentence immediately after the first sentence of Subparagraph 9.2.1:

"The schedule of values shall be prepared in such a manner that each major item of the Work and each subcontracted item of the Work is shown as a separate line item on AIA Document G703, Application and Certificate for payment, Continuation Sheet, or other form acceptable to the Owner and Lender."

9.3.1      In the first sentence of subparagraph 9.3.1, delete "ten" and substitute therefor "twenty". Add after the word "Architect" the first time it appears in Subparagraph 9.3.1 the words "and the Owner".

In addition, add at the end of Subparagraph 9.3.1 the following sentence:

"Such Application for Payment shall be certified as correct by the Contractor following the prior review and comment on such Application for Payment by the Construction Manager and shall be accompanied by waivers of liens and other documentation from Subcontractors and Sub-subcontractors with a value of more than twenty-five thousand dollars ($25,000.00) as reasonably may be required by the Owner, Owner's lender, or Owner's title insurer prior to payment being due to Owner. The form of Waivers of Liens required of subcontractors is attached hereto as Exhibit ___ and shall be required. In addition, such Application for Payment shall contain a certification by the Contractor that there are no written claims of mechanics' or materialmen's liens submitted to the Contractor at the date of such Application for Payment, that all due and payable bills with respect to the Work have been paid to date or shall be paid from the proceeds of such Application for Payment in accordance with the subcontractor's agreement and that there is no known basis for the filing of any mechanics' or materialmen's liens on the Work."

9.3.2      Insert after the second sentence of Subparagraph 9.3.2:

"Approval shall not be unreasonably withheld or delayed if the Contractor submits to the Owner and the Lender evidence of insurance, in amounts and coverage reasonably acceptable to Owner, specifically covering such materials and equipment, naming the Owner and the Lender as an additional insured, or in the alternative, evidence that such materials or equipment are stored in a bonded warehouse."

-12-

In addition, insert the following sentence at the end of Subparagraph 9.3.2:

"The Contractor shall submit, within 10 days after the date of commencement of the Work and thereafter as the Owner requires, schedules of materials and equipment for each category or subcontract for which application for payment under Subparagraph 9.3.2 will be made, which schedules shall include items, quantities, value or unit prices with extensions and the month in which Application for Payment with respect thereto is expected to occur. Schedules shall be updated on a monthly basis and submitted as an attachment to the Contractor's Application for Payment."

9.3.3     Subparagraph 9.3.3 is hereby modified to read as follows:

"The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner either by incorporation in the construction or upon the receipt of payment by the Contractor, whichever occurs first, free and clear of all liens, claims, security interests or encumbrances (other than those which may arise under Massachusetts General Laws Chapter 254 as a result of the Owner's failure to make payments in accordance with the terms of the Contract Documents), hereinafter referred to in this Article 9 as "liens." To the extent permitted by applicable law, the Contractor further agrees that the submission of any Application for Payment shall conclusively be deemed to waive all liens except those claims and/or proposed change orders which are pending and/or have been submitted under other provisions of the Contract Documents, as of the date of execution of such document (other than those which may arise under Massachusetts General Laws Chapter 254 as a result of Owner's failure to make payments in accordance with the terms of the Contract Documents) with respect to said Work to which the Contractor may then be entitled, provided that such waiver of the lien rights shall not waive the Contractor's right to payment for such Work."

9.5.1     In subparagraph 9.5.1, item .6 is hereby modified and new items .8 and .9 are hereby added to read as follows:

".6     reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to complete the Work and to cover actual or liquidated damage for the anticipated delay;

.8     a lien or attachment is filed against the subject real estate by any party performing or supplying the Work and is not bonded or otherwise secured; or

.9     failure of mechanical trade or electrical trade subcontractors to comply with mandatory requirements for maintaining record drawings. The Contractor shall check record drawings each month."

9.5.3     Add the following provision as a new Subparagraph 9.5.3:

"If the Contractor disputes any determination by the Architect with regard to any Certificate of Payment, the Contractor nevertheless expeditiously shall continue to prosecute the Work, subject to the Contractor's rights pursuant to Subparagraph 9.7.1 hereof."

9.5.4     Add the following provision as a new Subparagraph 9.5.4:

"The Owner shall not be deemed to be in breach of this Contract so as to entitle Contractor to stop Work or otherwise exercise Contract remedies (other than prosecution of a Claim for monetary compensation) by reason of the withholding of any payment pursuant to any provision of the Contract Documents, if (a) the Architect has approved the Owner's action or (b) the Work for which payment is being withheld shall have been rejected by the Owner, or Owner's lender, if any."

9.5.5       Add the following provision as new Subparagraph 9.5.5:

"Notwithstanding anything to the contrary contained in the Contract Documents, the Owner may withhold any payment to the Contractor hereunder if and for so long as the Contractor fails to perform any of its obligations hereunder or otherwise is in material default under any of the Contract Documents; provided, however, that any such holdback shall be limited to an amount sufficient in the reasonable opinion of the Architect to cure any such default or failure of performance by the Contractor."

9.6.1       Add at the end of Subparagraph 9.6.1 the following:

"Such payment by the Owner shall not constitute approval or acceptance of any item of cost in the Application for Payment. No partial payment made hereunder shall be or be construed to be final acceptance or approval of that portion of the Work to which such partial payment relates or relieve the Contractor of any of its obligations hereunder with respect thereto. The Owner shall make no payment until the Owner has received from the Contractor a release of liens from the Contractor for the Contractor and all Subcontractors for the portion of the work covered by all prior payments."

9.6.2       Beginning in line two of the subparagraph, delete the following: "the amount to which said subcontractor is entitled, reflecting", and insert in their place the following: "an amount equal to the Work completed as verified by the Contractor on account of such Subcontractor's work and as evidenced by waivers of lien, subcontractor's sworn statement, and all necessary supporting data thereto, less". In addition, add the following provision at the end of Subparagraph 9.6.2:

"If required by the Owner or the Lender, within five days of receipt of payment from the Owner, the Contractor shall send to the Owner copies of checks paid for any individual item of the Contractor's costs listed in the Application for Payment which item exceeds $5,000 and was not paid prior to the date on which the Application for Payment was submitted. The Contractor shall indemnify and hold harmless the Owner and Owner's lender, against any assertion of claims for mechanics' liens by Subcontractors, Sub-subcontractors or material suppliers and against any assertion of security interests by suppliers of goods or materials."

9.7.1       Add the following sentence at the end of Subparagraph 9.7.1:

"Notwithstanding the preceding sentence, the Contractor shall not stop the Work during the pendency of a bona fide dispute between the Owner and the Contractor (as evidenced by Architect having approved Owner's action or Work having been rejected by any governmental agency, Owner's lender, Owner, or Owner's lender, if any), provided any sums in dispute claimed by the Contractor either are placed in a separate escrow account to be maintained with Owner's counsel pending resolution of such dispute (if such sums are advanced by Owner's lender to Owner) or are withheld by Owner's lender (if Owner's lender refuses to advance such sums to Owner) and Owner agrees to pay said disputed sum in accordance with the resolution of the dispute."

9.8.1       Insert after the words "Contract Documents" in Subparagraph 9.8.1 the words "and when all required inspection certificates or sign-offs by governmental officials, if any, have been issued". Add the following provision at the end of Subparagraph 9.8.1:

"The Contractor shall secure and deliver to the Owner written warranties and guarantees from its Subcontractors, Sub-subcontractors and suppliers bearing the date of Substantial Completion or some other date as may be agreed to by the Owner and stating the period of warranty as required by the Contract Documents. The Contractor is responsible for the warranty of all Work, whether performed by it or by its Subcontractors at any tier."

9.8.3    The following language is hereby added to the end of subparagraph 9.8.3:

"The amounts determined by the Architect to be retained by the Owner for punch list Work shall equal 200% of the Architect's and Construction Manager's estimate of the Contractor's reasonable cost to complete the same."

9.9.2    Add the following provision at the end of Subparagraph 9.9.2:

"A reasonable sum may be withheld until the Contractor delivers to the Owner record Drawings, Specifications, addenda, Change Orders and other Modifications maintained at the site pursuant to Subparagraph 3.11.1."

9.10.1    In line two of Subparagraph 9.10.1, add the words "and the Construction Manager and the Owner" after the word "Architect."

9.10.2    In line ten of Subparagraph 9.10.2, delete the word "may" and substitute therefor the word "shall."

9.10.6    Add the following provision as a new Subparagraph 9.10.6:

"If the Owner shall have furnished to the Contractor an agreement between the Owner and Owner's lender providing funding for or regulating the Project, the Contractor agrees fully to cooperate with the Owner in complying with the provisions thereof and agrees to furnish any and all information, reports and certificates which are required thereunder."

## ARTICLE 10

## PROTECTION OF PERSONS AND PROPERTY

10.1.1    Insert a comma in place of the period at the end of Subparagraph 10.1.1 and add the following words "including, without limitation, all safety precautions and programs with respect to asbestos and leadbased paint removal at the site, it being the Contractor's obligation to lawfully remove all asbestos and leadbased paint at the site consistent with information provided by Owner prior to Commencement of the Work."

10.2.1    Add a new subsection .4 to Subparagraph 10.2.1 to read as follows:

".4 the work of the Owner. The Owner or their Subcontractors." The Contractor will reasonably cooperate with Owner in preparing safety rules and regulations to be utilized by other contractors hired by the Owner and shall notify the Owner of any safety violations of other contractors of which the Contractor is aware.

10.2.4    Add after the word "qualified" and before the word "personnel" in the last line of Subparagraph 10.2.4 the words "and licensed, if required,"

10.2.8    Add the following provision as a new Subparagraph 10.2.8.:

"In addition to its other obligations pursuant to this Article 10 and the Specifications, the Contractor shall, at its sole cost and expense, promptly repair any damage or disturbance to walls, utilities, sidewalks, curbs and the property of third parties (including municipalities) resulting from the performance of the Work, whether by it or by its Subcontractors at any tier. The Contractor shall maintain streets in good repair and traversable condition."

ARTICLE 11

INSURANCE AND BONDS

11.1.1    Add the following sentence at the end of Subparagraph 11.1.1:

"If Owner's lender or Owner's insurance carrier for the Project requires, in its reasonable judgment, that the insurance requirements set forth in the Contract Documents be varied, Contractor agrees to enter into suitable modifications of the provisions hereof, provided Owner bears any additional cost reasonably occasioned thereby."

11.1.1.7    Add the following to the end of subparagraph 11.1.1.7: "for a period ending two (2) years after the completion of the Work."

11.1.2    Delete subparagraph 11.1.2 and substitute in lieu thereof the following:

"The insurance required by subparagraph 11.1.1 shall include all major divisions of coverage, and shall be on a comprehensive general basis including Premises and Operations (including X-C-u), Owner's and Contractor's Protective, Products and Completed Operations, and Owned, Non-owned, and Hired Motor Vehicles. Such insurance shall be written for no less than any limits of liability required by law or those set forth in the Contract Documents, whichever is greater and certified copies of all copies shall be provided to Owner within thirty (30) days of Owner's request for the same..

All insurance shall be written on an occurrence basis, unless the Owner approves in writing coverage on a claims-made basis. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from date of commencement of the work until date of final payment and termination of any coverage required to be maintained after final payment. The Owner shall be added as an Additional Insured on all policies."

"Such coverages shall be maintained by insurance carriers reasonably acceptable to Owner and Owner's lender."

11.1.3    In line three of Subparagraph 11.1.3 before the words "or expire", insert the words "or amended to reduce the extent or amount of coverage."

11.3.3    Delete Subparagraph 11.3.3 and replace it with the following:  "The Contractor shall include the Owner, and Construction Manager and other persons or entities named by the Owner as additional insureds on the Contractor's Liability Insurance coverage under Paragraph 11.1".

11.4.2    Delete in line two of Subparagraph 11.4.2 the words "the Contract Documents or by".

11.4.9    Delete the first two sentences of Subparagraph 11.4.9 in their entirety.

11.4.10    Insert at the beginning of the paragraph the phrase "Subject to the rights of Owner's mortgagee, if any," and change the first word "The" to "the".

In addition, delete the last clause (following the semi-colon) of the first sentence of subparagraph 11.4.10 and the second and third sentences of Subparagraph 11.4.10, and substitute in lieu thereof the following sentence:

"If such objection be made, the Owner shall not make any settlement with respect to such loss until a resolution has been reached by agreement between such parties in interest and the insurers or by a court of competent jurisdiction."

-16-

## ARTICLE 12

## UNCOVERING AND CORRECTION OF WORK

12.1.1    In lines one and two of Subparagraph 12.1.1, add the words "or the Construction Manager's or the Owner's" after the word "Architect's" and in the second line of Subparagraph 12.1.1 add the words "or the Construction Manager or the Owner" after the word "Architect".

12.1.2    In lines one and two of Subparagraph 12.1.2 add the words "or the Construction Manager or the Owner" after the word "Architect".

12.2.1    In line one of Subparagraph 12.2.1.1 after the word "promptly" and before the word "correct" insert the words "but in any event within thirty days".

In line one of Subparagraph 12.2.1.1, insert, after the word "Architect" and before the words "or failing", the words "or Owner or Construction Manager due to faulty materials, services or workmanship".

At the end of Subparagraph 12.2.1.1 add the following new sentence:

This obligation shall survive termination of the Contract for a period of one year from such termination.

12.2.2    In line six of Subparagraph 12.2.2.1, after the word "promptly" and before the word "after", add the words "but in any event within thirty (30) days unless such work cannot reasonably be completed within thirty (30) days in which event the Contractor shall commence to correct such work within five (5) days and diligently pursue the same to completion."

12.3.1    In line two of Subparagraph 12.3.1 after the words "do so", add the word "in writing".

At the end of Subparagraph 12.3.1, change the period to a comma and add the following:

"and if such adjustment exceeds payments due Contractor, the Contractor shall pay Owner the difference."

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.2.1    Delete the second sentence of Subparagraph 13.2.1 and substitute the following in lieu thereof:

"Contractor may not assign its rights or obligations under this Contract. Owner may assign its rights and obligations hereunder to any lender providing financing for the Project, and Contractor agrees to enter into an agreement with any such party pursuant to which, at such party's request, Contractor will complete the Work upon appropriate provision for payment of the balance of the Contract Sum. Any entity which shall succeed to the rights of the Owner shall be entitled to enforce its rights hereunder."

13.3.1    Add the following at the end of Subparagraph 13.3.1:

"At Owner's request, a copy of all written notices by the Contractor shall be delivered to the Lender."

13.4.3    Add the following provision as a new Subparagraph 13.4.3:

-17-

"The invalidity of any part or provision of the Contract Documents shall not impair or affect in any manner the validity, enforceability or effect of the remaining parts and provisions of the Contract Documents."

13.5.1    In line four add the word "Owner" in between the words "and" and "shall bear".

In lines five and six, add the words "and the Construction Manager and the Owner" after the word "Architect".

13.5.2    Insert in the beginning of Subparagraph 13.5.2, the following new sentence:

"The Contractor shall keep the Architect, the Construction Manager and the Owner informed of the progress of the Work so that they can reasonably schedule inspection of the Work."

In lines four and five of Subparagraph 13.5.2, add the words ", the Construction Manager and the Owner" after the word "Architect".

13.5.3    Add to Subparagraph 13.5.3, immediately after the word "expenses", the words:

", including the cost of retesting for verification of compliance if necessary, until the Architect certifies that the Work in question does comply with the requirements of the Contract Documents, and all such costs shall not be included in computing the Contract Sum".

13.5.4    Subparagraph 13.5.4 is hereby modified to read as follows:

"The Contractor shall obtain and deliver promptly to the Construction Manager any temporary occupancy permit and certificates of final inspection of any part of the Work and temporary operating permits for any mechanical apparatus, such as elevators, escalators, boilers, air compressors, etc., which may be required by law to permit full use and occupancy of the premises by the Owner (the "Use Certificates").  Receipt of such permits or certificates by the Construction Manager shall be obtained prior to Substantial Completion of the Work."

<u>ARTICLE 14</u>

<u>TERMINATION OR SUSPENSION OF THE CONTRACT</u>

14.1.1    In subsection .4 of the next to last line of Subparagraph 14.1.1. insert the word "written" after the word "Contractor's" and before the word "request".

14.4.2    Delete subparagraphs 14.4.2 and 14.4.3 and insert the following:

Upon receipt of written notice from Owner of any such termination, Contractor agrees to waive any claims for damages, including loss of anticipated profits, on account thereof, and as the sole right and remedy of Contractor, Owner shall pay Contractor in accordance with (c) below.

The provisions of the Contract which, by their nature, survive final acceptance of the Work, shall remain in full force and effect after such termination to the extent provided in such provisions.

(a)        Upon receipt of any such notice, Contractor shall, unless the notice directs otherwise, immediately discontinue the Work on that date and to the extent specified in the notice; place no further orders or subcontracts for materials, equipment, services, or facilities, except as may be necessary for completion of such portion of the Work as is not

-18-

discontinued; promptly make every reasonable effort to procure cancellation upon terms satisfactory to Owner of all orders and subcontracts to the extent they relate to the performance of the discontinued portion of the Work and shall thereafter do only such Work as may be necessary to preserve and protect work already in progress and to protect materials, plants and equipment on the Site or in transit thereto. In no event shall Contractor perform any Work after the effective date of such termination.

(b)    Upon such termination, the obligations of the Contract shall continue as to portions of the Work already performed and as to bona fide obligations assumed by Contractor prior to the date of receipt of Owner's termination notice.

(c)    Upon termination, Contractor shall be entitled to be paid the full cost of all Work properly done by Contractor to the date of termination not previously paid for, less sums already received by Contractor on account of the portion of the Work performed plus a reasonable percentage for overhead and profit on work in place. If at the date of such termination Contractor has properly prepared or fabricated off the Site any goods for subsequent incorporation in the Work, and if Contractor delivers such goods to the Site or to such other place as the Owner shall reasonably direct, then Contractor shall be paid for such goods or materials. Contractor shall also be entitled to be reimbursed for the reasonable cost of demobilizing the project and securing the job site, provided the Owner and the Contractor first mutually and reasonably agree on the scope of such demobilization and securing."

14.4.4    Add the following language as a new Subparagraph 14.4.4.

"In the event that the Owner gives the Contractor a notice of termination pursuant to any provision of this Article 14, the Contractor agrees to promptly withdraw its employees and equipment from the site and cause its subcontractors to do the same, regardless of any claim it may have against the Owner. Failure to do so shall entitle the Owner to bring an action against the Contractor for damages and/or injunctive relief, including attorneys' fees and other expenses."

## EXHIBIT 1

Example of Abnormal Weather Calculation

(1)    Actual weather during calendar month:*

    (a)    The sum of:

        (i)    the number of days in which precipitation is .01 inch
             or more                              12

        (ii)    the number of days in which snow, ice pellets and/or
             hail accumulation is 1.0 inch or more:        5

        (iii)    the number of days in which the maximum daily
             temperature is 32 degrees or less:          8

        Total                            25

(2)    Historical weather dam for such month:**

    (b)    The sum of:

        (i)    the historical mean number of days in which precipitation
             is .01 inch or more:               10.7

        (ii)    the historical mean number of days in which snow, ice
             pellets and/or hail accumulation is 1.0 inch or more:    4.5

        (iii)    the historical mean number of days in which the daily
             maximum temperature is 32 degrees or less:    13.0

        Total                            28.2

(3)    Number of "abnormal weather' days:

    (25 x 1.2) - 28.2 = 1.8, rounded up = 2.0***

---

\*    As compiled by the National Weather Service.
\*\*    Calculated from reports compiled by U.S. Department of Commerce National Oceanic and
    Atmospheric Administration.
\*\*\*    Note that extensions of the Contract Tune on account of weather shall only be granted m the
    extent abnormal weather lengthens the Schedule of Work critical path.

#895038 v\8 - cosimigb - j6m608!.doc - 11622/10



| 93 | 26JUN00A | 18SEP00 | SLURRY WALL DESIGN / REBAR SHOP DRAWINGS |
| | | | 9/15 - DELAY DUE TO ADDENDUM #1 |
| 36 | 05JUL00A | 26JAN01 | STEEL SHOP DRAWINGS AND FABRICATION |
| 100 | 07APR00A | 09MAY00A | ASBESTOS ABATEMENT |
| 100 | 05MAY00A | 15MAY00A | TERMINATE UTILITIES |
| 100 | 15MAY00A | 15MAY00A | MOBILIZE - DEMO SUB |
| 100 | 15MAY00A | 14JUL00A | DEMOLISH PARKING GARAGE |
| 100 | 29MAY00A | 06JUL00A | INSTALL CAP @ MBTA ROOF |
| 100 | 26JUN00A | 18JUL00A | FENCING |
| 100 | 07JUL00A | 18JUL00A | SET SITE CONTROL |
| 100 | 18JUL00A | 20JUL00A | DEMO SIDEWALK |
| 100 | 27JUL00A | 27JUL00A | CUT NORTH HALF TO ELEVATION 20 |
| 100 | 27JUL00A | 14AUG00A | REMOVE NORTH PARKING LOT |
| 100 | 31JUL00A | 15AUG00A | DEMO RED CROSS EAST GARAGE WALL SUPPORT |
| | | | 8/14 - PENDING CAISSON REMOVAL |
| 100 | 31JUL00A | 17AUG00A | INSTALL SOLDIER PILES @ RED CROSS |
| 13 | 11SEP00A | 20OCT00 | INSTALL MINI PILES |
| | | | 9/15 - DELAY DUE TO CAISSONS @ COLUMBUS ST |
| 0 | 18SEP00* | 27NOV00 | SLURRY WALL PRODUCTION (SUMMARY) |
| | | | 8/14 - DELAYED START DUE TO CAISSON REMOVAL |
| 0 | 09NOV00 | 15JAN01 | EXCAVATION - ZONE 1 |
| 0 | 10NOV00 | 15DEC00 | INSTALL CORNER BRACES/RAKERS - ZONE 1 TO ZONE 2 |
| 0 | 10NOV00 | 15DEC00 | INSTALL RAKERS / DEADMEN - ZONE 1 TO ZONE 2 |
| 0 | 28NOV00 | 04DEC00 | CUT WEST END TO ELEVATION 10 |
| | | | RAMP ACCESS, CLASSIFIED SOILS LOCATED HERE |

| 30NOV99 | | Early Bar | DA19 | | Sheet 5 of 9 | | S-2 - UPDA |
| 16AUG02 | | Progress Bar | | | | Date | Revision |
| 15SEP00 | | | Suffolk Construction Company, Inc. | | | | |
| 03OCT00 11:34 | | | 131 DARTMOUTH STREET - BOSTON, MA | | | | |
| | | | Construction Schedule | | | | |
| ystems, Inc. | | | | | SUFFOLK | | |

| | | |
|---|---|---|
| 0 | 28NOV00 | 11DEC00 |
| 0 | 18DEC00 | 02JAN01 |
| 0 | 16JAN01 | 29JAN01 |
| 0 | 16JAN01 | 06FEB01 |
| 0 | 16JAN01 | 06FEB01 |
| 0 | 16JAN01 | 14FEB01 |
| 0 | 30JAN01 | 19FEB01 |
| 0 | 15FEB01 | 14MAR01 |
| 0 | 15FEB01 | 14MAR01 |
| 0 | 15FEB01 | 14MAR01 |
| 0 | 15FEB01 | 21MAR01 |
| 100 | 17JUL00A | 26JUL00A |
| 100 | 26JUL00A | 08AUG00A |
| 100 | 24AUG00A | 30AUG00A |
| 0 | 18SEP00* | 20OCT00 |
| 0 | 23OCT00 | 03NOV00 |
| 100 | 25JUL00A | 08AUG00A |
| 100 | 25JUL00A | 07SEP00A |
| 100 | 27JUL00A | 09SEP00A |
| 0 | 18SEP00 | 20OCT00 |
| 0 | 23OCT00 | 03NOV00 |

SLURRY WALL DEMOBILIZATION
INSTALL TIE-BACKS @ FUJITECH SIDE
INSTALL PILE CAPS
INSTALL RAKERS / DEADMEN @ MBTA
INSTALL BRACES @ ZONE 2
EXCAVATE ZONE 2 TO ZONE 3
F/R/P STRUCTURAL SLAB
INSTALL TIE-BACKS @ DARTMOUTH STREET
INSTALL BRACES - ZONE 4
INSTALL RAKERS / DEADMEN - ZOI
EXCAVATION - ZONE 3 TO ZONE 4
PRETRENCH FOR SLURRY WALL - DARTMOUTH ST
INSTALL GUIDE WALLS - DARTMOUTH ST
MOBILIZE SLURRY WALL OPERATION / SETUP
8/14 - DELAYED START DUE TO CAISSON REMOVAL
INSTALL SLURRY WALL (RIG 1) - DARTMOUTH ST
8/14 - DELAYED START DUE TO CAISSON REMOVAL
INSTALL CAP BEAM - DARTMOUTH ST
PRETRENCH - MBTA
REMOVE CAISSIONS - MBTA
INSTALL GUIDE WALLS - MBTA
INSTALL SLURRY WALL (RIG 2) - MBTA
INSTALL CAP BEAM - MBTA

| | |
|---|---|
| 30NOV99 | Early Bar |
| 16AUG02 | Progress Bar |
| 15SEP00 | |
| 03OCT00 11:34 | |

DA19   Sheet 6 of 9

**Suffolk Construction Company, Inc.**
**131 DARTMOUTH STREET - BOSTON, MA**
**Construction Schedule**

SUFOLK

S-2 - UPDA
Date | Revision

ystems, Inc.

| % | Early Start | Early Finish | Activity |
|---|---|---|---|
| 100 | 10JUL00A | 14JUL00A | PRETRENCH FOR SLURRY WALLS - ZOI TO ALLEY |
| 50 | 26JUL00A | 19OCT00 | INSTALL GUIDE WALLS - ZOI TO ALLEY |
| | | | 9/15 - SETTLEMENT OCCURED AFTER CAISSON REMOVAL, NEED TO INSTALL NEW FOUNDATIONS |
| 0 | 23OCT00 | 27NOV00 | INSTALL SLURRY WALL (RIG 1) - ZOI TO ALLEY |
| 0 | 28NOV00 | 11DEC00 | INSTALL CAP BEAM - ZOI TO ALLEY |
| 100 | 20JUL00A | 20JUL00A | NOTIFY OWNER OF CHANGED CONDITION |
| 100 | 21JUL00A | 01AUG00A | OWNER REVIEW OF CHANGED CONDITION |
| 100 | 02AUG00A | 08SEP00A | REMOVE CAISSONS @ COLUMBUS STREET |
| 100 | 02AUG00A | 14SEP00A | PRETRENCH - ALLEY TO RED CROSS |
| 0 | 23OCT00 | 27NOV00 | INSTALL SLURRY WALL (RIG 2) - ALLEY TO RED CROSS |
| 0 | 28NOV00 | 11DEC00 | INSTALL CAP BEAM - ALLEY TO RED CROSS |
| 0 | 04JAN01 | 17JAN01 | PLACE MUD SLAB @ ZONE 1 |
| 0 | 08JAN01 | 19JAN01 | INSTALL MAT SLAB REBAR - ZONE 1 |
| 0 | 09JAN01 | 22JAN01 | INSTALL MAT SLAB UNDERGROUND PLUMBING - ZONE 1 |
| 0 | 11JAN01 | 22JAN01 | INSTALL MAT SLAB UNDERGROUND ELECTRIC - ZONE 1 |
| 0 | 23JAN01 | 24JAN01 | PLACE MAT SLAB @ ZONE 1 |
| 0 | 25JAN01 | 31JAN01 | MAT SLAB CURE TIME |
| 0 | 01FEB01 | 16FEB01 | PLACE MUD SLAB @ ZONE 2 |
| 0 | 08FEB01 | 21FEB01 | INSTALL MAT SLAB REBAR - ZONE 2 |
| 0 | 12FEB01 | 23FEB01 | INSTALL MAT SLAB UNDERGROUND PLUMBING - ZONE 2 |
| 0 | 14FEB01 | 23FEB01 | INSTALL MAT SLAB UNDERGROUND ELECTRIC - ZONE 2 |

| | |
|---|---|
| 30NOV99 | Early Bar |
| 16AUG02 | |
| 15SEP00 | Progress Bar |
| 03OCT00 11:34 | |
| ...ystems, Inc. | |

DA19

Sheet 7 of 9

**Suffolk Construction Company, Inc.**
**131 DARTMOUTH STREET - BOSTON, MA**
**Construction Schedule**

SUFFOLK

| | S-2 - UPDA... |
|---|---|
| Date | Revision |

| 0 | 26FEB01 | 26FEB01 | | ✗PLACE MAT SLAB @ ZONE 2 |
|---|---------|---------|--|--------------------------|
| 0 | 28FEB01 | 23MAR01 | | ◢▽PLACE MUD SLAB - ZONE 3 & ZONE 4 |
| 0 | 06MAR01 | 12MAR01 | | ◢▽INSTALL MAT SLAB REBAR - ZONE 3 |
| 0 | 07MAR01 | 13MAR01 | | ◢▽INSTALL MAT SLAB UNDERGROUND PLUMBING - ZONE 3 |
| 0 | 08MAR01 | 14MAR01 | | ◢▽INSTALL MAT SLAB UNDERGROUND ELECTRIC - ZONE 3 |
| 0 | 15MAR01 | 15MAR01 | | ✗PLACE MAT SLAB @ ZONE 3 |
| 0 | 28MAR01 | 30MAR01 | | ◢▽INSTALL MAT SLAB REBAR - ZONE 4 |
| 0 | 28MAR01 | 03APR01 | | ◢▽INSTALL MAT SLAB UNDERGROUND PLUMBING - ZONE |
| 0 | 29MAR01 | 04APR01 | | ◢▽INSTALL MAT SLAB UNDERGROUND ELECTRIC - ZONE |
| 0 | 05APR01 | 05APR01 | | ✗PLACE MAT SLAB @ ZONE 4 |

ROOF, INTERIOR

| 0 | 01FEB01 | 07FEB01 | | ◢▽SET TOWER CRANE |
|---|---------|---------|--|-------------------|
| 0 | 08FEB01 | 08FEB01 | | ◢▽START STRUCTURAL STEEL |
| 0 | 09FEB01 | 04MAY01 | | ERECT STEEL - GARAGE THRU LEVEL 1 - Z1 - Z4 |
| 0 | 06MAR01 | 18JUN01 | | CONCRETE DECKS - GARAGE |
| 0 | 07MAY01 | 27AUG01 | | STEEL TOWER |
| 0 | 07MAY01 | 17SEP01 | | ▽PARKING ELEVATORS |
| 0 | 22MAY01 | 28AUG01 | | ▽MEPS / FINISHES - PARKING GARAGE |
| 0 | 11JUN01 | 15JUN01 | | ◢▽INSTALL HOIST |
| 0 | 14JUN01 | 04OCT01 | | CONCRETE / FIREPROOFING |
| 0 | 03JUL01 | 10MAY02 | | EXT |
| 0 | 18JUL01 | 26APR02 | | MEPS |

30NOV99  
16AUG02  
15SEP00  
03OCT00 11:34

◢▽ Early Bar  
◢▽ Progress Bar

DA19

Sheet 8 of 9

**Suffolk Construction Company, Inc.**
**131 DARTMOUTH STREET - BOSTON, MA**
**Construction Schedule**

SUFFOLK

| | S-2 - UPDA |
|--|------------|
| Date | Revision |

...ystems, Inc.

| | 0 | 14AUG01 | 27AUG01 | WATER TIGHT ELEVATOR MACHIN |
| | 0 | 28AUG01 | 11DEC01 | INSTALL SERVICE E |
| | 0 | 29AUG01 | 20NOV01 | ROOFING |
| | 0 | 10SEP01 | 14JUN02 | TOWER FINISHES |
| | 0 | 10OCT01 | 05APR02 | ELEV |
| | 0 | 12DEC01 | 18DEC01 | DISMANTLE HOIST |
| | 0 | 19DEC01 | 03JAN02 | INFILL HOIST BAY |
| | 0 | 18JAN02 | 16AUG02 | LOBBY FINISHES |
| | 0 | 18MAR02 | 17JUN02 | TESTING / INSPECTION |
| | 0 | 29MAR02 | 16AUG02 | SITEWORK / LANDSCAPING |
| | 0 | | 17JUN02 | |
| | 0 | 24JAN02 | 24JAN02 | SCCI - START OF TI FLOORS 2-5 |
| | 0 | 22FEB02 | 22FEB02 | SCCI - START OF TI FLOORS 6-9 |
| | 0 | 25MAR02 | 25MAR02 | SCCI - START OF TI FLOORS 10-12 |
| | 0 | 24APR02 | 24APR02 | OUTSIDE CONTRACTOR - START OF TI FLOORS 2-5 |
| | 0 | 13MAY02 | 13MAY02 | OUTSIDE CONTRACTOR - START OF TI FLOORS 6-9 |
| | 0 | 11JUN02 | 11JUN02 | OUTSIDE CONTRACTOR - START OF TI FLOORS 10-12 |



| 30NOV99 | | ▼ Early Bar | DA19 | Sheet 9 of 9 | | S-2 - UPD |
| 16AUG02 | | ▼ Progress Bar | | | | Date | Revision |
| 15SEP00 | | | **Suffolk Construction Company, Inc.** | | | |
| 03OCT00 11:34 | | | **131 DARTMOUTH STREET - BOSTON, MA** | | | |
| | | | **Construction Schedule** | | | |
| Systems, Inc. | | | | | | |

**131 DARTMOUTH STREET**
**DRAWING LOG-EXHIBIT B**
Suffolk Construction Company, Inc

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|

**131 DARTMOUTH STREET**
**DRAWING LOG-EXHIBIT B**
Suffolk Construction Company, Inc

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| **TITLE SHEETS** | | |
| T1 | TITLE SHEET AND DRAWING LIST | 30-Jun-00 |
| T2 | AXON VIEW FROM DARTMOUTH ST. AT COLUMBUS AVE. | 21-Apr-00 |
| T3 | AXON VIEW FROM COLUMBUS AVE. AT CLARENDON ST. | 21-Apr-00 |
| T4 | AXON VIEW FROM CLARENDON ST. AT MBTA | 21-Apr-00 |
| T5 | AXON VIEW FROM DARTMOUTH ST. AT MBTA | 21-Apr-00 |
| | | |
| **GEOTECHNICAL** | | |
| GT.1 | GEOTECHNICAL INSTRUMENTATION LOCATION PLAN AND DETAILS | 17-Apr-00 |
| GT.2 | MINIMUM TEMPORARY LATERAL PRESSURES FOR DESIGN OF BELOW GRADE WALLS | 17-Apr-00 |
| GT.3 | CITY OF BOSTON AND MBTA TEMPORARY EASEMENT LOCATION PLAN | 17-Apr-00 |
| | | |
| **CIVIL / SITE** | | |
| C1 | SITE UTILITY PLAN | 08-May-00 |
| C2 | EXISTING CONDITIONS PLAN | 08-May-00 |
| | | |
| **LANDSCAPE** | | |
| L1 | ALLEY LAYOUT, GRADING AND PLANTING PLAN ROOF DECK PLANTING PLAN | 08-May-00 |
| L2 | LAYOUT AND MATERIALS PLAN / SITE DETAILS DARTMOUTH STREET | 30-Jun-00 |
| L3 | GRADING PLAN DARTMOUTH STREET | 08-May-00 |
| L4 | PLANTING PLAN / PLANTING DETAILS DARTMOUTH STREET | 08-May-00 |
| | | |
| **ARCHITECTURAL** | | |
| D1.01 | DEMOLITION PLANS | 21-Jan-00 |
| D1.10 | DEMOLITION PLANS 287 COLUMBUS AVE. BUILDING | 18-Feb-00 |
| D1.11 | DEMOLITION ELEVATIONS AND SECTIONS 287 COLUMBUS AVE. BUILDING | 18-Feb-00 |
| A0.02 | MASTER KEYNOTE LIST, SYMBOLS, LEGEND AND ABBREVIATIONS | 30-Jun-00 |
| A0.03 | PARTITION TYPES | 08-May-00 |
| A1.01 | CODE AND FIREPROOFING PLANS B4, B3, B2, AND B1 LEVEL | 08-May-00 |
| A1.02 | CODE AND FIREPROOFING PLAN GROUND LEVEL | 08-May-00 |
| A1.03 | CODE AND FIREPROOFING PLANS MEZZANINE AND 2 LEVEL | 08-May-00 |
| A1.04 | CODE AND FIREPROOFING PLANS 3, 4, 5, AND 6 LEVEL | 08-May-00 |
| A1.05 | CODE AND FIREPROOFING PLANS 7, 8, 9 AND 10 LEVEL | 08-May-00 |
| A1.06 | CODE AND FIREPROOFING PLANS 11 AND 12 LEVEL | 08-May-00 |
| A2.01 | FLOOR PLAN B4 LEVEL WEST | 08-May-00 |
| A2.02 | FLOOR PLAN B4 LEVEL EAST | 08-May-00 |
| A2.03 | FLOOR PLAN B3 / B2 LEVEL WEST | 08-May-00 |
| A2.04 | FLOOR PLAN B3 / B2 LEVEL EAST | 08-May-00 |
| A2.05 | FLOOR PLAN B1 LEVEL WEST | 30-Jun-00 |
| A2.06 | FLOOR PLAN B1 LEVEL EAST | 08-May-00 |
| A2.07 | FLOOR PLAN GROUND LEVEL WEST | 30-Jun-00 |
| A2.08 | FLOOR PLAN GROUND LEVEL EAST | 30-Jun-00 |
| A2.09 | FLOOR PLAN MEZZANINE LEVEL WEST | 08-May-00 |
| A2.10 | FLOOR PLAN MEZZANINE LEVEL EAST | 30-Jun-00 |
| A2.11 | FLOOR PLAN SECOND LEVEL WEST | 08-May-00 |
| A2.12 | FLOOR PLAN SECOND LEVEL EAST | 08-May-00 |
| A2.13 | FLOOR PLAN THIRD LEVEL WEST | 08-May-00 |
| A2.14 | FLOOR PLAN THIRD LEVEL EAST | 08-May-00 |

**131 DARTMOUTH STREET**
**DRAWING LOG-EXHIBIT B**
Suffolk Construction Company, Inc

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| A2.15 | FLOOR PLAN FOURTH LEVEL WEST | 08-May-00 |
| A2.16 | FLOOR PLAN FOURTH LEVEL EAST | 08-May-00 |
| A2.17 | FLOOR PLAN FIFTH LEVEL WEST | 08-May-00 |
| A2.18 | FLOOR PLAN FIFTH LEVEL EAST | 08-May-00 |
| A2.19 | FLOOR PLAN SIXTH THROUGH EIGHTH LEVEL WEST | 08-May-00 |
| A2.20 | FLOOR PLAN SIXTH THROUGH EIGHTH LEVEL EAST | 08-May-00 |
| A2.21 | FLOOR PLAN NINTH LEVEL WEST | 08-May-00 |
| A2.22 | FLOOR PLAN NINTH LEVEL EAST | 08-May-00 |
| A2.23 | FLOOR PLAN TENTH AND ELEVENTH LEVEL WEST | 08-May-00 |
| A2.24 | FLOOR PLAN TENTH AND ELEVENTH LEVEL EAST | 08-May-00 |
| A2.25 | FLOOR PLAN PENTHOUSE WEST | 08-May-00 |
| A2.26 | FLOOR PLAN PENTHOUSE EAST | 08-May-00 |
| A2.30 | FLOOR PLANS 287 COLUMBUS AVE. BUILDING | 30-Jun-00 |
| A2.40 | CEILING PARTIAL PLANS GROUND AND SECOND THROUGH ELEVENTH LEVEL | 08-May-00 |
| A2.41 | CEILING PLAN MEZZANINE LEVEL WEST | 08-May-00 |
| A2.42 | CEILING PLAN MEZZANINE LEVEL EAST | 08-May-00 |
| A2.43 | ENLARGED CEILING PLAN AT SECOND FLOOR LOBBY | 08-May-00 |
| A3.01 | EXTERIOR ELEVATION WEST (DARTMOUTH STREET) | 08-May-00 |
| A3.02 | EXTERIOR ELEVATION SOUTH (ALLEY WEST END) | 30-Jun-00 |
| A3.03 | EXTERIOR ELEVATION SOUTH (ALLEY EAST END) | 30-Jun-00 |
| A3.04 | EXTERIOR ELEVATION EAST (CLARENDON STREET) | 08-May-00 |
| A3.05 | EXTERIOR ELEVATION NORTH (MBTA EAST END) | 08-May-00 |
| A3.06 | EXTERIOR ELEVATION NORTH (MBTA WEST END) | 08-May-00 |
| A3.07 | ENLARGED ELEVATIONS ENTRY | 08-May-00 |
| A3.08 | ENLARGED ELEVATIONS AND PLANS | 30-Jun-00 |
| A3.09 | ENLARGED ELEVATIONS AND PLANS | 08-May-00 |
| A3.10 | ENLARGED ELEVATIONS AND PLANS | 08-May-00 |
| A3.11 | ENLARGED ELEVATIONS AND PLANS | 08-May-00 |
| A3.12 | ENLARGED ELEVATIONS AND PLANS | 08-May-00 |
| A3.13 | ENLARGED ELEVATIONS AND PLANS | 30-Jun-00 |
| A3.14 | ENLARGED ELEVATIONS 287 COLUMBUS AVE BUILDING | 08-May-00 |
| A3.20 | BUILDING SECTION | 08-May-00 |
| A3.21 | BUILDING SECTION | 08-May-00 |
| A3.22 | BUILDING SECTIONS | 08-May-00 |
| A3.23 | BUILDING SECTION | 08-May-00 |
| A3.24 | BUILDING SECTION AND DETAILS 287 COLUMBUS AVE BUILDING | 30-Jun-00 |
| A4.01 | WALL SECTIONS B4 TO GROUND LEVEL | 30-Jun-00 |
| A4.02 | WALL SECTIONS B4 TO GROUND LEVEL | 08-May-00 |
| A4.03 | WALL SECTION GROUND TO SIXTH FLOOR LEVEL (DARTMOUTH STREET) | 08-May-00 |
| A4.04 | WALL SECTION GROUND TO SIXTH FLOOR LEVEL (COLUMBUS AVE) | 30-Jun-00 |
| A4.05 | WALL SECTION GROUND TO SIXTH FLOOR LEVEL (MBTA) | 08-May-00 |
| A4.06 | WALL SECTION SIXTH FLOOR TO PENTHOUSE LEVEL (DARTMOUTH STREET) | 08-May-00 |
| A4.07 | WALL SECTION SIXTH FLOOR TO PENTHOUSE LEVEL (COLUMBUS AVE.) | 08-May-00 |
| A4.08 | WALL SECTION SIXTH FLOOR TO PENTHOUSE LEVEL (MBTA) | 30-Jun-00 |
| A5.01 | PLAN DETAILS | 08-May-00 |
| A5.02 | PLAN DETAILS | 08-May-00 |
| A5.03 | PLANS AND SECTION DETAILS | 08-May-00 |
| A5.04 | PLAN AND SECTION DETAILS | 08-May-00 |
| A5.06 | PLAN DETAILS | 08-May-00 |
| A5.10 | SECTION DETAILS | 08-May-00 |
| A5.11 | SECTION DETAILS | 30-Jun-00 |
| A5.12 | SECTION DETAILS | 30-Jun-00 |
| A5.13 | SECTION AND PLAN DETAILS | 30-Jun-00 |
| A5.14 | SECTION DETAILS | 30-Jun-00 |

2

**131 DARTMOUTH STREET**
**DRAWING LOG-EXHIBIT B**
Suffolk Construction Company, Inc

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| A5.15 | SECTION DETAILS | 08-May-00 |
| A5.16 | SECTION DETAILS | 30-Jun-00 |
| A5.17 | SECTION DETAILS | 08-May-00 |
| A5.18 | SECTION DETAILS | 08-May-00 |
| A5.19 | SECTION DETAILS | 08-May-00 |
| A5.20 | SECTION DETAILS | 08-May-00 |
| A5.21 | NOT USED | 08-May-00 |
| A5.22 | ROOF DETAILS | 08-May-00 |
| A6.01 | ENLARGED LOBBY PLAN AT GROUND LEVEL | 30-Jun-00 |
| A6.02 | ENLARGED LOBBY PLAN AT MEZZANINE LEVEL | 08-May-00 |
| A6.03 | ENLARGED MAIN PARKING RAMP PLAN | 08-May-00 |
| A6.04 | ENLARGED SERVICE COURT "A" PLAN (DARTMOUTH STREET) | 08-May-00 |
| A6.05 | ENLARGED SERVICE COURT "B" PLAN (COLUMBUS AVE.) | 08-May-00 |
| A6.06 | TOILET ROOM ENLARGED PLANS AND ELEVATION | 08-May-00 |
| A6.10 | WINDOW / LOUVER TYPES | 30-Jun-00 |
| A6.11 | WINDOW, STOREFRONT AND LOUVER DETAILS | 08-May-00 |
| A6.12 | CURTAINWALL DETAILS | 30-Jun-00 |
| A7.01 | STAIR NO. 1 PLANS AND SECTIONS | 30-Jun-00 |
| A7.02 | STAIR NO. 2, 6 AND 7 PLANS AND SECTIONS | 30-Jun-00 |
| A7.03 | STAIR NO. 3 PLANS AND SECTIONS | 30-Jun-00 |
| A7.04 | STAIR NO. 4 PLANS AND SECTION / LOBBY RAMP PLAN | 30-Jun-00 |
| A7.05 | TYPICAL RAIL DETAILS / STAIR SECTIONS, PLANS @ 287 COLUMBUS AVENUE | 30-Jun-00 |
| A7.06 | LOBBY STAIR - PLAN, SECTION AND DETAILS | 30-Jun-00 |
| A7.10 | ELEVATOR G7 & G8 PLANS & SECTIONS | 21-Apr-00 |
| A7.11 | ELEVATORS P1-P5 and S6 PLANS & SECTIONS | 21-Apr-00 |
| A7.12 | ELEVATOR DETAILS | 21-Apr-00 |
| A7.13 | ELEVATOR DETAILS | 21-Apr-00 |
| A7.20 | ESCALATOR PLAN, SECTIONS, & DETAILS | 08-May-00 |
| A8.01 | ENLARGED LOBBY FINISH PLAN | 30-Jun-00 |
| A8.02 | ENLARGED LOBBY FINISH PLAN MEZZANINE LEVEL | 08-May-00 |
| A8.03 | LOBBY ELEVATIONS | 30-Jun-00 |
| A8.04 | ELEVATOR LOBBY DETAILS. PLANS RCP'S AND ELEVATIONS | 30-Jun-00 |
| A9.01 | DECORATIVE RAILING DETAILS | 30-Jun-00 |
| A9.02 | CEILING DETAILS | 08-May-00 |
| A9.04 | MAIN LOBBY PILASTER DETAILS | 30-Jun-00 |
| **STRUCTURAL** | | |
| S1.01 | GENERAL NOTES | 08-May-00 |
| S2.01 | PLAN B4 LEVEL WEST | **18-Aug-00** |
| S2.02 | PLAN B4 LEVEL EAST | **18-Aug-00** |
| S2.03 | FRAMING PLAN B3 LEVEL WEST | **18-Aug-00** |
| S2.04 | FRAMING PLAN B3 LEVEL EAST | **18-Aug-00** |
| S2.05 | FRAMING PLAN B2 LEVEL WEST | **18-Aug-00** |
| S2.06 | FRAMING PLAN B2 LEVEL EAST | **18-Aug-00** |
| S2.07 | FRAMING PLAN B1 LEVEL WEST | **18-Aug-00** |
| S2.08 | FRAMING PLAN B1 LEVEL EAST | **18-Aug-00** |
| S2.09 | FRAMING PLAN GROUND LEVEL WEST | **18-Aug-00** |
| S2.10 | FRAMING PLAN GROUND LEVEL EAST | **18-Aug-00** |
| S2.11 | FRAMING PLAN MEZZANINE LEVEL WEST | **18-Aug-00** |
| S2.12 | FRAMING PLAN MEZZANINE LEVEL EAST | **18-Aug-00** |
| S2.13 | FRAMING PLAN SECOND LEVEL WEST | 30-Jun-00 |
| S2.14 | FRAMING PLAN SECOND LEVEL EAST | **18-Aug-00** |
| S2.15 | FRAMING PLAN THIRD LEVEL WEST | 30-Jun-00 |
| S2.16 | FRAMING PLAN THIRD LEVEL EAST | 30-Jun-00 |

**131 DARTMOUTH STREET**
**DRAWING LOG-EXHIBIT B**
**Suffolk Construction Company, Inc.**

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| S2.17 | FRAMING PLAN FOURTH LEVEL WEST | 30-Jun-00 |
| S2.18 | FRAMING PLAN FOURTH LEVEL EAST | 30-Jun-00 |
| S2.19 | FRAMING PLAN FIFTH LEVEL WEST | **18-Aug-00** |
| S2.20 | FRAMING PLAN FIFTH LEVEL EAST | **18-Aug-00** |
| S2.21 | FRAMING PLAN SIXTH LEVEL WEST | **18-Aug-00** |
| S2.22 | FRAMING PLAN SIXTH LEVEL EAST | **18-Aug-00** |
| S2.23 | FRAMING PLAN SEVENTH THRU NINTH LEVEL WEST | 30-Jun-00 |
| S2.24 | FRAMING PLAN SEVENTH THRU NINTH LEVEL EAST | 30-Jun-00 |
| S2.25 | FRAMING PLAN TENTH LEVEL WEST | 30-Jun-00 |
| S2.26 | FRAMING PLAN TENTH LEVEL EAST | 30-Jun-00 |
| S2.27 | FRAMING PLAN ELEVENTH LEVEL WEST | 30-Jun-00 |
| S2.28 | FRAMING PLAN ELEVENTH LEVEL EAST | 30-Jun-00 |
| S2.29 | FRAMING PLAN ROOF LEVEL WEST | **18-Aug-00** |
| S2.30 | FRAMING PLAN ROOF LEVEL EAST | **18-Aug-00** |
| S2.31 | FRAMING PLAN PENTHOUSE ROOF / ELEVATOR PENTHOUSE LEVEL | 08-May-00 |
| S2.32 | PART FRAMING PLAN GROUND LEVEL | **18-Aug-00** |
| S2.33 | FRAMING PLAN, SECTION & DETAILS @ 287 COLUMBUS AVE. | 30-Jun-00 |
| S3.01 | COLUMN SCHEDULE 1 | 08-May-00 |
| S3.02 | COLUMN SCHEDULE 2 | 08-May-00 |
| S3.03 | LATERAL FRAME ELEVATIONS 1 | **18-Aug-00** |
| S3.04 | LATERAL FRAME ELEVATIONS 2 | 30-Jun-00 |
| S3.05 | LATERAL FRAME ELEVATIONS 3 | 30-Jun-00 |
| S3.06 | LATERAL FRAME ELEVATIONS 4 | 08-May-00 |
| S3.07 | LATERAL FRAME ELEVATIONS 5 | 30-Jun-00 |
| S3.08 | LATERAL FRAME ELEVATIONS 6 | 30-Jun-00 |
| S3.09 | LATERAL FRAME ELEVATIONS 7 | 30-Jun-00 |
| S4.01 | TYPICAL CONCRETE DETAILS | 08-May-00 |
| S4.02 | TYPICAL CONCRETE DETAILS 2 | **18-Aug-00** |
| S4.03 | TYPICAL CONCRETE DETIALS 3 | **18-Aug-00** |
| S5.01 | TYPICAL STEEL DETAILS | 08-May-00 |
| S5.02 | TYPICAL STEEL DETAILS 2 | **18-Aug-00** |
| S5.03 | TYPICAL STEEL DETAILS 3 | 30-Jun-00 |
| S6.01 | SECTIONS AND DETAILS 1 | 08-May-00 |
| S6.02 | SECTIONS AND DETAILS 2 | **18-Aug-00** |
| S6.03 | SECTIONS AND DETAILS 3 | **18-Aug-00** |
| S6.04 | SECTIONS AND DETIALS 4 | **18-Aug-00** |
| S6.05 | SECTIONS AND DETIALS 5 | **18-Aug-00** |
| S6.06 | SECTIONS AND DETAILS 6 | **18-Aug-00** |
| S6.07 | SECTIONS AND DETAILS 7 | **18-Aug-00** |
| **PLUMBING** | | |
| P1.01 | PLUMBING LEGEND, NOTES AND SCHEDULES | 08-May-00 |
| P1.02 | PLUMBING DETAILS | 30-Jun-00 |
| P1.03 | PLUMBING DOMESTIC WATER RISERS DIAGRAMS | 30-Jun-00 |
| P1.04 | PLUMBING SANITARY WASTE AND VENT RISER DIAGRAMS | 30-Jun-00 |
| P2.01 | PLUMBING PLAN B4 LEVEL WEST | 30-Jun-00 |
| P2.02 | PLUMBING PLAN B4 LEVEL EAST | 30-Jun-00 |
| P2.03 | PLUMBING PLAN B3 LEVEL WEST | 30-Jun-00 |
| P2.04 | PLUMBING PLAN B3 LEVEL EAST | 30-Jun-00 |
| P2.05 | PLUMBING PLAN B2 LEVEL WEST | 30-Jun-00 |
| P2.06 | PLUMBING PLAN B2 LEVEL EAST | 30-Jun-00 |
| P2.07 | PLUMBING PLAN B1 LEVEL WEST | 30-Jun-00 |
| P2.08 | PLUMBING PLAN B1 LEVEL EAST | 30-Jun-00 |
| P2.09 | PLUMBING PLAN GROUND LEVEL WEST | 30-Jun-00 |

11/17/2000

**131 DARTMOUTH STREET**
DRAWING LOG-EXHIBIT B
Suffolk Construction Company, Inc

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| P2.10 | PLUMBING PLAN GROUND LEVEL EAST | 30-Jun-00 |
| P2.11 | PLUMBING PLAN MEZZANINE LEVEL WEST | 30-Jun-00 |
| P2.12 | PLUMBING PLAN MEZZANINE LEVEL EAST | 30-Jun-00 |
| P2.13 | PLUMBING PLAN SECOND LEVEL WEST | 30-Jun-00 |
| P2.14 | PLUMBING PLAN SECOND LEVEL EAST | 30-Jun-00 |
| P2.15 | PLUMBING PLAN THIRD LEVEL WEST | 30-Jun-00 |
| P2.16 | PLUMBING PLAN THIRD LEVEL EAST | 30-Jun-00 |
| P2.17 | PLUMBING PLAN FOURTH LEVEL WEST | 30-Jun-00 |
| P2.18 | PLUMBING PLAN FOURTH LEVEL EAST | 30-Jun-00 |
| P2.19 | PLUMBING PLAN FIFTH LEVEL WEST | 30-Jun-00 |
| P2.20 | PLUMBING PLAN FIFTH LEVEL EAST | 30-Jun-00 |
| P2.21 | PLUMBING PLAN SIXTH LEVEL WEST | 30-Jun-00 |
| P2.22 | PLUMBING PLAN SIXTH LEVEL EAST | 30-Jun-00 |
| P2.23 | PLUMBING PLAN SEVENTH LEVEL WEST | 30-Jun-00 |
| P2.24 | PLUMBING PLAN SEVENTH LEVEL EAST | 30-Jun-00 |
| P2.25 | PLUMBING PLAN EIGHTH LEVEL WEST | 30-Jun-00 |
| P2.26 | PLUMBING PLAN EIGHTH LEVEL EAST | 30-Jun-00 |
| P2.27 | PLUMBING PLAN NINTH LEVEL WEST | 30-Jun-00 |
| P2.28 | PLUMBING PLAN NINTH LEVEL EAST | 30-Jun-00 |
| P2.29 | PLUMBING PLAN TENTH LEVEL WEST | 30-Jun-00 |
| P2.30 | PLUMBING PLAN TENTH LEVEL EAST | 30-Jun-00 |
| P2.31 | PLUMBING PLAN ELEVENTH LEVEL WEST | 30-Jun-00 |
| P2.32 | PLUMBING PLAN ELEVENTH LEVEL EAST | 30-Jun-00 |
| P2.33 | PLUMBING PLAN ROOF LEVEL WEST | 30-Jun-00 |
| P2.34 | PLUMBING PLAN ROOF LEVEL EAST | 30-Jun-00 |
| **FIRE PROTECTION** | | |
| FP1.01 | FIRE PROTECTION LEGEND AND DIAGRAMS | 08-May-00 |
| FP2.01 | FIRE PROTECTION PLAN B4 LEVEL WEST | 08-May-00 |
| FP2.02 | FIRE PROTECTION PLAN B4 LEVEL EAST | 08-May-00 |
| FP2.03 | FIRE PROTECTION PLAN B3 / B2 LEVEL WEST | 08-May-00 |
| FP2.04 | FIRE PROTECTION PLAN B3 / B2 LEVEL EAST | 08-May-00 |
| FP2.05 | FIRE PROTECTION PLAN B1 LEVEL WEST | **30-Jun-00** |
| FP2.06 | FIRE PROTECTION PLAN B1 LEVEL EAST | 08-May-00 |
| FP2.07 | FIRE PROTECTION PLAN GROUND LEVEL WEST | **30-Jun-00** |
| FP2.08 | FIRE PROTECTION PLAN GROUND LEVEL EAST | 08-May-00 |
| FP2.09 | FIRE PROTECTION PLAN MEZZANINE LEVEL WEST | 08-May-00 |
| FP2.10 | FIRE PROTECTION PLAN MEZZANINE LEVEL EAST | 08-May-00 |
| FP2.11 | FIRE PROTECTION PLAN SECOND LEVEL WEST | 08-May-00 |
| FP2.12 | FIRE PROTECTION PLAN SECOND LEVEL WEST | 08-May-00 |
| FP2.13 | FIRE PROTECTION PLAN THIRD LEVEL WEST | 08-May-00 |
| FP2.14 | FIRE PROTECTION PLAN THIRD LEVEL EAST | 08-May-00 |
| FP2.15 | FIRE PROTECTION PLAN FOURTH LEVEL WEST | 08-May-00 |
| FP2.16 | FIRE PROTECTION PLAN FOURTH LEVEL EAST | 08-May-00 |
| FP2.17 | FIRE PROTECTION PLAN FIFTH LEVEL WEST | 08-May-00 |
| FP2.18 | FIRE PROTECTION PLAN FIFTH LEVEL EAST | 08-May-00 |
| FP2.19 | FIRE PROTECTION PLAN SIXTH LEVEL WEST | 08-May-00 |
| FP2.20 | FIRE PROTECTION PLAN SIXTH LEVEL EAST | 08-May-00 |
| FP2.21 | FIRE PROTECTION PLAN SEVENTH LEVEL WEST | 08-May-00 |
| FP2.22 | FIRE PROTECTION PLAN SEVENTH LEVEL EAST | 08-May-00 |
| FP2.23 | FIRE PROTECTION PLAN EIGHTH LEVEL WEST | 08-May-00 |
| FP2.24 | FIRE PROTECTION PLAN EIGHTH LEVEL EAST | 08-May-00 |
| FP2.25 | FIRE PROTECTION PLAN NINTH LEVEL WEST | 08-May-00 |
| FP2.26 | FIRE PROTECTION PLAN NINTH LEVEL EAST | 08-May-00 |

11/17/2000

**131 DARTMOUTH STREET**
**DRAWING LOG-EXHIBIT B**
**Suffolk Construction Company, Inc**

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| FP2.27 | FIRE PROTECTION PLAN TENTH LEVEL WEST | 08-May-00 |
| FP2.28 | FIRE PROTECTION PLAN TENTH LEVEL EAST | 08-May-00 |
| FP2.29 | FIRE PROTECTION PLAN ELEVENTH LEVEL WEST | 08-May-00 |
| FP2.30 | FIRE PROTECTION PLAN ELEVENTH LEVEL EAST | 08-May-00 |
| FP2.31 | FIRE PROTECTION PLAN ROOF LEVEL WEST | 08-May-00 |
| FP2.32 | FIRE PROTECTION PLAN ROOF LEVEL EAST | |
| | | |
| **HVAC** | | |
| H1.01 | HVAC SCHEDULES AND LEGEND | 30-Jun-00 |
| H1.02 | HVAC DETAILS PART PLANS AND SECTION | 30-Jun-00 |
| H1.03 | HVAC RISER DIAGRAMS | 30-Jun-00 |
| H2.01 | HVAC PLAN B4 LEVEL WEST | 30-Jun-00 |
| H2.02 | HVAC PLAN B4 LEVEL EAST | 30-Jun-00 |
| H2.03 | HVAC PLAN B3 LEVEL WEST | 30-Jun-00 |
| H2.04 | HVAC PLAN B3 LEVEL EAST | 30-Jun-00 |
| H2.05 | HVAC PLAN B2 LEVEL WEST | 30-Jun-00 |
| H2.06 | HVAC PLAN B2 LEVEL EAST | 30-Jun-00 |
| H2.07 | HVAC PLAN B1 LEVEL WEST | 30-Jun-00 |
| H2.08 | HVAC PLAN B1 LEVEL EAST | 30-Jun-00 |
| H2.09 | HVAC PLAN GROUND LEVEL WEST | 30-Jun-00 |
| H2.10 | HVAC PLAN GROUND LEVEL EAST | 30-Jun-00 |
| H2.11 | HVAC PLAN MEZZANINE LEVEL WEST | 30-Jun-00 |
| H2.12 | HVAC PLAN MEZZANINE LEVEL EAST | 30-Jun-00 |
| H2.13 | HVAC PLAN SECOND LEVEL WEST | 30-Jun-00 |
| H2.14 | HVAC PLAN SECOND LEVEL EAST | 30-Jun-00 |
| H2.15 | HVAC PLAN THIRD LEVEL WEST | 30-Jun-00 |
| H2.16 | HVAC PLAN THIRD LEVEL EAST | 30-Jun-00 |
| H2.17 | HVAC PLAN FOURTH LEVEL WEST | 30-Jun-00 |
| H2.18 | HVAC PLAN FOURTH LEVEL EAST | 30-Jun-00 |
| H2.19 | HVAC PLAN FIFTH LEVEL WEST | 30-Jun-00 |
| H2.20 | HVAC PLAN FIFTH LEVEL EAST | 30-Jun-00 |
| H2.21 | HVAC PLAN SIXTH LEVEL WEST | 30-Jun-00 |
| H2.22 | HVAC PLAN SIXTH LEVEL EAST | 30-Jun-00 |
| H2.23 | HVAC PLAN SEVENTH LEVEL WEST | 30-Jun-00 |
| H2.24 | HVAC PLAN SEVENTH LEVEL EAST | 30-Jun-00 |
| H2.25 | HVAC PLAN EIGHTH LEVEL WEST | 30-Jun-00 |
| H2.26 | HVAC PLAN EIGHTH LEVEL EAST | 30-Jun-00 |
| H2.27 | HVAC PLAN NINTH LEVEL WEST | 30-Jun-00 |
| H2.28 | HVAC PLAN NINTH LEVEL EAST | 30-Jun-00 |
| H2.29 | HVAC PLAN TENTH LEVEL WEST | 30-Jun-00 |
| H2.30 | HVAC PLAN TENTH LEVEL EAST | 30-Jun-00 |
| H2.31 | HVAC PLAN ELEVENTH LEVEL WEST | 30-Jun-00 |
| H2.32 | HVAC PLAN ELEVENTH LEVEL EAST | 30-Jun-00 |
| H2.33 | HVAC PLAN ROOF LEVEL WEST | 30-Jun-00 |
| H2.34 | HVAC PLAN ROOF LEVEL EAST | 30-Jun-00 |
| | | |
| **ELECTRICAL** | | |
| E1.01 | ELECTRICAL LEGEND, NOTES AND SCHEDULES | 30-Jun-00 |
| E2.01 | ELECTRICAL LIGHTING & POWER PLAN B4 LEVEL WEST | 30-Jun-00 |
| E2.02 | ELECTRICAL LIGHTING & POWER PLAN B4 LEVEL EAST | 30-Jun-00 |
| E2.03 | ELECTRICAL LIGHTING & POWER PLAN B3 LEVEL WEST | 30-Jun-00 |
| E2.04 | ELECTRICAL LIGHTING & POWER PLAN B3 LEVEL EAST | 30-Jun-00 |
| E2.05 | ELECTRICAL LIGHTING & POWER PLAN B2 LEVEL WEST | 30-Jun-00 |
| E2.06 | ELECTRICAL LIGHTING & POWER PLAN B2 LEVEL EAST | 30-Jun-00 |

11/17/2000

## 131 DARTMOUTH STREET
### DRAWING LOG-EXHIBIT B
#### Suffolk Construction Company, Inc

| DRAWING # | TITLE | Latest Revision Date |
|---|---|---|
| E2.07 | ELECTRICAL LIGHTING & POWER PLAN B1 LEVEL WEST | 30-Jun-00 |
| E2.08 | ELECTRICAL LIGHTING & POWER PLAN B1 LEVEL EAST | 30-Jun-00 |
| E2.09 | ELECTRICAL LIGHTING & POWER PLAN GROUND LEVEL WEST | 30-Jun-00 |
| E2.10 | ELECTRICAL LIGHTING & POWER PLAN GROUND LEVEL EAST | 30-Jun-00 |
| E2.11 | ELECTRICAL LIGHTING & POWER PLAN MEZZANINE LEVEL WEST | 30-Jun-00 |
| E2.12 | ELECTRICAL LIGHTING & POWER PLAN MEZZANINE LEVEL EAST | 30-Jun-00 |
| E2.13 | ELECTRICAL LIGHTING & POWER PLAN SECOND LEVEL WEST | 08-May-00 |
| E2.14 | ELECTRICAL LIGHTING & POWER PLAN SECOND LEVEL EAST | 08-May-00 |
| E2.15 | ELECTRICAL LIGHTING & POWER PLAN THIRD LEVEL WEST | 08-May-00 |
| E2.16 | ELECTRICAL LIGHTING & POWER PLAN THIRD LEVEL EAST | 08-May-00 |
| E2.17 | ELECTRICAL LIGHTING & POWER PLAN FOURTH LEVEL WEST | 08-May-00 |
| E2.18 | ELECTRICAL LIGHTING & POWER PLAN FOURTH LEVEL EAST | 08-May-00 |
| E2.19 | ELECTRICAL LIGHTING & POWER PLAN FIFTH LEVEL WEST | 08-May-00 |
| E2.20 | ELECTRICAL LIGHTING & POWER PLAN FIFTH LEVEL EAST | 08-May-00 |
| E2.21 | ELECTRICAL LIGHTING & POWER PLAN SIXTH LEVEL WEST | 08-May-00 |
| E2.22 | ELECTRICAL LIGHTING & POWER PLAN SIXTH LEVEL EAST | 08-May-00 |
| E2.23 | ELECTRICAL LIGHTING & POWER PLAN SEVENTH LEVEL WEST | 08-May-00 |
| E2.24 | ELECTRICAL LIGHTING & POWER PLAN SEVENTH LEVEL EAST | 08-May-00 |
| E2.25 | ELECTRICAL LIGHTING & POWER PLAN EIGHTH LEVEL WEST | 08-May-00 |
| E2.26 | ELECTRICAL LIGHTING & POWER PLAN EIGHTH LEVEL EAST | 08-May-00 |
| E2.27 | ELECTRICAL LIGHTING & POWER PLAN NINTH LEVEL WEST | 08-May-00 |
| E2.28 | ELECTRICAL LIGHTING & POWER PLAN NINTH LEVEL EAST | 08-May-00 |
| E2.29 | ELECTRICAL LIGHTING & POWER PLAN TENTH LEVEL WEST | 08-May-00 |
| E2.30 | ELECTRICAL LIGHTING & POWER PLAN TENTH LEVEL EAST | 08-May-00 |
| E2.31 | ELECTRICAL LIGHTING & POWER PLAN ELEVENTH LEVEL WEST | 08-May-00 |
| E2.32 | ELECTRICAL LIGHTING & POWER PLAN ELEVENTH LEVEL EAST | 08-May-00 |
| E2.33 | ELECTRICAL LIGHTING & POWER PLAN ROOF LEVEL WEST | 08-May-00 |
| E2.34 | ELECTRICAL LIGHTING & POWER PLAN ROOF LEVEL EAST | 30-Jun-00 |
| E3.01 | ELECTRICAL POWER RISER DIAGRAM | 08-May-00 |
| E3.02 | ELECTRICAL MISCELLANEOUS RISER AND DETAILS | 08-May-00 |
| E3.03 | ELECTRICAL SCHEDULES | 30-Jun-00 |

11/17/2000

**131 DARTMOUTH STREET**
**Boston, Massachusetts**
**Exhibit B-1 - List of Contract Specifications**

**131 DARTMOUTH STREET**
**Boston, Massachusetts**
**Exhibit B-1 - List of Contract Specifications**

**Table of Contents**

| Spec. Section | Description | No. of Pages | Dated |
|---|---|---|---|
| **DIVISION 1** | **GENERAL CONDITIONS** | | |
| 01015 | Special Requirements | 6 | 08-May-2000 |
| 01020 | Allowances | 2 | 08-May-2000 |
| 01030 | Alternates | 2 | 08-May-2000 |
| 01040 | Coordination | 5 | 08-May-2000 |
| 01045 | Cutting and Patching | 3 | 08-May-2000 |
| 01340 | Submittals | 6 | 08-May-2000 |
| 01350 | Progress Schedule | 2 | 08-May-2000 |
| 01375 | Building Mock-up | 2 | 08-May-2000 |
| 01400 | Quality Control | 4 | 08-May-2000 |
| 01500 | Temporary Facilities and Control | 10 | 08-May-2000 |
| 01605 | Material and Equipment | 4 | 08-May-2000 |
| 01630 | Substitutions and Product Options | 6 | 08-May-2000 |
| 01631 | Substitution Request Form | 3 | 08-May-2000 |
| 01700 | Contract Closeout | 6 | 08-May-2000 |
| | | | |
| **DIVISION 2** | **SITEWORK** | | |
| 02001 | Preconstruction Conditions Survey | 4 | 17-Apr-2000 |
| 02010 | Subsurface Data | 2 | 17-Apr-2000 |
| 02015 | Geotechnical Instrumentation | 7 | 17-Apr-2000 |
| 02060 | Demolition | 10 | 21-Jan-2000 |
| 02105 | Cold Planning | 3 | 08-May-2000 |
| 02140 | Construction Dewatering | 6 | 17-Apr-2000 |
| 02200 | Excavation and Backfilling | 21 | 17-Apr-2000 |
| 02210 | Health and Safety | 9 | 17-Apr-2000 |
| 02220 | Excavated Soil and Material Management Plan | 14 | 17-Apr-2000 |
| 02310 | Drilled-in Minipiles | 11 | 17-May-2000 |
| 02500 | Paving, Curbs, and Poured in Place Concrete | 5 | 08-May-2000 |
| 02600 | Paving and Surfacing | 4 | 08-May-2000 |
| 02720 | Site Drainage and Utilities | 10 | 08-May-2000 |
| 02800 | Street Lighting | 28 | 08-May-2000 |
| 02810 | Irrigation | 5 | 08-May-2000 |
| 02850 | Site Improvements | 5 | 28-Apr-2000 |
| 02950 | Trees, Shrubs, and Groundcovers | 11 | 28-Apr-2000 |
| 02400 | Concrete Diaphragm Wall Construction | 18 | 17-Apr-2000 |
| 02401 | Lateral Support of Excavation | 14 | 17-Apr-2000 |
| | | | |
| **DIVISION 3** | **CONCRETE** | | |
| 03001 | Concrete Work | 30 | 17-Apr-2000 |
| 03360 | Concrete Sealer/Hardener | 3 | 08-May-2000 |
| 03450 | Architectural Precast Concrete | 12 | 08-May-2000 |
| 03600 | Grout | 3 | 08-May-2000 |
| | | | |
| **DIVISION 4** | **MASONRY** | | |
| 04200 | Masonry | 25 | 08-May-2000 |
| 04400 | Stone Work | 8 | 08-May-2000 |
| 04500 | Masonry Cleaning and Restoration | 6 | 08-May-2000 |

**131 DARTMOUTH STREET**
**Boston, Massachusetts**
**Exhibit B-1 - List of Contract Specifications**

| DIVISION 5 | METALS | | |
|---|---|---|---|
| 05120 | Structural Steel | 18 | 08-May-2000 |
| 05300 | Metal Decking | 9 | 08-May-2000 |
| 05400 | Gypsum Sheathing System | 9 | 08-May-2000 |
| 05500 | Miscellaneous Metals | 16 | 08-May-2000 |
| 05700 | Ornamental Metal Fabrications | 6 | 08-May-2000 |
| 05800 | Expansion Control | 3 | 08-May-2000 |

| DIVISION 6 | WOOD AND PLASTIC | | |
|---|---|---|---|
| 06100 | Rough Carpentry | 7 | 08-May-2000 |
| 06220 | Finish Carpentry | 9 | 08-May-2000 |

| DIVISION 7 | THERMAL AND MOISTURE | | |
|---|---|---|---|
| 07112 | Modified Bitumen Waterproofing (Terrace) | 7 | 08-May-2000 |
| 07145 | Capillary Waterproofing | 4 | 08-May-2000 |
| 07200 | Building Insulation | 5 | 08-May-2000 |
| 07255 | Sprayed Fireproofing | 9 | 08-May-2000 |
| 07270 | Fire Stops and Smoke Seals | 6 | 08-May-2000 |
| 07412 | Copper Cladding and Trim | 6 | 08-May-2000 |
| 07415 | Preformed Metal Siding | 7 | 08-May-2000 |
| 07450 | Glass Reinforced Concrete Shapes | 3 | 08-May-2000 |
| 07455 | Glass Reinforced Gypsum Shapes | 4 | 08-May-2000 |
| 07530 | EPDM Membrane Roofing | 10 | 08-May-2000 |
| 07555 | Thermoplastic Membrane Roofing (EP) | 9 | 08-May-2000 |
| 07575 | Traffic Deck Coating | 7 | 08-May-2000 |
| 07610 | Sheet Metal Roofing | 5 | 08-May-2000 |
| 07650 | Flashing | 5 | 08-May-2000 |
| 07900 | Sealants | 8 | 08-May-2000 |

| DIVISION 8 | DOORS AND WINDOWS | | |
|---|---|---|---|
| 08100 | Steel Doors and Frames | 8 | 08-May-2000 |
| 08125 | Stainless Steel Doors | | 08-May-2000 |
| 08150 | Door Schedule | 11 | 08-May-2000 |
| 08305 | Access Doors and Hatches | 4 | 08-May-2000 |
| 08330 | Coiling Overhead Doors | 4 | 08-May-2000 |
| 08340 | Coiling Grilles | 4 | 08-May-2000 |
| 08360 | Sectional Overhead Doors | 4 | 08-May-2000 |
| 08410 | Aluminum Entrance Doors and Frames | 12 | 08-May-2000 |
| 08440 | Balanced Entrance Doors | 10 | 08-May-2000 |
| 08470 | Revolving Entrance Doors | 5 | 08-May-2000 |
| 08520 | Aluminum Windows | 8 | 08-May-2000 |
| 08710 | Finish Hardware | 18 | 08-May-2000 |
| 08800 | Glass and Glazing | 10 | 08-May-2000 |
| 08912 | Glazed Aluminum Curtain Wall | 8 | 08-May-2000 |
| 08913 | Glazed Stainless Steel Curtain Wall | 8 | 08-May-2000 |

| DIVISION 9 | FINISHES | | |
|---|---|---|---|
| 09250 | Gypsum Wallboard System | 12 | 08-May-2000 |
| 09300 | Tile Work | 10 | 08-May-2000 |
| 09410 | Bonded Terrazzo | 6 | 08-May-2000 |
| 09510 | Acoustical Ceilings | 8 | 08-May-2000 |
| 09650 | Resilient Flooring | 7 | 08-May-2000 |
| 09680 | Carpeting | 9 | 08-May-2000 |

**131 DARTMOUTH STREET**
Boston, Massachusetts
**Exhibit B-1 - List of Contract Specifications**

| | | | |
|---|---|---|---|
| 09900 | Painting | 17 | 08-May-2000 |
| 09999 | Finish Schedule | 9 | 08-May-2000 |

**131 DARTMOUTH STREET**
**Boston, Massachusetts**
**Exhibit B-1 - List of Contract Specifications**

| DIVISION 10- | SPECIALTIES | | |
|---|---|---|---|
| 10160 | Metal Toilet Compartments | 5 | 08-May-2000 |
| 10200 | Louvers and Vents | 5 | 08-May-2000 |
| 10520 | Fire Extinguishers and Cabinets | 3 | 08-May-2000 |
| 10810 | Toilet Accessories | 4 | 08-May-2000 |
| DIVISION 11 | EQUIPMENT | | |
| 11010 | Window Washing Equipment | 6 | 08-May-2000 |
| 11160 | Loading Dock Equipment | 4 | 08-May-2000 |
| DIVISION 12 | FURNISHINGS | (NOT USED) | |
| DIVISION 13 | SPECIAL CONSTRUCTION | (NOT USED) | |
| DIVISION 14 | CONVEYING SYSTEMS | | |
| 14220 | Traction Elevators | 12 | 08-May-2000 |
| 14290 | Elevator Maintenance | 9 | 08-May-2000 |
| DIVISION 15 | MECHANICAL | | |
| 15300 | Fire Protection | 29 | 08-May-2000 |
| 15400 | Plumbing | 45 | 08-May-2000 |
| 15500 | HVAC | 156 | 08-May-2000 |
| DIVISION 16 | ELECTRICAL | | |
| 16000 | Electrical Work | 98 | 08-May-2000 |
| Appendix | Lighting Fixture Schedule | 3 | 08-May-2000 |

**End of Table of Contents**

**131 DARTMOUTH STREET**
**BOSTON, MA**

**Qualifications & Assumptions – Exhibit C**
**Thru Addendum #2**

**November 28, 2000**

**Allowances**

| | Item | Amount | Location |
|---|---|---|---|
| 1. | Obstruction Pile Removal | $ 75,000 | 02400 |
| 2. | Site Improvements | $ 20,000 | 02850 |
| 3. | Winter Conditions | $534,500 | 01020 |
| 4. | Red Cross | $ 80,000 | 01020 |
| 5. | Precast Cornice Anchors | $ 95,000 | 03450 |
| 6. | Limestone Quoins | $   5,000 | 04400 |
| 7. | Lobby Security Desk | $ 50,000 | 06200 |
| 8. | Finish Carpentry | $158,000 | 06200 |
| 9. | Flashing at Corrugated Siding | $ 10,000 | 07610 |
| 10. | Composite Stone Panel | $ 42,400 | 04420 |
| 11. | Stained Glass | $ 10,000 | 08800 |
| 12. | Carpet (Elevator) | $   5,000 | 01020 |
| 13. | Signage – Code Only | $ 10,000 | 01020 |
| 14. | HVAC Duct Enclosures | $200,000 | 09250 |
| 15. | Specialty Lighting* | with electrical | 16000 |
| 16. | Lightning Protection* | $ 35,000 | 16000 |
| 17. | Beam Penetrations | $ 50,000 | 05100 |
| 18. | Deck Support Angles | $ 35,000 | 05100 |
| 19. | Miscellaneous Steel Details | credited in ADD#1 | 05100 |
| 20. | Drop In Frames | $ 15,000 | 05100 |
| 21. | Added Caisson Extraction | $240,000 | 02400 |
| 22. | Tipping Fees | $652,650 | 02400 |
| 22. | Abbutter Settlement Repairs | $258,000 | spread |

*These items are currently shown on the drawings and identified on the fixture schedule. The Specialty Lighting identified on the light fixture schedule only is carried in the GMP.

**General**

1. We have not included costs for colored sketches or RFI responses dated June 26, 2000.

2. We have carried one (1) on site small mock-up.

3. We have included four (4) "City of Boston" light poles and bases. The electrical drawings indicate two (2) street light poles and bases.

4. We exclude liquidated damages greater than $5,000 per day.

5.  We exclude a payment and performance bond for the general contractor. Payment and performance bonds are included for the following trades only:     Excavation/Slurrywall/Minipiles, Structural Steel & Metal Deck, Masonry, Roofing, Waterproofing.

## Slurry Wall/Earthwork/Temporary Earth Support/Mini Piles

1.  Release of retention for the slurry wall/earthwork/temporary earth support/mini pile subcontract is to be 60 days after completion of this work, not completion of the project.

2.  We include the slurry wall panels as amended in the Addendum drawings with no panels greater than 26' long.

3.  For this work the shop drawing turn-around time must be one (1) week. Therefore, within one (1) week of the award a detailed meeting will be set up with the engineers of the slurry wall to coordinate with the project design team.

4.  We have included a tipping fee allowance of $652,250 based on the unit costs for group II and group III materials as defined in Exhibit E. This is an allowance based upon the quantities provided of each material type in the specifications and shall be adjusted for the final quantities based upon the unit prices in Exhibit E for this work. Soils groups I and IV are included in the lump sum contract for Trevi Icos and the group II and III pricing is a premium over groups I and IV.

5.  We have carried an allowance of $75,000 for the removal of any piles within the footprint of the slurry wall, which take over one hour with the slurry wall rig to extract, per bucket width, and the remedial work which may be required to the slurry wall if an existing pile straddles the inside face and creates a bulge which needs to be chipped down.

6.  We have included the installation of the ten (10) groundwater observation wells and the installation of the inclinometer casing but exclude all instrumentation and monitoring.

7.  We have included the removal of ten (10) UST's based on the assumption that nine (9) are 1,000 gallons or less and one (1) is 3,000 gallons. We exclude removal of any hazardous contents of the tanks. Based on the soils report some or all of these tanks may have been removed.

8.  The proposal is based on raising the elevation of the slurry wall along Dartmouth Street to elevation 16.00 on average (it will step with the slope of the street). This will reduce the size of the cap wall and eliminate most of the soldier piles and lagging at this location.

9.  Based on the documents, we have included the removal of nine (9) caissons or sections of caissons prior to the mass excavation so that the slurry wall can be installed. If the location of the existing caisson is different than what is indicated on the contract documents, there will be additional costs associated with the early removal.

10. We have included and allowance of $240,000 for the removal of additional caissons discovered to be

in the path of the slurry wall in addition to the 9 each identified in the previous qualification.

11. No provisions have been included for a recharge system outside the excavation.

12. The MWRA permit required for temporary discharge is excluded.

13. Costs associated with worker protection above Level D is excluded. Haley & Aldrich does not feel this will be required based upon the findings of the pre-characterization report.

14. The slurry wall concrete will be 4,000 psi.

15. This proposal is based on installing tie backs below the property on Columbus Avenue, between the New England Life building and The Carriage House.

**Concrete**

1. We have included an allowance $95,000 for steel anchorage of the precast cornice. This would include the design and installation of this system.

2. Typical precast anchorage is based upon the use of DW-10X anchors 16" o.c. at horizontal joints.

3. We have not included DCI admixture. The structural slab at the garage includes epoxy coated reinforcing as indicated.

4. We have included rebar to be bent after epoxy coating. Recoating of the epoxy at the bent joints is not included.

5. We have not included a cap wall along the back side of the ally way.

**Structural Steel/Misc Metal**

1. We have included water jet-cut aluminum grilles in lieu of laser cut, as aluminum cannot be laser cut. This detail shall be fabricated from flat bar stock assemblies at the discretion of the Contractor based upon the accepted value engineering of this item.

2. We have included the stainless steel hand rail, small balustrade and posts as a mirror finish, all other members are a satin finish.

3. We have included galvanized gratings for all areaways.

4. We have included post-tensioned parking cables as galvanized.

5. Release of retention for the Structural Steel Subcontract is to be 90 days after completion of this work, not completion of the project.

6. We have carried the following allowances within the overall budget for this work:
   a.  Beam penetrations not shown in plan structural drawings                          $50,000
   b.  Deck support angles not shown in plan on the structural drawings              $35,000
   c.  Details noted as XX/XX on S6.04 and S6.05                                              per ADD #1
   d.  Drop in frames not shown in plan or structural drawings                          $15,000

7. The steel subcontractor shall detail the connections for approval by the structural engineer. Stamped drawings will not be provided.

8. The steel subcontractor reserves the option to bolt or weld shop connections and utilize short slots for field bolted connections.

9. The following items are excluded as they were not found in the contract documents other than a general note in the specifications or on a contract drawing:
   a.  Architecturally Exposed Steel (Specification Section 05120 1.04.F.4 and 2.02.D.1&2)
   b.  Coal Tar Epoxy (Specification Section 05120, Item 2.01.N)

10. Specification Section 05120 2.02.K is excluded. Camber is a function of the design.

11. The decking includes galvanized G30 deck in lieu of the phosphatized painted deck.

12. This proposal is based on payment for raw material and fabricated material stored at Cives New York fabrication plant.

13. The steel Subcontractor shall be allowed to use single plate shear connections at their discretion based upon the accepted value engineering proposal.

14. The miscellaneous metal Subcontractor is permitted to eliminate the SSPC SP6 shop blasting of interior metals except for the garage stairs. SP3 would be used as the alternate method.

15. The full height fence at the ramp may be modified at the discretion of the Contractor to a lower height of 4'0" if savings can be achieved.

16. The details included in Addendum #1 to achieve the slope in the decking are excluded. The beams will be rotated in lieu of the design detailing.

## Masonry

1. The exterior paving at Dartmouth Street will be 1-1/4" +/- 1/16". Paving thickness at secondary entrances along Dartmouth Street will be 2" +/- 1/16" in lieu of 2-1/4".

2. The exterior planter base will be 3" +/- 1/4" in lieu of 3" + 5/8".

3.  The exterior stair treads will be 2" +/- 1/16" with one (1) 15/16" gauged head with no hook.  There is no epoxy apron on 1" head as per detail 4/A5.12.

4.  The exterior curb will be 6-3/8" +/- 1/4" thick with 6"gauged heads, 6'-0" maximum length.

5.  Stone pieces with sculpted face finish will have thermal finished heads and diamond ground rustication (7' maximum piece length).

6.  The interior facing thickness will be 2" +/- 1/16".

7.  Interior flooring thickness will be 1-1/4" +/- 1/16".

8.  The lavatory tops, splashes and aprons will be 1-1/4" thick, 4' maximum piece length for splashes and aprons, 1/8" minimum joint width at interior columns.

**Finish Carpentry**
1.  We have included an allowance of $50,000 for the lobby security desk.

2.  Counter tops have been indicated to be plastic laminate or granite.  Any solid surface counter tops have not been included.

3.  Closet shelving and hanging rods are not indicated on drawings and therefore are not included.

4.  We have included wood paneling as fire retardant particle board with plain sawn cherry veneer.

5.  We have included an upper lobby #M006, #M009 4'-0" wainscot panel to surround entire perimeter included wall at 2.3 line and 3 line.  The wood panel has not been included where GFRC occurs.

6.  We have included a plastic laminate counter top with support bracket at fire control room #G012.

7.  We have included plastic laminate granite counter top supports with moisture resistant MDF core at bathrooms on Floors 2 through 11.

8.  135 lf of hardwood hand rails have been included as indicated on drawing SKA-8 dated 6/26/00.

9.  We have included full height wood paneling at lower lobby as shown in elevation 1, 3, 4, 5/A803 on Addendum #1 drawing A803 dated 6/30/00.

10. We have excluded our assumption of 4'-0" wainscot wood panel at Corridor Ramp #G011(not indicated).

11. We have included a plastic laminate counter only in Mail Room G014 as indicated in RFI 010.

12. We have not included standing and running trim, no location has been indicated in Addendum #1 drawings.

13. We have not included wood windowsills, this item is indicated to be not in contract 5/A518.

14. All millwork is included as part of the $158,000 allowance except for the plastic laminate work and door installation..

## Composite Stone Panel

1. We have included only 90 sf of composite stone panel as shown in elevations 6, 7, 8/A803 of Addendum #1.

## Spray Fireproofing

1. The spray fireproofing material is included as manufactured by Isolatek: CAF 300 & 400.

## Doors/Frames/Hardware

1. The louvers within hollow metal doors and transom panels are not indicated on drawings or door schedule and, therefore, are not included.

2. The door hardware closer covers at mechanical rooms have been included as sprayed covers in lieu of plated covers as scheduled.

3. The pair of STC-50 sound rated doors at the mechanical rooms have been deleted and replaced with standard 4'0" x 7'0" hollow metal doors with no special sound rating.

## Copper Cladding & Trim

1. All cladding to be shop fabricated, flat seams and caulked (no soldered seams).

## Flashing

1. We have included an allowance of $10,000 for trim at the top of corrugated siding.

2. The LCC has been changed from 24 oz to 16 oz. at the canopy cladding and cornices

3. At areas not visable from the street, the 16 oz. LCC thru wall flashing shall be reduced to 5 oz.

## Roofing

1. The walkway pads are carried at roof ladder, as indicated.

2. The flashing for window washing equipment is per the quantities under roofing notes per Drawing A2.25.

3. All cornices to receive adhered EP or EPDM in lieu of mechanical attached.

4.  The insulation based upon average R-value of 25 except at cornice overhangs (minimum carried sloped 1/4").

**Sealants/Waterproofing**

1.  We have not included thoro-seal damp proofing at exhaust shaft. We are providing this cost as an add alternate.

2.  We have excluded precompressed sealant tapes.

3.  We have excluded horizontal traffic joints.

4.  The permabarrier membrane which is specified to be installed at all exterior wall over the gypsum sheathing is excluded. A 15# felt will be installed in in place with the permabarrier installed only at the permeter of each window/door opening.

**Glass & Glazing**

1.  We have not included "Fire-Lite" glass. We have carried wire glass.

2.  The laminated or spandrel glass noted in the specifications were not found on drawings.

3.  The stainless steel is provided with a #4 finish.

4.  The main entrance is provided segmented, not radiused.

5.  We have excluded panic hardware at the stainless steel exterior doors at the main entrance.

6.  The estimate is based on Kawneer or equal (profiles will be matched).

7.  The detail 13/A6.11 will require clarification (attachment of perma-barrier to frame).

8.  The stainless steel curtain wall is mechanical fastened, not welded.

9.  The balanced doors have been deleted and standard stainless steel swing doors have been included in their place. One of the entry doors will have a power assist feature for ADA compliance.

**Ceramic Tile**

1.  We have included floor tile as group #2, thin set with epoxy grout as requested (see Addendum #1 adds).

2.  We have included wall tile as group #1, with epoxy grout as requested (see Addendum #1 adds)..

3.  We have included ceramic wall tile as 4 ¼" x 4 ¼".

## Painting and Wallcovering

1. We have not included any wall covering.

2. The painting of the parking garage exterior slurry walls has not been included.

3. The painting of columns within the garage has not been included.

4. The painting of the garage ceiling has not been included.

5. We have not included the painting of metal screen dividers at parking garage.

6. Wall covering is not indicated on drawings or finish schedule and has not been included.

7. The painting of the second level trellis has not been included. This item is indicated to be by owner.

8. A multi-spec paint is included in lieu of the Polymix 6000 specified.

## Bird Control

1. We have included bird control as Springuard as shown on drawings in lieu of specified stainless steel needle strips.

## Loading Dock Equipment

1. The loading dock equipment Specification Section 11160, 2.03 requests the inclusion of wheel guards. This item has been included as wheel chocks.

## Window Washing Equipment

1. The window washing system as designed is deleted. Eye hooks have been included on top of the vertical steel support of the roof rail system in the previous design.

## Parking Control

1. Interface of swing gate and parking control equipment has not been included.

2. Columbus street lane reversing is included as manual operation.

3. Communication run wiring has been included as copper.

4. We have included parking control lighting as incandescent.

5. AlternateA: Automatic vehicle identification add  $23,749, Alternate A has not been included in our base bid.

6. Alternate B: Revenue control system add $62,730, Alternate B has not been included in our base bid.

## Elevators

1. Fujitec cannot comply with Specification Section 14220 2.03 B, Items 5, 6, 7 & 9. These key switch functions will be provided through the Elevator Management System provided in Fujitec's proposal.

2. We have included an allowance of $500/each per light fixture in the elevator cabs.

3. The wood panels in the elevator cabs shall be veneer in lieu of solid wood as specified. The solid wood paneling cannot meet the fire ratings and will warp.

4. The garage elevators are included with overhead machine room equipment as shown on the drawings in lieu of the basement machine rooms specified.

5. Minor adjustments to the steel dimensions may be required for the standard Fujitec escalator equipment.

6. We have included the custom stainless openings only at the 4 each garage entrances and 6 each tower elevators that are located in the main lobby. The balance of the openings are included as factory primed field painted manufacturers standard option.

7. The remote bell specified in 14220 2.04C (Page 8) is excluded. The bells are included in the hoistway.

8. We have included the ceiling of S-6 as wood core solid plastic laminate in lieu of gypsum drywall.

## Fire Protection
1. We have not included the stamped calculations to obtain the building permit.

2. We have not included Boston Fire Department fire watches for any activity associated with this work.

3. The requirement for galvanized fittings at the dry system is excluded.

## Plumbing
1. We have not included any gas piping.

## HVAC
1. We have not included Boston Fire Department fire watch for any activity associated with this work.

2. We have not included Glycol, not indicated.

## Electrical
1. We have not included transformers for neon Signage by others.

2. We have not included cable tray, listed in specification but not on drawings.

**131 Dartmouth Street**
**Qualifications & Assumptions – Exhibit C**

11/28/2000
Page 10

3. We have not included doorbell, intercom and security systems.

4. We have not included lighting fixture allowance per specification and planter fixture allowance per plans. We have included a $10,000 deductive value engineering item to significantly reduce the fixtures at the 2nd floor terrace on the south side of the project.

5. The type "T" fixture and wiring is excluded. We suggest using our temporary electric fixture to provide this lighting in the future tenant space.

6. The elevator lobby lighting on floors 2-11 is excluded.

Exhibit D

**SUFFOLK CONSTRUCTION COMPANY, INC.**
**65 ALLERTON STREET**
**BOSTON, MASSACHUSETTS  02119**

131 Dartmouth St
Boston, MA
11/14/00

## ASSIGNMENT OF COST CATEGORIES

| Description | Fee (O.H. & Profit) | GC/Pre Construction | Subcontract | Owner Supplied | Consultant |
|---|---|---|---|---|---|
| Profit | X | | | | |
| Officer's Salaries and Benefits | X | | | | |
| Home Office Rent & Utilities | X | | | | |
| Home Office Automobiles & Travel | X | | | | |
| Home Office Overhead | X | | | | |
| Interest on Borrowed Capital | X | | | | |
| Project Accounting (From Home Office) | X | | | | |
| Purchasing (Main Office) | X | | | | |
| Computer Time(main office) | X | | | | |
| Preparation of Phased Estimates | | X | | | |
| Subcontractor Solicitations & Negotiations | | X | | | |
| Preparation of Monthly Requisitions | | X | | | |
| Conducting of Job Progress Meetings | | X | | | |
| Preparation & Updating of Project Schedule | | X | | | |
| Drawings and Specifications | | X | | | |
| Project Executive Salary and Benefits | | X | | | |
| Project Manager(s) Salary and Benefits | | X | | | |
| Record Drawings | | X | | | |
| Base Line & Control Engineering | | X | | | |
| Building Layout & Engineering | | X | | | |
| General Superintendent | | X | X | | |
| Project Superintendent (s) | | X | | | |
| Site Office & Sheds | | X | | | |
| Field Office Supplies & Equipment | | X | | | |
| Sanitary Facilities | | X | | | |
| Progress Photographs (not professional) | | X | X | | |
| Telephone, Telegraph, Messenger | | X | | | |
| Travel Expenses | | X | | | |
| Guardrails & Protection at Interior | | | | | |
| Temporary Protection | | | X | | |
| Clean Building | | X | X | | |
| Street Sweeping/Dust Control | | X | X | | |
| Final Cleaning/Clean Glass | | | X | | |
| Police Details | | | X | | |
| Direct Labor | | X | X | | |
| Construction Fence | | | X | | |
| Rubish Removal (Dumpsters - non demo) | | | X | | |
| Temp. Heat Equipment | | X | | | |
| Winter Conditions & Temporary Heat | | | X | | |
| Purchased Items | | X | X | | |
| Subcontracts | | | X | | |
| Taxes, Insurance and Benefits (SCCI Staff) | | | X | | |
| Equipment Rentals | | X | | | |
| Tools & Consumables | | X | X | | |
| Enclosures | | X | X | | |
| Bonding Costs | | | X | | |
| Staging & Hoisting | | X | X | | |
| Punch List | | | X | | |
| Contractor's Liability & Insur. | | X | X | | |
| Temporary Water (consumption) | | X | | | |
| Electric Power (consumption) | | X | | | |
| Watchman & Security | | X | | | |
| Initial Site Survey | | | | X | |
| Testing & Inspection | | | | X | |
| Permit & Fees | | | | X | |
| Fire Insur/Bldr's Risk | | | | X | |

**EXHIBIT E**
**"UNIT PRICES"**
**November 14, 2000**
**Page 1 of 4**

## TREVI ICOS:

| Description of Labor Provided | Total Cost per Hour |
|---|---|
| Labor Foreman | $ 47.00 /hour |
| Laborer | $ 45.00 /hour |

UNIT PRICES:
The following unit prices shall be used for all addition/ deletion of work:

| | |
|---|---|
| Slurry Wall | $ 62.00 /sqft |
| Minipiles | $ 4,300.00 /lnft |
| Guidewalls | $ 123.00 /lnft |
| Disposal (Tipping Fee Premiun - base contract per specifications) | |
|     Group II-1 - Unlined In-State Landfill | $ 7.00 /ton |
|     Group II-2 - Lined In-State Landfill | $ 18.00 /ton |
|     Group II-3 - In-State Recycling or Regional Thermal Treatment | $ 20.50 /ton |
|     Group II-4 - Out of State Recycling or Treat | $ 46.50 /ton |
|     Group II-5 - RCRA Non Hazardous Material | $ 91.00 /ton |
| | |
|     Group III-1 - Disposal as Hazardous Waste | $ 324.00 /ton |
|     Group III-2 - Hazardous Waste - On Site Treatment | $ 51.00/ton |

Prices do not include Contractor Markup of any kind including insurance, general conditions or overhead & fee.

# EXHIBIT E - UNIT PRICES
## November 14, 2000
## Page 2 of 4

**CIVES STEEL:**

### FABRICATION
### ($/TON)

| Beams | | | | Columns | | | |
|---|---|---|---|---|---|---|---|
| 0-20 | lbs/ft | 2841 | | | 0-20 | lbs/ft | 4249 |
| 21-60 | lbs/ft | 1382 | | | 21-60 | lbs/ft | 1803 |
| 61-80 | lbs/ft | 1122 | | | 61-80 | lbs/ft | 2100 |
| 81-100 | lbs/ft | 1001 | | | 81-100 | lbs/ft | 1165 |
| 101-200 | lbs/ft | 921 | | | 101-200 | lbs/ft | 1090 |
| 201-300 | lbs/ft | 911 | | | 201-300 | lbs/ft | 950 |
| 301-400 | lbs/ft | 898 | | | 301-400 | lbs/ft | 1028 |
| 401-500 | lbs/ft | 1254 | | | 401-500 | lbs/ft | 1293 |
| 501-600 | lbs/ft | 1193 | | | 501-600 | lbs/ft | 1281 |
| | | | | | > 600 | lbs/ft | 1110 |

| Bracing | | |
|---|---|---|
| Single Angle | | 2964 |
| Double Angle | | 5300 |
| Tube | | 3364 |
| Wide Flange | | 1680 |

Misc. Loose Mat'l     3847

*PRICES ARE FOR ADDED MEMBERS ONLY. (DEDUCTS WILL BE 85%)*

### ERECTION
### ($/PIECE)

| Beams | | | | Columns | | | |
|---|---|---|---|---|---|---|---|
| 0-20 | lbs/ft | 265 | | | 0-20 | lbs/ft | 525 |
| 21-60 | lbs/ft | 265 | | | 21-60 | lbs/ft | 525 |
| 61-80 | lbs/ft | 265 | | | 61-80 | lbs/ft | 525 |
| 81-100 | lbs/ft | 315 | | | 81-100 | lbs/ft | 580 |
| 101-200 | lbs/ft | 370 | | | 101-200 | lbs/ft | 630 |
| 201-300 | lbs/ft | 420 | | | 201-300 | lbs/ft | 685 |
| 301-400 | lbs/ft | 525 | | | 301-400 | lbs/ft | 790 |
| 401-500 | lbs/ft | TBD | | | 401-500 | lbs/ft | TBD |
| 501-600 | lbs/ft | TBD | | | 501-600 | lbs/ft | TBD |
| | | | | | > 600 | lbs/ft | TBD |

Notes:
Prices do not include bolting, welding, additional field work, etc.
Column prices include plumbing.
Prices based on beams maximum of 30'-0 long.
Pieces over 400 lbs/ft or 30'-0 long to be evaluated on a case by case basis.
*PRICES ARE FOR ADDED MEMBERS ONLY.*

Prices do not include Contractor Markup of any kind including insurance, general conditions or overhead & fee.

## EXHIBIT E - UNIT PRICES
### November 14, 2000
### Page 3 of 4

## CIVES STEEL CONTINUED...

Misc. Loose Material                                          $ 3,847

1.  Metal deck (furnish & install) 2" x 18'
    GA vented form deck (galvanized).        add/deduct    $ 2.35 / 1.80      /sqft

2.  Furnish & install pour stops/ edge closure.
    10 gage                                  add/deduct    $ 19.70 / 14.50    /lf
    1/4" Bent Plate                          add/deduct    $ 28.00 / 23.80    /lf
    (Shop Welded)

3.  Metal deck (furnish & install)          add/deduct    $ 2.35 / 1.80      /sqft

4.  Shear suds - furnish & install          add/deduct    $ 1.95 / 1.40      /each

5.  Additional roof Penetrations
    up to 6'-6" X 6'-6"                      add/deduct    $ 700 / 595        /each

6.  Additional roof Penetrations
    up to 12'-0" x 12'-0"                    add/deduct    $ 850 / 725        /each
    (W8 x 10's)

7.  Tower Crane Rental (including operator,
    maintenance, Fuel, etc.)         add                  $ 2,950.00         /hour

j.  Shop Fabrication Work                    add/deduct    $ 56.00            /hr

k.  Bolts                                    Add           $ 12.00            /each

## UNIT PRICING - LABOR

| Description of Labor Provided | Total Cost Per Hour | |
| --- | --- | --- |
|  | Regular time | DoubleTime |
| Foreman: Ironworker | $ 91.14 /hr | $ 131.94 /hr |
| Journeyman: Ironworker | $ 91.14 /hr | $ 131.94 /hr |
| Crane Operator | $ 190.00 /hr | $ 285.00 /hr |

Prices do not include Contractor Markup of any kind including insurance, general conditions or overhead & fee.

005

## EXHIBIT E - UNIT PRICES
### November 14, 2000
### Page 4 of 4

### CIVES STEEL CONTINUED...

Engineering and detailing        :

|  | Detailer | $    50.00    /hr | $    75.00    /hr |
|---|---|---|---|
|  | P.E. Stamp | $   1.25 shop   /hr | $    N/A    /hr |
| Shop fabrication work |  | $   56.00    /hr |  |

Prices do not include Contractor Markup of any kind including insurance, general conditions or overhead & fee.

**ORD™   CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YY)
8/30/00

PRODUCER

Aon Risk Services, Inc. of MA
99 High Street
Boston, MA 02110-3271

617-482-3100

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

| COMPANY A | St Paul Fire & Marine Ins Co |
|---|---|
| COMPANY B | Zurich American Ins. Co. (Usb |
| COMPANY C | |
| COMPANY D | |

INSURED

Suffolk Construction Co., Inc.
65 Allerton Street
Boston, MA 02119

**COVERAGES**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS MADE X OCCUR ☐ OWNER'S & CONTRACTOR'S PROT | KK02900111 | 8/31/00 | 8/31/01 | GENERAL AGGREGATE | $ 2000000 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 2000000 |
| | | | | | PERSONAL & ADV INJURY | $ 1000000 |
| | | | | | EACH OCCURRENCE | $ 1000000 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 100000 |
| | | | | | MED EXP (Any one person) | $ 5000 |
| A | **AUTOMOBILE LIABILITY** X ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS | MA02900003 | 8/31/00 | 8/31/01 | COMBINED SINGLE LIMIT | $ 1000000 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE | $ |
| | **GARAGE LIABILITY** ☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY: | |
| | | | | | EACH ACCIDENT | $ |
| | | | | | AGGREGATE | $ |
| B | **EXCESS LIABILITY** X UMBRELLA FORM ☐ OTHER THAN UMBRELLA FORM | AUC 2918401-00 | 8/31/00 | 8/31/01 | EACH OCCURRENCE | $ 5000000 |
| | | | | | AGGREGATE | $ 5000000 |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** THE PROPRIETOR/ PARTNERS/EXECUTIVE OFFICERS ARE: ☐ INCL ☐ EXCL | WVK2900420 | 8/31/00 | 8/31/01 | X WC STATU-TORY LIMITS ☐ OTHER | |
| | | | | | EL EACH ACCIDENT | $ 500000 |
| | | | | | EL DISEASE - POLICY LIMIT | $ 500000 |
| | | | | | EL DISEASE - EA EMPLOYEE | $ 500000 |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

The MBTA is an add'l ins'd on GL, Auto & Umb as it relates to the license for entry upon transit prop of the MBTA at the Back Bay Station for off-site work performed by Suffolk at the 131 Dartmouth St. project.          1010200034

**CERTIFICATE HOLDER**

MBTA
c/o Transit Realty Associates
20 Winthrop Square
Boston, MA 02110

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE
By                                        000763000

ACORD 25-S (1/95)          © ACORD CORPORATION 19