

ARCHITECTURE
ENGINEERING
CONSTRUCTION TECHNOLOGIES
COMPUTER & SCIENTIFIC ANALYSIS
MATERIALS & SYSTEMS TESTING

February 13, 2006

Toomey & Yudysky, LLP
99 Summer Street
Boston, MA  02110
Attn: John F. Toomey


RE:   Fireman's Fund Insurance Company, as Subrogee of 301 Columbus Avenue LLC
      Vs. Suffolk Construction Company, Inc. and 131 Dartmouth St. LLC, United States
      District Court, Case Number 04-10872EFH, Claim Number KG02900640, Project 131
      Dartmouth Street, your File Number 705, CCA File Number 601626


Dear Attorney Toomey,

CCA was requested, by your firm, to conduct an investigation of the above-captioned file and provide a report commenting upon the claims made in Plaintiff's expert report.  Plaintiff's expert report is a report by C. A. Pretzer Associates, Inc. and GZA GeoEnvironmental, Incorporated, dated August 19, 2002 signed by David Grandpre, P.E.


**Abstract**

Plaintiff contends that the properties at 301 through 319 (odd numbers) Columbus Avenue, Boston, Massachusetts were damaged due to construction activities at 131 Dartmouth Street, Boston.  Suffolk Construction was the general contractor and 131 Dartmouth St. LLC was the developer for the 131 Dartmouth Street project.  The construction activities in question appear to be the general excavation for the project and the removal of a belled drilled pier (caisson) in the vicinity of 317-319 Columbus Avenue.  There are ten items addressed in Plaintiff's report in three categories.  The three categories are: two items that Mr. Grandpre opines are not related to the construction activity, five items that Mr. Grandpre opines may be related to the construction activity, and three items that Mr. Grandpre opines are related to the construction activity.

19 CROSBY DRIVE
SUITE 220
BEDFORD, MA 01730
TEL: 781-280-0660
FAX: 781-280-0111
WWW.CCACO.COM



**Investigation**

CCA's investigation consisted of visiting and photographing the site and surrounding areas as well as reviewing documents related to the project and claims. CCA also has previous experience related to this project. In addition to Plaintiff's report the following documents were reviewed:

1. Four preconstruction VHS videos apparently taken around March, 2000;
2. One VHS video taken during construction on August 23, 2001;
3. The amended complaint dated November 4, 2004;
4. CCA LLC report dated November 7, 2001;
5. Arthur Choo Associates, Inc. report dated September 19, 2001;
6. J.S. Held, Incorporated estimate dated September 10, 2002;
7. Zaldastani Associates, Inc. report dated January 31, 2003;
8. All-Rite Construction estimate dated April 10, 2003;
9. W.K. McNamara Corporation estimate dated May 1, 2003;
10. Denzine Specialties, LLC estimate dated May 1, 2003;
11. J.S. Held, Incorporated estimate dated June 3, 2003;
12. Fireman's Fund Insurance Company Statement of Loss dated June 12, 2003; and
13. J.S. Held, Incorporated letter report dated March 12, 2004.

**Site Inspection**

Kenneth Quigley, MS, PE, of CCA, visited the site on February 8, 2005. The exterior of the buildings, and the site, were observed, and photographed from Columbus Avenue and the alley between the subject buildings and 131 Dartmouth Street. Mark McGivern, of CCA, also visited the site on numerous occasions during the 131 project construction, and subsequent to the alleged damages.

It is important to note that, as of February 8, 2006, no repairs of the alleged damages to the exterior had been undertaken at the subject property. We were unable to inspect the interior of the buildings in question to determine if interior repairs had been made.

**CCA Opinions**

The following are CCA's opinions with respect to the aforementioned ten items and three categories in Plaintiff's report.

There are two items in category three in Plaintiff's report. In category three are numerous items that Plaintiff's expert opines are not caused by construction activities at 131 Dartmouth Street. One item is "Item 8, Brick wall at rear of building 301/303 Columbus Avenue." This item refers

*Boston • San Francisco • Los Angeles • Austin • Denver*



to a claim made in the Arthur Choo report that states that this wall is out of plumb (although it does not mention the degree of "out of plumb" or any measurements taken) and needs to be rebuilt. CCA concurs with Plaintiff's expert that there is no problem with this wall that would require it to be rebuilt. CCA visually inspected this wall on February 8, 2005 and saw no reason for concern. The other item is "Item 10, Stepped-out brick veneer gaps." CCA's reviewed the pre-construction videos and performed a site inspection on February 8, 2005. CCA observes that the gap in this brickwork appears the same in the pre-construction video as during the site visit. CCA concurs with Plaintiff's expert that this item is not related to construction activities at 131 Dartmouth Street.

There are five items in category two in Plaintiff's report. In this category there are two items that Plaintiff's expert opines may be caused by construction activities at 131 Dartmouth Street. The first item is "Item 3, Basement floor of 301/303 Columbus Avenue". Plaintiff's expert notes that this slab has cracked and in one instance there is 3/8 inch vertical displacement across a crack. The pre-construction videos clearly show cracks in this slab prior to construction. This video is silent about vertical displacement across cracks. Also, this video does not show the entire basement floor slab at the time due to the use of this basement for storage. Plaintiff's expert also mentions a void between the slab and the soil beneath it. Plaintiff's expert does not state which construction activity he feels caused this condition. It is well known in the Boston engineering community that soils in the South End have been subsiding due to lowering of the ground water table. One report that researches this phenomena is, "Report on Groundwater Observation Wells", Submitted to City of Boston -- Inspectional Services Department/Groundwater Trust, Submitted by Stone & Webster Civil & Transportation Services, Inc., April 1990. Plaintiff also makes no correlation between the construction activities and the slab cracks or soil subsidence. CCA observed evidence of subsidence in the sidewalks along Columbus Avenue. Due to the condition of the basement slab prior to construction of 131 Dartmouth Street and the likelihood that soil had subsided below the slab prior to this construction, it is CCA's opinion that this slab was likely undermined and damaged prior to construction of 131 Dartmouth Street.

The next item in category two in Plaintiff's report is "Item 4, Basement floor of 311, 313 and 315 Columbus Avenue". Plaintiff's expert states that he observed significant slab settlement and cracks in this building's slab. Plaintiff's expert does not state what construction activity or mechanism by which this construction activity would cause these cracks. CCA observed that the pre-construction video shows extensive cracking of this floor slab. Plaintiff makes no correlation between the construction activities and the slab cracks. Plaintiff does not rule out other potential causes of cracks in this basement slab such as, subsidence due to lowering ground water table, vibration from traffic due to nearby highways and railroads. In CCA's opinion, the slab had pre-existing damage, as evidenced by the pre-construction video.

The next item in category two in Plaintiff's report is "Item5, Brick and mortar joint cracks at rear of 301/303 Columbus Avenue." Plaintiff contends that he observed new hairline cracks in the rear wall of 301/303 Columbus Avenue. Plaintiff does not state which construction activity that



he feels caused these cracks. Plaintiff also notes that there are many cracks in this wall in the pre-construction video. CCA observed that the crack shown in Plaintiff's Photograph 17 is at the edge of a previous masonry repair. It is likely that the force that caused the masonry problems necessitating the repair caused this crack. It is CCA's opinion that this wall was cracked prior to construction of 131 Dartmouth Street and will continue to crack throughout its life. CCA sees no convincing evidence that construction at 131 Dartmouth Street damaged this wall.

The next item in category two in Plaintiff's report is "Item 6, Third floor crack 301/303 Columbus Avenue." Plaintiff shows two photographs related to this item. One photograph shows a crack at the exterior brick wall at the rear corner near the connection of the fire escape to the rear wall. This crack is at an area where the brickwork had previously been repaired. The mortar joints in the brick at this location are wider than in the adjacent brickwork, indicating that there was significant movement of the brick at this location prior to the repair. CCA notes that the connection of the fire escape can cause problems in this location. These problems would be due to gravity (weight of fire escape) forces on this wall as well as corrosion of the metal fire escape connections and water intrusion due to penetration of the brick by the fire escape connections. The other photograph is presumably an interior picture of the same location. CCA cannot discern a crack in this photograph however CCA assumes that any interior crack at this location would be a translation of the exterior brick crack through the interior finishes. It is CCA's opinion that this crack is most likely caused by the same phenomena that caused the wall to crack prior to the brick repair. CCA believes that Plaintiff presents no convincing evidence that construction activities at 131 Dartmouth Street caused or contributed to this crack.

The last item in category two in Plaintiff's report is "Item 7, Precast concrete façade, 301/303 Columbus Avenue." One precast block fell from the façade of this building during construction of 131 Dartmouth. Plaintiff contends that damage to this block and two adjacent blocks may have been caused by construction at 131 Dartmouth Street. Plaintiff contends that the defendants should be responsible for resetting these three pieces. Plaintiff's report gives no rational for how the construction at 131 Dartmouth Street affected these three pieces other than to mention that the excavation at 131 Dartmouth Street was extensive. This façade was in severe disrepair prior to construction of 131 Dartmouth Street. This façade, as of this date, continues to be in severe disrepair and in CCA's opinion is a dangerous condition. CCA's observations from 2001 through February 8, 2006 indicate that the condition of this wall is due to weathering, water intrusion and lack of maintenance. It is CCA's opinion that the condition of this façade is not due to construction of 131 Dartmouth Street. CCA also believes that it is irresponsible of the building's owner to allow the condition of this façade to exist without protecting the public sidewalk below it from falling debris.

There are three items in category one in Plaintiff's report. Category one lists items that, in Mr. Granpre's expert opinion were caused by construction activities at 131 Dartmouth Street. One item is "Item 1, Retaining Wall". Plaintiff's report mentions that this wall is leaning approximately eight inches out beyond the rear brick wall of 301/303 Columbus Avenue. Plaintiff's report does not explain which construction activities at 131 Dartmouth Street caused



damage to this retaining wall. Nor does this report comment on the condition of the wall prior to the commencement of construction. This report also does not explain, in engineering terms, how these construction activities damaged the retaining wall. It is CCA's opinion that Plaintiff presents no convincing evidence that construction of 131 Dartmouth caused damage to this retaining wall. The preconstruction videos show that this retaining wall was leaning a significant amount beyond the rear wall of 301-303 Columbus Avenue prior to the commencement of construction at 131 Dartmouth Street. This video also shows a severe spall that had been repaired, at the top of the retaining wall, and at its intersection with the rear wall of 301/303 Columbus Avenue. The preconstruction video also shows a significant crack across the paving, parallel to the retaining wall about 25 feet from the retaining wall. This crack could be an indication of failure of the soil along the slip plane associated with the retaining wall. This crack and the significant leaning of the wall indicate that the wall was failing at the time the preconstruction video was recorded. Considering these facts it is CCA's opinion that this retaining was failing prior to construction of 131 Dartmouth Street.

Plaintiff's report states that there are two sketches of a new retaining wall attached to the report. CCA only received one sketch in the report. This sketch is marked sheet no. 1 of 2. Plaintiff's report states that sketch one shows the new retaining wall to be used for the highest section of wall. Plaintiff's report also estimates that the retaining wall will require 34 piles at a cost of $42,000. CCA finds no such piles called for on the attached sketch. If piles are required they would have been required at the higher section of wall. CCA also questions the method of repair proposed by the Plaintiff since they did not establish whether piles currently exist under the wall. Alternative methods of repair including engineered fill to create a gravity wall were not considered. This method would result in a reduced cost, as opposed to installation of the piles

The next item in category one in Plaintiff's report is "Item 2, Foundation and masonry wall at the rear of 317 and 319 (317/319) Columbus Avenue." Plaintiff's report states that this wall and foundation failed "when an existing caisson was being removed." Plaintiff's report shows the building and foundation after the construction of 131 Dartmouth Street and after removal of the damaged wall. CCA reviewed photographs taken at the time of damage to this wall that clearly show severely damaged concrete masonry unit (CMU) walls as well as a circular steel shell in the ground. Presumably the caisson is within the steel shell. Plaintiff's report does not present any theory or evidence as to how the caisson removal affected the foundation or CMU wall. CCA cannot give an engineering opinion as to the effect of the caisson removal on the foundation and wall based upon Plaintiff's report, and/or CCA's inspection of February 8, 2006. The only evidence presented is the proximity in time between the damage and the caisson removal. This fact should have been the starting point for an engineering investigation. The engineering investigation should have included eyewitness accounts, construction sequence and an engineering theory as to how the construction activities affected the walls.

The last item in category one in Plaintiff's report is "Item 9, Roof leak associated with item 2." This item is a result of the CMU wall damage mentioned in Item 2 and should be included in



item 2. Replacing the damaged wall in Item 2 would require replacing the flashing at the intersection of this roof and the CMU walls.

**Geotechnical**

Plaintiff's report also includes a section entitled "Geotechnical Review". This review discusses the construction of the slurry wall erected to protect the adjacent properties from impacts of the excavation at 131 Dartmouth Street but does not discuss the adequacy of this construction. This section mentions the excavation for the mat within the slurry walls as being 38 feet deep. The report does not mention that the excavation for the mat is approximately 50 feet from the slurry wall adjacent to the structures of concern (as shown on MassGIS aerial photographs "color orthos 2001" available at http://maps.massgis.state.ma.us/"). The excavation at the slurry wall adjacent to the structures of concern is much less than 38 feet. The depth of an excavation next to an earth retaining structure (the slurry wall) is of critical importance when analyzing the structure for movements. This important information is missing in Plaintiff's report.

Plaintiff's report also opines that "underground construction at the 131 Dartmouth Street building contributed to the settlements and movements of structures on the adjacent properties." Missing from this statement is the amount of movement that this underground construction caused at the subject buildings as well as the specific activities and the engineering principles used in reaching this opinion. The amount of movement is a very critical component of the geotechnical analysis. Simply stating that an excavation caused movement at an adjacent structure is misleading since all excavations cause movements of the soil adjacent to them and thereby also cause movements of nearby structures. This occurs regardless of the method used to protect the nearby structures (in this case a 30 inch thick by 53 feet deep concrete wall constructed under a slurry.) It is the amount of movement that is critical in causing damage to nearby structures not the mere fact that there are unavoidable movements.

Plaintiff's report also states that "The tilting of the retaining wall was likely further aggravated by the heavy equipment loads behind it." This statement seems to recognize that the retaining wall was tilting prior to placing heavy equipment loads behind it. CCA believes this wall was in fact tilted and failing prior to the commencement of construction activities. When heavy loads are placed behind a retaining wall the wall will move (tilt). This is an engineering fact. If heavy equipment is placed behind a properly built retaining wall, capable of holding the equipment load, the retaining wall will move. If heavy equipment is placed behind a failing retaining wall, capable of holding the equipment load, the retaining wall will move. In either case the wall will not move back to its original position. In the case of the subject retaining wall, the wall was failing and needed replacement prior to construction at 131 Dartmouth Street. After construction the wall still needs replacement.



**Local Conditions**

Plaintiff's report does not address the impact of local conditions that could have affected the subject structures. The local area is an urban area with a variety of activities occurring regularly that could affect the structures at 301 through 319 Columbus Avenue. These items include:

- A major railroad line approximately 150 feet from the rear of 301 Columbus Avenue that serves a commuter rail line with numerous trains with locomotives each day. Long term vibration impacts are not considered in Plaintiff's report.
- A major underground railroad station (Back Bay Station) approximately 150 feet from the rear of 301 Columbus Avenue. This station was completed in 1987. Construction impacts of this station as well as its continuing impact on the water table are not considered.
- Columbus Avenue (Route 28) is a major four lane street with regular truck traffic. Vibration and pollution impacts of this road are not considered.
- Utility construction, leaks and repairs are common in any urban setting. Water leaks, sewerage ex-filtration, sewerage infiltration, steam leaks, and excavations to repair utilities often impact structures in urban environments. CCA observed patches in the pavement of Columbus Avenue indicating excavations for utility work. These items have not been researched or considered in Plaintiff's report.
- Local soil conditions are not mentioned in Plaintiff's report. This area of Boston is on land filled in the 1800's. This fill overlies organic material and soil known as Boston blue clay which in turn overlies glacial till. Generally the fill is 20 feet deep and the clay is between 30 and 80 feet deep. The fill is generally loose and incapable of supporting heavy building loads. The clay is also a poor material in supporting heavy loads. Most large buildings recently constructed are founded on piles that extend to the glacial till soil.
- Water table concerns are not addressed in Plaintiff's report. In this area of Boston it is well known that there are problems associated with lowering of the local water table. This lowering of the water table causes problems due to soil subsidence and due to rot of wood piles that were installed below the water table (where they do not rot) that are now above the water table.
- Other construction projects in this area are not considered in Plaintiff's report.

**Plaintiff Cost Estimates by JS Held**

CCA reviewed the cost estimate prepared by JS Held, dated 6/03/2003. Of the ten cost items stated in this estimate, only two are relevant to our opinion of causation. These items include, "Item 2- Foundation and Masonry Wall Repair at Rear of Bldg 317-319", and "Item 9- Roof Leaks on Bldg. 317-319. Our review indicates that the unit costs estimated by Held are

*Boston • San Francisco • Los Angeles • Austin • Denver*



reasonable for the scope of work described. We note that these are replacement cost estimates. Items # 2 and # 9 total $51,636.00.

CCA has not reviewed the other estimate Items 1, 3, 4, 5.6.7, 8 (omitted on estimate) or the item marked "General". CCA does not believe these estimated costs are relevant to our opinions for the reasons stated in the details of this report.

**Conclusion**

Plaintiff's expert report by David Granpre addresses ten items that may have been impacted by construction of 131 Dartmouth Street. The report dismisses two of these items, Brick wall at rear of building 301/303 Columbus Avenue and stepped-out brick veneer gaps (301/303 Columbus Avenue), as not related to construction. CCA concurs with these two items.

For the remaining eight items Plaintiff's report lists cracks, a fallen concrete block, a tilting retaining wall, and a failed CMU wall with a related roof leak, as damage associated with construction activities at 131 Dartmouth Street. With the exception of the failed CMU wall Plaintiff's report does not state; specific construction activities, give specific evidence, or state engineering theories of how damage occurred for the various claims. All of the claimed damaged building elements, with the exception of the CMU wall and related roof, were damaged prior to the commencement of construction at 131 Dartmouth Street. The only evidence associated with the failed CMU wall (and associated leak) are the proximity in time between construction activities and the damage.

It is CCA's engineering opinion that Plaintiff's expert report does not provide convincing engineering evidence for any of the claimed damages. Based on CCA's extensive experience in insurance related claims investigation, it is our opinion that the engineering reports submitted to Fireman's Fund Insurance do not provide sufficient engineering data from which the carrier could make a determination of first party coverage on a claim of this magnitude.

These opinions are based upon information available at this time. CCA reserves the right to modify or change its observations, opinions, and conclusions at any future time if additional information becomes available. CCA is also available, at your request, to provide an Actual Cash Value ("ACV") analysis of any items related to the alleged damages.

Should you have any questions or comments please do not hesitate to contact the undersigned at any time.


Sincerely yours,
For CCA, LLC

Kenneth R Quigley, PE                               Mark H. McGivern, CSI
Vice President of Engineering                       Principal/ CEO

O:\Project Files\Toomey & Yudsky\601262 - Fireman's Fund v Suffolk Construction\601262 - Preliminary Response Report.doc



**MassGIS 2001 color ortho photo**